**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY RODRIGUEZ and<br>ISABELLA IRENE RODRIGUEZ | §<br>§ | |
| | § | C.A. NO. 3:26-cv-00207 |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| REMY COEYTAUX | § | |
| | § | |
| Defendant. | | |

---

**DEFENDANT'S MOTION TO DISMISS**

---

**TABLE OF CONTENTS**


BACKGROUND ..... 3

I. Plaintiffs' Allegations in This Case ..... 3

II. *Rodriguez I* ..... 4

III. Texas HB7 ..... 5

LEGAL STANDARD ..... 7

ARGUMENT ..... 8

I. Plaintiffs Lack Standing to Assert Any of Their Claims. ..... 8

A. Mr. Rodriguez Lacks Standing to Bring His Wrongful Death Claim. ..... 9

B. Ms. Rodriguez Lacks Standing to Assert an HB7 "*Qui Tam*" Claim. ..... 11

1. Texas Has No Claim to Assign to Ms. Rodriguez. ..... 11

2. The *Qui Tam* Exception Does Not Apply to HB7. ..... 15

C. Plaintiffs Lack Standing to Seek an Anti-Suit Injunction. ..... 20

II. Mr. Rodriguez Failed to State a Claim for Wrongful Death. ..... 21

A. Mr. Rodriguez Failed to Allege Facts Establishing that Dr. Coeytaux Proximately Caused the September 2024 Abortion. ..... 22

B. The Complaint's Allegations of Statutory Violations Do Not Support a Wrongful Death Claim. ..... 24

1. Mr. Rodriguez failed to plead facts showing statutory violations. ..... 24

2. Alleged violations of these statutes do not give rise to tort liability. ..... 25

3. The Court Should Decline to Create a New Duty in Tort for the Alleged Statutory Violations. ..... 26

III. Ms. Rodriguez Fails to State an HB7 "Qui Tam" Claim. ..... 31

A. Ms. Rodriguez Is a Prohibited Plaintiff Under HB7. ..... 31

B. Ms. Rodriguez's Allegations Are Vague and Conclusory. ..... 32

C. HB7 Violates the Texas Constitution. ..... 33

D. HB7 Violates the Dormant Commerce Clause of the U.S. Constitution. ..... 36

IV. Plaintiffs Failed to State an Anti-Clawback Claim Under HB7. ..... 38

CONCLUSION ..... 39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Harris Cnty.*,
672 S.W.3d 1 (Tex. 2023)....................................................................................................34

*Abecassis v. Wyatt*,
704 F. Supp. 2d 623 (S.D. Tex. 2010) ...........................................................................9, 10

*Allen v. Walmart Stores, L.L.C.*,
907 F.3d 170 (5th Cir. 2018) ..........................................................................................25, 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................8, 33

*Beanal v. Freeport-McMoran, Inc.*,
197 F.3d 161 (5th Cir. 1999) ..........................................................................................12, 33

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................. *passim*

*Bendix Autolite Corp. v. Midwesco Enters., Inc.*,
486 U.S. 888 (1988)...............................................................................................................37

*Brighthouse Life Ins. Co. v. Daboub*,
577 F. Supp. 3d 504 (N.D. Tex. 2021) ..................................................................................30

*Brown v. Gilmore*,
533 U.S. 1301 (2001).............................................................................................................39

*Brown v. Zimmerman*,
160 S.W.3d 695 (Tex. App.—Dallas 2005, no pet.)..............................................................39

*Burt v. Playtika, Ltd.*,
132 F.4th 398 (6th Cir. 2025) ............................................................................12, 16, 18, 19

*Carter v. William Sommerville & Son, Inc.*,
584 S.W.2d 274 (Tex. 1979)...................................................................................................30

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..............................................................................................................13, 14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).....................................................................................................13, 20, 21

*Cort v. Ash*,
422 U.S. 66 (1975)....................30

*Deep S. Ctr. for Env't Just. v. EPA*,
138 F.4th 310 (5th Cir. 2025) ....................10

*Dickerson v. Bailey*,
336 F.3d 388 (5th Cir. 2003) ....................37, 38

*Ducksworth v. Rook*,
647 F. App'x 383 (5th Cir. 2016) ....................31

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ....................8, 15

*Freeman v. Lester Coggins Trucking, Inc.*,
771 F.2d 860 (5th Cir. 1985) ....................39

*FTC v. AdvoCare Int'l, L.P.*,
2020 WL 6741968 (E.D. Tex. Nov. 16, 2020) ....................33

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ....................31

*Ganpat v. E. Pac. Shipping PTE, Ltd.*,
66 F.4th 578 (5th Cir. 2023) ....................20

*George v. SI Grp., Inc.*,
36 F.4th 611 (5th Cir. 2022) ....................8

*Granholm v. Heald*,
544 U.S. 460 (2005)....................36, 37

*Hill Cnty. v. Sheppard*,
178 S.W.2d 261 (Tex. 1944)....................34

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)....................15, 25, 29, 30

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
520 U.S. 939 (1997)....................36

*Jensen v. Minn. Bd. of Med. Prac.*,
No. CV 23-1689, 2024 WL 1345174 (D. Minn. Mar. 29, 2024)....................12

*Johnson v. Sawyer*,
47 F.3d 716 (5th Cir. 1995) (en banc) ....................26

*In re Labatt Food Serv., L.P.*,
279 S.W.3d 640 (Tex. 2009)....................22, 24

*Little v. Shell Expl. & Prod. Co.*,
690 F.3d 282 (5th Cir. 2012)....................11, 16

*Loki Brands, LLC v. Platkin*,
2024 WL 4457485 (D.N.J. Oct. 10, 2024)....................37

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................13, 14, 17, 19

*Lundahl v. Glob. E. LLC*,
643 F. App'x 752 (10th Cir. 2016)....................32

*Magadia v. Wal-Mart Assocs., Inc.*,
999 F.3d 668 (9th Cir. 2021), *abrogated on other grounds by TransUnion*,
594 U.S. 413.................... *passim*

*Maud v. Terrell*,
200 S.W. 375 (Tex. 1918)....................17, 34

*McCorvey v. Hill*,
385 F.3d 846 (5th Cir. 2004)....................25

*Met Water Vista Ridge, LP v. Blue Water Sys., LP*,
717 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2025, no pet.)....................32

*Michaels v. Avitech, Inc.*,
202 F.3d 746 (5th Cir. 2000)....................29

*Morrison v. Le Tourneau Co. of Ga.*,
138 F.2d 339 (5th Cir. 1943)....................29

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................13

*NextEra Energy Cap. Holdings, Inc. v. Lake*,
48 F.4th 306 (5th Cir. 2022)....................36

*Pediatrics Cool Care v. Thompson*,
649 S.W.3d 152 (Tex. 2022)....................23

*Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*,
128 F.3d 910 (5th Cir. 1997)....................38

*Perry v. S.N.*,
973 S.W.2d 301 (Tex. 1998).................... *passim*

*In re Pub. Serv. Co. of N.H.*,
848 F. Supp. 318 (D.R.I. 1994), *aff'd on other grounds*, 43 F.3d 763 (1st Cir. 1995) ....................32

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ....................7

*Riley v. St. Luke's Episcopal Hosp.*,
252 F.3d 749 (5th Cir. 2001) ....................16

*Roberts v. TXU Energy Retail Co.*,
171 S.W.3d 901 (Tex. App. 2005)....................23

*Rodriguez v. Coeytaux* (*Rodriguez I*),
No. 3:25-CV-00225 (S.D. Tex. July 20, 2025), ECF No. 1 .................... *passim*

*Rodriguez v. Garza*,
No. 25-CV-1294 (212th Dist. Ct., Galveston Cnty., Tex. July 21, 2025) ....................3

*Rodriguez-Escobar v. Goss*,
392 S.W.3d 109 (Tex. 2013)....................23

*Smith v. Merritt*,
940 S.W.2d 602 (Tex. 1996)....................30, 31

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016)....................17

*St. v. Amazon.com Servs., LLC*,
No. 2:21-CV-0912-BJR, 2022 WL 3683811 (W.D. Wash. Aug. 25, 2022)....................12

*State v. Hunter*,
624 S.W.3d 589 (Tex. Crim. App. 2021) (Keller, P.J., concurring in denial of review) ....................25

*Stean v. Texas Right to Life*,
2021 WL 12394878 (98th Dist. Ct., Travis County., Tex. Dec. 9, 2021) ....................34, 35

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) ....................8, 9, 13

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
588 U.S. 504 (2019)....................36

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*,
952 S.W.2d 454 (Tex. 1997)....................35

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
No. 1:11-cv-00486-SS (W.D. Tex. Dec. 7, 2011), ECF No. 101 ....27

*TF-Harbor, LLC v. City of Rockwall*,
18 F. Supp. 3d 810 (N.D. Tex. 2014), *aff'd*, 592 F. App'x 323 (5th Cir. 2015)....9, 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).... *passim*

*Turaani v. Wray*,
988 F.3d 313 (6th Cir. 2021) (Sutton, J.)....9, 11

*Umphress v. Hall*,
133 F.4th 455 (5th Cir. 2025) ....8

*United States v. Huntsberry*,
956 F.3d 270 (5th Cir. 2020) ....31

*United States v. Tex. Tech Univ.*,
171 F.3d 279 (5th Cir. 1999) ....16

*Van Winkle v. Houcon Partners, L.P.*,
2018 WL 3543908 (S.D. Tex. July 03, 2018)....13, 14

*Werner Enters., Inc. v. Blake*,
719 S.W.3d 525 (Tex. 2025)....22, 23, 24

*State ex rel. White v. Griffin*,
604 F. Supp. 3d 1143 (D.N.M. 2022)....16, 18, 19, 20

*Whole Woman's Health v. Hellerstedt*,
579 U.S. 582 (2016), 2016 WL 344496 ....27

*Women's Med. Ctr. of Nw. Houston v. Bell*,
248 F.3d 411 (5th Cir. 2001), 2000 WL 33983059 ....27

*In re Xerox Corp.*,
555 S.W.3d 518 (Tex. 2018)....19

*United States ex rel. Yellowtail v. Little Horn State Bank*,
828 F. Supp. 780 (D. Mont. 1992)....12

*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) ....21

**Statutes**

All Writs Act....39

Cal. Civ. Code §§ 1798.300(a), (d)(1)(C)....7

Cal. Civ. Code § 1798.300 *et seq.*....20

California's Private Attorneys General Act, Cal. Lab. Code § 2699....17

Code of Criminal Procedure Article 42.013....6

Comstock Act....30

False Claims Act....16, 18

Fed. R. Civ. P. 8....33

Fed. R. Civ. P. 12(b)(1)....7

Fed. R. Civ. P. 12(b)(1) and (6)....39

Fed. R. Civ. P. 12(b)(6)....2, 8, 21

Fed. R. Civ. P. 54(b)....5, 39

Fed. R. Evid. 201(b)(2)....31

Tenn. Code § 29-19-105....17

Tex. Civ. Prac. & Rem. Code Ann. § 71.003(c)(1)....29

Tex. Civ. Prac. & Rem. Code § 71.002(a)–(b)....22

Tex. Civ. Prac. & Rem. Code § 71.003(a)....22

Tex. Health & Safety Code Ann. §§ 171.201–212....31

Tex. Health & Safety Code Ann. § 171A.002(a)(4)....6, 37

Tex. Health & Safety Code Ann. § 171A.051(a)(2)....5

Tex. Health & Safety Code Ann. § 171A.052(b)....6, 35

Tex. Health & Safety Code Ann. § 171A.101(a)(2)....15

Tex. Health & Safety Code Ann. §§ 171A.101(a), 171A.104(a)....35

Tex. Health & Safety Code Ann. § 171A.101(b)....18

Tex. Health & Safety Code Ann. § 171A.101(d)(3)(B), (E)....6, 31

Tex. Health & Safety Code Ann. § 171A.101(d)(3)(E)....32

Tex. Health & Safety Code Ann. § 171A.104(a)(2) ....................19

Tex. Health & Safety Code Ann. § 171A.104(b) ....................18, 19

Tex. Health & Safety Code Ann. § 171A.151(a)....................20

Tex. Health & Safety Code Ann. § 171A.151(a), (c) ....................38

Tex. Health & Safety Code Ann. § 171A.151(b), (f) ....................21

Tex. Health & Safety Code Ann. § 171A.151(c)....................7, 39

Tex. Health & Safety Code Ann. § 171A101(a)(2) ....................14

Tex. Penal Code Ann. § 6.04(a)....................25

Tex. Penal Code Ann. § 7.02(a)(1) ....................25

Tex. Penal Code Ann. § 19.02(b) ....................25

Tex. Penal Code Ann. § 19.06(1) ....................25

2021 Tex. Sess. Law Serv. 3934, 3934–35 ch. 10 §§ 2–3, secs. 171.006(a)–(b) (codified at Tex. Health & Safety Code Ann. §§ 171.006(a)–(b), 171.061) ....................27

Woman's Right to Know Act ....................27

Wrongful Death Act....................21

**Other Authorities**

*Hearing of the H. Comm. on State Affs.*, 89th Leg., 2d Special Session (Tex. 2025) (statement of Dr. Zeke Silva, Chair, Texas Medical Association Council on Legislation), https://house.texas.gov/videos/22507 ....................6

78th Leg., R.S. (Tex. 2003) ....................27

82d Leg., R.S. (Tex. 2011)....................27

Myriam E. Gilles, *Representational Standing* ....................17

Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 579, 588–90 (2005)....................16

*State Affs. For HB 7* (Tex. 2025), https://capitol.texas.gov/tlodocs/892/publiccomments/billhistory/HB00007H.pdf#navpanes=0 ....................6

Tex. Const. art. IV, § 22....................34

Tex. Const. art. V, § 21 ....................................................................................................34

Texas Constitution ..........................................................................................2, 33, 34, 35

Texas Heartbeat Act, Senate Bill 8 ...................................................................................31

Texas House Bill 7 ..............................................................................................................1

U.S. Const. art. I, § 8, cl. 3 .................................................................................................36

U.S. Constitution Dormant Commerce Clause .................................................................36

This lawsuit is primarily about independent decisions made by a married couple, nonparties Adam and Kendal Garza, to allegedly procure and use abortion medication. Plaintiffs are Jerry Rodriguez and his daughter, Isabella Rodriguez. Mr. Rodriguez is a convicted domestic abuser who allegedly impregnated Mrs. Garza three times. By Plaintiffs' account, after Mr. Garza learned his wife was pregnant with Mr. Rodriguez's child for the first time, Mr. Garza allegedly obtained abortion pills, which Mrs. Garza used of her own volition to have a self-managed abortion.

Although the independent actions of Mr. Garza and Mrs. Garza were the direct cause of the abortion at issue, Plaintiffs nonetheless bring three claims against Dr. Remy Coeytaux, who they allege sent the pills to Mr. Garza at his request. First, Mr. Rodriguez seeks damages from Dr. Coeytaux for wrongful death over Mrs. Garza's alleged abortion. Second, Ms. Rodriguez seeks a monetary penalty of at least $100,000 and an injunction under Texas House Bill 7 ("HB7") over unspecified, alleged abortions, which appear to be unrelated to Mrs. Garza's abortion. HB7, which did not take effect until over a year after Mrs. Garza's abortion, prohibits sending abortion-inducing medication into Texas, but it is enforceable solely through so-called "*qui tam*" lawsuits. Third, both Mr. and Ms. Rodriguez seek an injunction under HB7 to prevent Dr. Coeytaux from filing a "clawback" lawsuit under California's "shield" law, which offers reproductive-health-care providers protection from abusive litigation. Plaintiffs assert that, upon their request, Texas law "requires this Court to issue an immediate anti-suit injunction." ECF No. 1 at ¶ 41.

Plaintiffs' claims are irretrievably flawed and should be dismissed with prejudice. To start, this Court lacks subject-matter jurisdiction. Mr. Rodriguez lacks standing to sue

Dr. Coeytaux for wrongful death because his claimed injury—Mrs. Garza's self-managed abortion—was the result of the independent actions of Mr. Garza and Mrs. Garza. Ms. Rodriguez's claim fares no better. She invokes HB7's so-called "*qui tam*" provision, but she alleges no injury of her own, and she cannot rely on relator standing because the State has no injury itself and because HB7 is not a genuine *qui tam* statute. As to their claim for an anti-clawback-suit injunction under HB7, Plaintiffs cannot escape the reality that Dr. Coeytaux has not filed a clawback action, and Plaintiffs do not allege that a clawback action is certainly impending.

Plaintiffs' claims should also be dismissed under Rule 12(b)(6). For wrongful death, Mr. Rodriguez fails to allege facts establishing (1) that Dr. Coeytaux was both a but-for cause and a substantial-factor cause of the abortion and (2) that Dr. Coeytaux's conduct was tortious. As to HB7, it bars suit by any person who has been convicted of a family-violence offense and anyone acting in concert or participation with such person. Plaintiffs fail to allege they are not prohibited plaintiffs—for good reason. Mr. Rodriguez has been convicted of assault against a family member, and by Plaintiffs' own admission, his daughter asserts this claim instead of (and thus in concert or participation with) him to try to ameliorate his own statutory bar. Additionally, HB7 violates the Texas Constitution by purporting to delegate enforcement authority to the general public, and it violates the dormant Commerce Clause by facially discriminating against out-of-state physicians: Texas physicians are exempt from liability for the exact same conduct that gives rise to liability for out-of-state physicians.

For these reasons, Plaintiffs' complaint should be dismissed with prejudice.

## BACKGROUND

### I. Plaintiffs' Allegations in This Case

Plaintiffs allege that Mr. Rodriguez began dating Mrs. Garza in June 2024 while she was married to Mr. Garza (as she continues to be). ECF No. 1, ¶¶ 8, 10. In July 2024, Mrs. Garza became pregnant by Mr. Rodriguez. *Id.* ¶ 9. Mr. Garza ordered abortion medication from Dr. Coeytaux to be shipped to his house in Galveston County. *Id.* ¶¶ 10–12. According to Plaintiffs, Mr. Garza—not Dr. Coeytaux—"provided" the abortion medication to Mrs. Garza, who took them on September 19, 2024, with Mr. Garza's encouragement. *Id.* ¶ 13. Plaintiffs do not allege that Dr. Coeytaux played any role in Mrs. Garza's decision to ingest the medication that Mr. Garza obtained and provided to her.

In October 2024, Mrs. Garza became pregnant a second time. *Id.* ¶ 14. Plaintiffs allege that Mrs. Garza also terminated this pregnancy with abortion medication provided to her by her husband, Mr. Garza. *Id.* ¶ 15. Plaintiffs do not allege that Dr. Coeytaux provided or prescribed the medication or played any role in Mrs. Garza's second abortion.

Despite Mr. Garza's prominent alleged role in obtaining and supplying his wife with abortion medication, and Mrs. Garza's alleged role in deciding to take the medication to terminate her pregnancy, neither Mr. Garza nor Mrs. Garza is a Defendant in this case.[1]

Plaintiffs' claims here are against only Dr. Coeytaux, who is alleged to have shipped abortion medications once to Mr. Garza and who allegedly "continues to mail abortion-

[1] The day after he filed his initial complaint in *Rodriguez I*, Mr. Rodriguez filed a nearly identical wrongful death suit against Mr. Garza and Mrs. Garza's mother in state court. *Compare Rodriguez v. Coeytaux* (*Rodriguez I*), No. 3:25-CV-00225 (S.D. Tex. July 20, 2025), ECF No. 1, *with Rodriguez v. Garza*, No. 25-CV-1294 (212th Dist. Ct., Galveston Cnty., Tex. July 21, 2025).

inducing drugs into Texas" and "intends to continue" doing so. *Id.* ¶ 32. Plaintiffs, however, failed to specify any instances of mailing abortion medication into Texas after HB7 took effect. While they allege that "Ms. Rodriguez is aware of at least two such occasions," *id.* ¶ 34, they failed to provide any factual allegations to substantiate this claim.

In Claim 1, Mr. Rodriguez seeks damages for wrongful death. *Id.* ¶¶ 16–31. In Claim 2, Ms. Rodriguez asserts HB7's *qui tam* provision and seeks monetary penalties and an injunction to prevent Dr. Coeytaux from providing abortion-inducing drugs to anyone in Texas. *Id.* ¶¶ 32–36. In Claim 3, both Plaintiffs assert HB7's "anti-clawback" provision and seek an injunction to prevent Dr. Coeytaux from initiating a lawsuit against Plaintiffs or their attorney under California's shield law. *Id.* ¶¶ 37–42.

## II. *Rodriguez I*

This is the second case that Mr. Rodriguez has filed against Dr. Coeytaux that alleges essentially the same facts and brings the same claims. *Compare Rodriguez I*, No. 3:25-CV-00225, ECF No. 1, *with Rodriguez v. Coeytaux* (*Rodriguez II*), No. 3:26-cv-00207 (S.D. Tex. June 30, 2026), ECF. No. 1. Mr. Rodriguez filed his original complaint in July 2025 and then his first amended complaint in February 2026. *See Rodriguez I*, ECF Nos. 1, 16.

Dr. Coeytaux moved to dismiss Mr. Rodriguez's first amended complaint in *Rodriguez I*, raising many of the same grounds for dismissal presented here. *See generally Rodriguez I*, ECF No. 30. Instead of responding to the motion to dismiss, Mr. Rodriguez sought leave to amend his complaint. *Rodriguez I*, ECF No. 45. Despite numerous jurisdictional and pleading deficiencies, Mr. Rodriguez offered "two (and only two) changes" in his proposed amendment. *Id.* at 1. First, he sought to "add Mr. Rodriguez's

daughter, Isabella Irene Rodriguez, as a co-plaintiff with respect to the HB 7 claim" to try to "allow the HB 7 claim to proceed regardless of whether Jerry Rodriguez's HB 7 claim" is barred due to his family-violence conviction. *Id.* Second, he sought to add new conclusory allegations that Dr. Coeytaux violated HB7 after its enactment. *Id.* at 1–2. The day after Dr. Coeytaux filed his opposition to the motion for leave—in which he explained the proposed changes would be futile because they would not cure either deficiency—Mr. Rodriguez voluntarily dismissed his case. *Rodriguez I*, ECF No. 48 at 10–12; ECF No. 49.

The same day he dismissed *Rodriguez I*, Mr. Rodriguez filed the present action, now joined by his daughter Isabella Rodriguez. *See* ECF No. 1. This complaint is nearly identical to the proposed second amended complaint in *Rodriguez I*, except that Mr. Rodriguez abandoned his HB7 *qui tam* claim, leaving that claim solely to his daughter, Ms. Rodriguez, to assert. *Compare* ECF No. 1, *with Rodriguez I*, ECF No. 45–1. Like in *Rodriguez I*, Plaintiffs here also filed motions for a preliminary injunction and Rule 54(b) judgment based on the anti-suit injunction claims, ECF Nos. 5–6, which are being briefed on the same timeline as this motion to dismiss. *See* ECF No. 12 (briefing order).

**III. Texas HB7**

In September 2025, the Texas legislature enacted HB7, which became law on December 4, 2025. Mrs. Garza's alleged abortion at issue occurred in September 2024—more than a year before HB7 went into effect. *See* ECF No. 1 ¶¶ 8–15.

HB7 provides that, as of its effective date, no person may "mail, transport, deliver, prescribe, or provide an abortion-inducing drug in any manner to or from any person or location in this state." Tex. Health & Safety Code Ann. § 171A.051(a)(2). A violation of

HB7 is not a crime, and HB7 may not be enforced by the State of Texas or any state official or employee. *Id.* § 171A.052(b). Instead, HB7 "may be enforced only through" a civil lawsuit that the statute refers to as "a qui tam action." *Id.* § 171A.052(a). HB7 purports to confer "standing" on any "person" (other than the State or state officials) to "bring a qui tam action against" someone who either "violates" or "intends to violate" the statutory prohibition. *Id.* § 171A.101(a). HB7 prohibits certain people from suing, including those who "committed an offense for which an affirmative finding of family violence was made under Article 42.013, Code of Criminal Procedure." That bar on bringing an HB7 claim extends to anyone who "acts in concert or participation with" someone convicted of a family-violence offense. *Id.* § 171A.101(d)(3)(B), (E).

At the urging of physician and hospital groups, HB7 includes special protections for Texas physicians and hospitals.[2] HB7 "does not apply to and a civil action under [HB7] may not be brought against" any "physician," *id.* § 171A.002(a)(4)—defined as an "individual licensed to practice medicine in this state," *id.* § 171A.001(8)—"unless the qui tam relator pleads and proves that the provider or physician engaged in conduct constituting a violation of [HB7] while located outside this state." *Id.* § 171A.101(d)(8). Thus, a

[2] *Hearing of the H. Comm. on State Affs.*, 89th Leg., 2d Special Session at 2:38:25-2:39:15 (Tex. 2025) (statement of Dr. Zeke Silva, Chair, Texas Medical Association Council on Legislation), https://house.texas.gov/videos/22507 (advocating for an "exemption carve-out" for Texas-licensed physicians); *H.R. Compilation of Pub. Comments Submitted to the Comm. on State Affs. For HB 7*, at 199 (Tex. 2025), https://capitol.texas.gov/tlodocs/892/publiccomments/billhistory/HB00007H.pdf#navpanes=0 (statement of Heather De La Garza-Barone, Associate General Counsel, Texas Hospital Association) ("Our opposition to the bill as filed is largely centered around the fact that it does not provide a full exemption for all licensed Texas doctors and licensed Texas health care providers from having a *qui tam* filed against them in proposed Section 171A.101(d)(7)." (emphasis added)).

physician licensed or located in another state violates HB7 by mailing abortion-inducing medication to someone in Texas, but a Texas-licensed physician in Texas who engages in the same conduct does not violate HB7. Also exempt is any "hospital," *id.* § 171A.002(a)(1), limited to hospitals licensed under Texas law or owned, maintained, or operated by the State of Texas, *id.* § 171A.001(6). Thus, only out-of-state hospitals can violate HB7 and be sued.

Finally, HB7 includes provisions intended to negate statutory rights available under other states' "shield" laws. Relevant here, California's shield law provides for a "clawback" lawsuit against a person who brings litigation to "deter, prevent, sanction, or punish a person engaging in legally protected health care activity," including providing reproductive health care that is lawful in California, regardless of the patient's location. Cal. Civ. Code §§ 1798.300(a), (d)(1)(C). HB7 states that, if a person brings a so-called *qui tam* suit, "the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant" from "bringing" or "continuing to litigate" a clawback suit against an HB7 "claimant," a "person in privity with the claimant," or a person "providing legal representation or any type of assistance to the claimant." Tex. Health & Safety Code Ann. § 171A.151(c).

## LEGAL STANDARD

On a Rule 12(b)(1) motion to dismiss, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In a facial challenge, the court must dismiss if "it appears certain that [the plaintiff] cannot prove a plausible set of facts that establish subject matter jurisdiction."

*Umphress v. Hall*, 133 F.4th 455, 462 (5th Cir. 2025) (internal quotation omitted). While the court "must accept [ ] as true the complaint's factual allegations," *id.* (internal quotation omitted), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss," *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff, the complaint must allege "more than labels and conclusions" a "formulaic recitation of the elements," or facts "merely consistent with" liability. *Fernandez-Montes*, 987 F.2d at 284; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

## ARGUMENT

### I. Plaintiffs Lack Standing to Assert Any of Their Claims.

Plaintiffs lack standing to bring any of their asserted claims. "To have Article III standing, a plaintiff must show [1] an injury in fact that is [2] fairly traceable to the challenged action of the defendant and [3] likely to be redressed by the plaintiff's requested relief." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs "bear[] the burden of establishing all

three elements," *id.*, "for each claim . . . and for each form of relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs failed to satisfy the threshold requirement of standing for any of their claims.

**A. Mr. Rodriguez Lacks Standing to Bring His Wrongful Death Claim.**

Mr. Rodriguez lacks standing for his wrongful death claim because his factual allegations establish that his alleged injury is not fairly traceable to Dr. Coeytaux. To the contrary, Mr. Rodriguez's allegations make clear that his alleged injury was caused by the independent actions of two other parties, neither of whom is a defendant here.

Mr. Rodriguez must show that his claimed injury—Mrs. Garza's alleged decision to end her first pregnancy—is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 637 (S.D. Tex. 2010) (quoting *Lujan*, 504 U.S. at 560). "An injury is generally insufficient to 'confer standing when the injury's existence depends on the decisions of third parties not before the court.'" *Id.* (quoting *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009)). In those cases, the plaintiff must show that the "defendant's actions had a determinative or coercive effect upon the action of the third party." *TF-Harbor, LLC v. City of Rockwall,* 18 F. Supp. 3d 810, 820 (N.D. Tex. 2014) (internal quotations and brackets omitted), *aff'd*, 592 F. App'x 323 (5th Cir. 2015). Where the defendant "merely makes it possible for a third party to take an action but neither requires nor encourages that action," the causal chain is broken. *Id*. at 821. In such circumstances, the plaintiff's "quarrel is with the third party, not the defendant." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (Sutton, J.).

Here, Mrs. Garza's self-managed abortion resulted from the independent acts of Mr. Garza and Mrs. Garza—two "third parties not before the court." *See Abecassis*, 704 F. Supp. 2d at 637. Plaintiffs affirmatively allege a series of independent events leading to Mr. Rodriguez's alleged injury. First, Mr. Garza "ordered" the abortion-inducing drugs. ECF No. 1 ¶ 11. Second, Mr. Garza received the drugs after they were allegedly sent to him by Dr. Coeytaux. *Id.* ¶ 12. Dr. Coeytaux's alleged involvement ends there. Third, Mr. Garza, not Dr. Coeytaux, "provided [Mrs. Garza] with the abortion drugs" and "pressured" her to take them. *Id.* ¶ 13. Fourth, Mrs. Garza then made the independent decision to "ingest[] the abortion-inducing drugs." *Id*.

There are no allegations that Dr. Coeytaux had any "determinative or coercive effect" on either Mr. Garza or Mrs. Garza, much less on both of them. Mr. Rodriguez does not allege that Dr. Coeytaux communicated with Mrs. Garza. Nor does he allege Dr. Coeytaux did anything to require, encourage, or incentivize Mr. Garza or Mrs. Garza to act as they did. *See TF-Harbor*, 18 F. Supp. 3d at 820–21. To the contrary, Plaintiff admits that five months later, Mrs. Garza *again* made the decision to terminate a second pregnancy via a "self-managed abortion" with *no* involvement from Dr. Coeytaux, "even though Mr. Rodriguez pleaded with her not to do it." ECF No. 1 ¶ 15.

In short, this is a textbook case for dismissal due to lack of standing because Mr. Rodriguez's claimed injury is not fairly traceable to the Defendant's challenged actions. *See Abecassis*, 704 F. Supp. 2d at 644 (dismissing claims where defendants' actions were "too attenuated from the plaintiffs' injuries to satisfy the causation prong of Article III standing"); *Deep S. Ctr. for Env't Just. v. EPA*, 138 F.4th 310, 326 (5th Cir. 2025)

(“Traceability requires more than [] bare speculation.”). Mr. Rodriguez’s quarrel is not with Dr. Coeytaux; it is with Mrs. Garza over her decision to end her pregnancy as well as Mr. Garza for the support he provided to her. *See Turaani*, 988 F.3d at 316.

### B. Ms. Rodriguez Lacks Standing to Assert an HB7 “*Qui Tam*” Claim.

Ms. Rodriguez lacks standing to assert an HB7 *qui tam* claim for a monetary penalty or injunctive relief. *See* ECF No. 1 ¶¶ 32–36. The complaint effectively admits that Ms. Rodriguez has no injury of her own. Instead, Ms. Rodriguez claims she has “Article III standing to sue Dr. Coeytaux as an assignee of the state’s claim for relief.” *Id.* ¶ 35 (citing *Vermont Agency*, 529 U.S. 765 (2000)). But as explained below, (1) she alleges no facts to establish that Texas has a claim to assign to her, and (2) regardless, HB7 is an improper *qui tam* statute that cannot confer standing on Ms. Rodriguez.

#### 1. Texas Has No Claim to Assign to Ms. Rodriguez.

Ms. Rodriguez does not claim any personal injury or stake in the case; instead, her only theory of standing relies on Texas assigning a claim to her as a “*qui tam* relator.” *See id.* ¶¶ 33–34. But to qualify as a proper *qui tam* relator, Ms. Rodriguez must still establish Texas has standing to assert a claim against Dr. Coeytaux; otherwise Texas has nothing to assign. *See Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 677 (9th Cir. 2021) (noting a *qui tam* litigant “step[s] into the shoes” of the government based on an “assignment theory” (citing *Vermont Agency*, 529 U.S. at 773–74)), *abrogated on other grounds by TransUnion*, 594 U.S. 413. In short, “[s]tanding exists because ‘a *qui tam* relator is, in effect, suing as a partial assignee of the [government’s] claim for damages.” *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 285 (5th Cir. 2012) (quoting *Vermont Agency*, 529 U.S. at 773 n.4).

Therefore, when the state *itself* cannot satisfy the injury-in-fact requirement of standing, *qui tam* litigants also lack standing. *See United States ex rel. Yellowtail v. Little Horn State Bank*, 828 F. Supp. 780, 786–88 (D. Mont. 1992); *Burt v. Playtika, Ltd.*, 132 F.4th 398, 403–04 (6th Cir. 2025); *Magadia*, 999 F.3d at 674. Here, because Texas has no standing for monetary penalties or injunctive relief, Ms. Rodriguez likewise lacks standing.

**Monetary Penalties.** Ms. Rodriguez failed to establish that Texas has standing to seek monetary penalties for a violation of HB7. Ms. Rodriguez alleges no specific facts to support her conclusory allegation that Dr. Coeytaux "has mailed abortion pills into Texas many times since HB 7 took effect" and, instead, relies on her mere "aware[ness] of at least two such occasions." ECF No. 1, ¶ 34. Such vague "bare bone allegations that a wrong has occurred," *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 166 (5th Cir. 1999), are inadequate to support a plausible claim that Texas has an injury-in-fact and reinforces the conclusion that plaintiff has not "even suffered a 'concrete and particularized' injury necessary to confer standing," *St. v. Amazon.com Servs., LLC*, No. 2:21-CV-0912-BJR, 2022 WL 3683811, at *3 (W.D. Wash. Aug. 25, 2022) (citation omitted). *See also, e.g.*, *Jensen v. Minn. Bd. of Med. Prac.*, No. CV 23-1689 (JWB/DTS), 2024 WL 1345174, at *4 (D. Minn. Mar. 29, 2024) (where injury was dependent on allegations about third parties, plaintiffs' "conclusory and formulaic allegations based upon 'information and belief'" "about how the [defendant] treated other physicians" were insufficient for standing). Texas therefore lacks standing itself and cannot assign standing to Ms. Rodriguez.

**Injunctive Relief.** Ms. Rodriguez failed to show Texas has an injury-in-fact for an injunction under HB7. To satisfy the injury-in-fact requirement for injunctive relief,

plaintiffs cannot rely on past violations because injunctive relief "cannot conceivably remedy any past wrong." *Stringer*, 942 F.3d at 720 (quotation omitted). Instead, a plaintiff must "demonstrat[e] a continuing injury or threatened future injury." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). A "threatened injury must be *certainly impending* to constitute injury in fact," and the Court cannot rely on mere "[a]llegations of *possible* future injury." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted). In other words, "there must be at least a 'substantial risk' that the injury will occur." *Stringer*, 942 F.3d at 721 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (plaintiff seeking prospective relief must face "a real and immediate threat of repeated injury.").

Vague allegations of an "intent" to commit a future violation cannot establish a "certainly impending" injury in fact—especially where the complaint pleads no concrete facts showing when or how a violation will occur. *See Lujan*, 504 U.S. at 564 n.2. In *Lujan*, for example, the Supreme Court held that the plaintiff's "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—[did] not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564. The same was true in *Lyons*, where the Court dismissed a plaintiff's claims for injunctive relief because his allegations of previously being placed in chokeholds did "nothing to establish a real and immediate threat that he would again be stopped" and choked. 461 U.S. at 105. "In other words, a plaintiff alleging a past wrong must show that there is a 'real or immediate threat that he will be wronged again' in order to have standing for injunctive relief." *Van Winkle v. Houcon Partners, L.P.*, 2018 WL

3543908, at *3 (S.D. Tex. July 03, 2018) (quoting *Plumley v. Landmark Chevrolet, Inc*., 122 F.3d 308, 312 (5th Cir. 1997)).

Ms. Rodriguez does not come close to satisfying this standard. The allegations concerning Mrs. Garza's self-managed abortion do not amount to an HB7 violation because they occurred before HB7's enactment. And while Ms. Rodriguez states that Dr. Coeytaux has violated HB7 on "at least two" occasions after the law's enactment, the allegations pertaining to those purported violations are still insufficient to satisfy the injury-in-fact requirement for injunctive relief. First, because the alleged violations already occurred, they cannot establish standing to support injunctive relief, which is inherently future-looking. *See Lujan*, 504 U.S. at 564; *Lyons*, 461 U.S. at 105. Second, as discussed *supra,* at 12, Ms. Rodriguez's conclusory allegation and mere "aware[ness]" of those occasions is insufficient to establish injury in fact. ECF No. 1 ¶ 34.

As to any *future* injury, the complaint is simply devoid of any factual allegations to plausibly establish that Dr. Coeytaux is likely to send abortion-inducing pills into Texas. The most Ms. Rodriguez alleges is that Dr. Coeytaux "intends to continue mailing abortion-inducing drugs into Texas in violation of HB 7."*Id*. But that is nothing more than a "formulaic recitation of the elements of a cause of action" under HB7. *Twombly*, 550 U.S. at 555; *see* Tex. Health & Safety Code Ann. § 171A101(a)(2) (purporting to authorize *qui tam* action against a person who "intends to violate" HB7). Ms. Rodriguez fails to allege any facts to substantiate this bare legal conclusion: there is no concrete *plan* alleged nor any factual support about "*when* the some day" will supposedly be. *Lujan*, 504 U.S. at 564; *see Lyons*, 461 U.S. at 105–06; *Van Winkle*, 2018 WL 3543908, at *3. Ms. Rodriguez's

assertions are therefore just "conclusory allegations" that do not suffice to survive a motion to dismiss. *Fernandez-Montes*, 987 F.2d at 284.

Finally, the Texas Legislature's authorization of suits against those who "intend[] to violate" HB7 cannot establish standing to seek an injunction. Tex. Health & Safety Code Ann. § 171A.101(a)(2). Simply put, a statute cannot convert speculation into standing. *See TransUnion*, 594 U.S. at 426–27 ("[A] statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."). But speculation is all Ms. Rodriguez has to offer. Thus, Ms. Rodriguez fails to allege a "substantial risk" of a "certainly impending" injury in fact to Texas to establish standing for injunctive relief.

**2. The *Qui Tam* Exception Does Not Apply to HB7.**

Even if Ms. Rodriguez had alleged sufficient facts to establish that Texas has an injury in fact to assign, this Court would still lack jurisdiction because HB7 is not a proper *qui tam* statute, and Ms. Rodriguez therefore cannot act as an assignee of the state. Because states cannot manufacture standing by simply labeling a claim a "*qui tam* action," Ms. Rodriguez must demonstrate that the harm she alleges under HB7 satisfies the federal standing requirements for *qui tam* actions. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("States cannot alter that role simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse."). Under *Vermont Agency*, "[a] purported *qui tam* statute must hew closely to the traditional scope of a *qui tam* action for an uninjured plaintiff to maintain suit under Article III." *Magadia*, 999 F.3d at 675; *see Hollingsworth*, 570 U.S. at 709, 711 (because the state law was "readily distinguishable" from *qui tam*

actions, it could not confer standing). This means at a minimum that the statutory scheme must be a "[1] partial assignment [2] of the Government's damages claim." *Vermont Agency*, 529 U.S. at 773–74; *Magadia*, 999 F.3d at 675; *see also Little*, 690 F.3d at 285.

An essential feature of *qui tam* actions is that the relevant statute must "*partially*—not fully—assign the propriety [sic] remedy to the relator." *State ex rel. White v. Griffin*, 604 F. Supp. 3d 1143, 1148–49 (D.N.M. 2022) (emphasis in original); *see Magadia*, 999 F.3d at 677; *Vermont Agency*, 529 U.S. at 773–74; *Little*, 690 F.3d at 285. For a *qui tam* statute to validly support relator standing, the statute must "require[] that the plaintiff share part of the recovery with the government" and "provide[] procedural safeguards to ensure that the government retains some control of the action." *Burt*, 132 F.4th at 404; *see Magadia*, 999 F.3d at 677. For example, under the federal False Claims Act ("FCA"), the federal government may intervene in litigation and retains settlement and dismissal authority. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753–55 (5th Cir. 2001); *Griffin*, 604 F. Supp. 3d at 1148–49; *see also* Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 579, 588–90 (2005) (under English common law, "the crown could exercise partial control over *qui tam* actions").

Another core feature of a valid *qui tam* claims is that the state assigns a proprietary injury, rather than a solely sovereign injury. *Griffin*, 604 F. Supp. 3d at 1147–48. The remedy in genuine *qui tam* actions is compensatory damages, not monetary penalties or injunctive relief. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 294 n.24 (5th Cir. 1999). For example, in *Vermont Agency*, the Supreme Court upheld relator standing under the FCA because "[t]he FCA can reasonably be regarded as effecting a partial assignment

of the Government's *damages claim*." 529 U.S. at 773 (emphasis added).

These requirements for relator standing prevent *qui tam* actions from impermissibly authorizing citizen-suits that sidestep Article III's core injury-in-fact requirement. *See TransUnion*, 594 U.S. at 427 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue"); *Spokeo Inc. v. Robins*, 578 U.S. 330, 341 (2016); *Lujan*, 504 U.S. at 573–74.[3] And these requirements are the only way to avoid an unconstitutional assignment of Texas' prosecutorial authority to private citizens. *See infra* Section III.C; *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918).

When these requirements are lacking, courts dismiss claims brought under purported "*qui tam*" statutes for lack of standing. For example, the Sixth Circuit dismissed a claim under Tennessee's gambling recovery law, Tenn. Code § 29-19-105, because unlike true *qui tam* actions, Tennessee's law did not require that the "plaintiff share part of the recovery" and lacked "procedural safeguards to ensure that the government retain[ed] some control of the action." *Id.* at 404. Because "nothing in the statute suggests that the government is the real party in interest," the Court found that the Tennessee law "is not a *qui tam* statute" and the plaintiff was not entitled to "*qui tam* standing." *Id.* at 405.

Likewise, the Ninth Circuit dismissed a claim under California's Private Attorneys General Act, Cal. Lab. Code § 2699, for failing to conform with traditional *qui tam* actions.

---

[3] *See also Spokeo*, 578 U.S. at 348 (Thomas, J., concurring) ("Congress cannot authorize private plaintiffs to enforce *public* rights in their own names, absent some showing that the plaintiff has suffered a concrete harm particular to him." (emphasis in original)); Myriam E. Gilles, *Representational Standing:* U.S. ex rel. Stevens *and the Future of Public Law Litigation*, 89 Calif. L. REV. 315, 341–48 (2001) (arguing a full assignment of a sovereign injury falls outside of "traditional formulation of assignment" law and would violate separation of powers).

*Magadia*, 999 F.3d at 675–78. Several features looked like the FCA: California's law clearly operated as an assignment, the plaintiff shared the damages with the state, and the state controlled whether the plaintiff could bring a claim in the first place. *Id.* at 675. But because California lacked the ability to intervene or otherwise control the litigation once filed, the statute lacked the significant "procedural controls" necessary to ensure the government maintains "substantial authority" over the action and thus could not form a basis for standing for a private plaintiff's standing. *Id.* at 677; *see also Griffin*, 604 F. Supp. 3d at 1147–48 (rejecting *qui tam* standing under New Mexico's *quo warranto* statute because New Mexico fully assigned its sovereign—not proprietary—injury).

HB7 fails these principles and cannot support standing. Unlike a proper *qui tam* statute, HB7 is (1) a complete assignment (2) of the state's sovereign injury.

First, by its terms, HB7 "absolute[ly]" and fully assigns Texas's interest in the claim. Tex. Health & Safety Code Ann. § 171A.101(b). Unlike the FCA, Texas has no ability to control HB7 litigation or steer its direction. HB7 does not require Texas to consent to initiation of the suit. And Texas lacks the ability to intervene, settle, or dismiss the suit. HB7 also does not require plaintiffs to share any monetary award with Texas. *Id.* § 171A.104(b). Instead, it provides that "the state retain[s] no interest" in the claim, *id.* § 171A.101(b), and mandates that the "entire amount awarded" go to the plaintiff, with a portion going in some cases to a charitable organization designated by the plaintiff, *id.* § 171A.104(b). Like the state law struck down in *Burt*, Texas recovers nothing in HB7 suits. Texas relinquishes any interest in the claim as well as control over direction of the action. With no state interest or control over the suit, HB7 is in effect an impermissible

generalized citizen-suit statute. *See Lujan*, 504 U.S. at 573–74. This alone distinguishes HB7 from *Vermont Agency*—a partial, rather than total, assignment is a quintessential feature that ensures "the government is the real party in interest." *Burt*, 132 F.4th at 404–05; *see Griffin*, 604 F. Supp. 3d at 1149; *Magadia*, 999 F.3d at 675–78.

Second, HB7 impermissibly assigns to Plaintiffs purely sovereign injuries. Ms. Rodriguez's claim for monetary penalties does not convert Texas's sovereign interest into a proprietary one. *See* ECF No. 1 ¶ 36 (seeking $100,000 for each alleged violation of HB7). Ms. Rodriguez is seeking civil penalties, not compensatory damages, because the amount is "fixed without regard to any loss." *In re Xerox Corp.*, 555 S.W.3d 518, 530, 533–34 (Tex. 2018); *see* Tex. Health & Safety Code Ann. § 171A.104(a)(2) (monetary recovery is "an amount of not less than $100,000 for each violation" of HB7). The only potential injury here—which itself is not even concrete or actual—is a sovereign injury to Texas caused by someone violating its laws or having the "intent" to do so. But such a sovereign injury is not assignable and cannot be the subject of a qui tam claim under *Vermont Agency*. *Griffin*, 604 F. Supp. 3d at 1147.

No proprietary interest underlies HB7. Unlike fraud claims, no Texas property or monies are potentially damaged when someone "intends" to ship, or does in fact ship, abortion-inducing drugs into Texas. *See* ECF No. 1 ¶ 32. There is no risk of a financial governmental injury from someone violating HB7. And because Texas cannot recover any amount of the award, Tex. Health & Safety Code Ann. § 171A.104(b), Texas lacks any kind of financial interest in the HB7 claim, much less interest in avoiding financial damage to Texas' treasury. Instead, injunctive relief and the monetary penalties under HB7 are merely

designed to regulate the public sphere and discourage the "violation of [Texas'] laws," which is a sovereign interest. *Vermont Agency*, 529 U.S. at 771. But Article III does not permit assignment of such a sovereign injury, and it cannot be made the subject of a *qui tam* claim under *Vermont Agency*. *See Griffin*, 604 F. Supp. 3d at 1147.

Regardless of what label HB7 uses, it is in substance an impermissible citizen-suit. Ms. Rodriguez lacks any concrete, personal injury, and she cannot step into the State's shoes as in a traditional *qui tam* action. Ms. Rodriguez therefore lacks standing.

### C. Plaintiffs Lack Standing to Seek an Anti-Suit Injunction.

Both Plaintiffs assert an HB7 claim for an anti-suit injunction to prevent Dr. Coeytaux from filing a clawback lawsuit under California law. ECF No. 1 ¶ 41; *see* Cal. Civ. Code § 1798.300 *et seq.* This claim fails for two reasons.

First, the ability to assert an HB7 anti-suit-injunction claim hinges on the ability to bring an HB7 *qui tam* claim. *See* Tex. Health & Safety Code Ann. § 171A.151(a) (defining an anti-clawback provision as a suit brought against someone for "bringing or engaging in an action authorized by this chapter"). But Mr. Rodriguez abandoned his *qui tam* claim when he dismissed *Rodriguez I*, and Ms. Rodriguez has no standing to assert a *qui tam* claim, *see supra* Section B, and she failed to state a claim, *see infra* Section IV.

Second, Plaintiffs fail to allege a "certainly impending" future threat and thus lack standing to seek the "extraordinary remedy" of an anti-suit injunction. *Clapper*, 568 U.S. at 409 (emphasis omitted); *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 584 (5th Cir. 2023). Plaintiffs' complaint does not, and cannot, allege that Dr. Coeytaux has ever threatened to file suit under California law or otherwise caused Plaintiffs any injury. Rather,

Plaintiffs rely on the mere presence of California's shield law and the possibility that it could be used against them some day in the future. The shield law has been in effect since *Rodriguez I* was originally filed in July 2025, yet Dr. Coeytaux has not filed such an action. These hypothetical injuries based on "highly attenuated chain of possibilities" are insufficient to support standing to seek an injunction. *Clapper*, 568 U.S. at 410; *see Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (former councilman's change in campaign strategy and withholding of solicitations were self-imposed, speculative injuries because they "depend[ed] in large part on the actions of third-party donors" and prosecution under the law "was far from [] inevitable").

Even if Plaintiffs had alleged facts to show that the threat of a clawback action was imminent or inevitable, Plaintiffs would obviously challenge whether Dr. Coeytaux is entitled to a judgment—they might argue that California law does not apply at all to them—and challenge the law's enforceability, especially given that HB7 prohibits Texas courts from enforcing clawback actions and requires the application of Texas law in clawback lawsuits. *See* Tex. Health & Safety Code Ann. § 171A.151(b), (f). Ultimately, this chain of events is too hypothetical to establish a concrete and real injury in fact under Article III, and Plaintiffs lack standing to assert a claim for an anti-suit injunction under HB7.

## II. Mr. Rodriguez Failed to State a Claim for Wrongful Death.

Mr. Rodriguez's wrongful-death claim should be dismissed under Rule 12(b)(6) because his allegations, even if true, do not give rise to liability under the Wrongful Death Act. Wrongful death is a statutory action that "allows a deceased tort victim's surviving parents, children, and spouse to recover damages for their losses from the victim's death."

*In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009). A plaintiff's ability to sue is derivative of the decedent's right to have brought a tort suit for their own injuries had they lived. *Id.*; Tex. Civ. Prac. & Rem. Code § 71.003(a). The plaintiff must show that the defendant's tortious conduct proximately caused the death. *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 528 (Tex. 2025); Tex. Civ. Prac. & Rem. Code § 71.002(a)–(b). Here, the complaint fails to allege facts establishing that (1) Dr. Coeytaux proximately caused the abortion, and (2) Dr. Coeytaux's conduct was tortious. Each of these pleading defects independently requires dismissal.

### A. Mr. Rodriguez Failed to Allege Facts Establishing that Dr. Coeytaux Proximately Caused the September 2024 Abortion.

Even taking the allegations as true, Dr. Coeytaux was not the proximate cause of the September 2024 abortion. Proximate cause has "two elements: (1) cause in fact, and (2) foreseeability." *Werner Enters.*, 719 S.W.3d at 532. The first element, cause in fact, "has two components: (1) 'but-for' causation, and (2) 'substantial-factor' causation." *Id.* The complaint fails to allege facts to support either component of cause in fact.

**But-for causation.** An act or omission "is the 'but-for' cause of an injury if, without the act or omission, the harm would not have occurred." *Id.* (citation modified). The complaint fails to allege that Mrs. Garza would not have had an abortion if Dr. Coeytaux had not mailed abortion pills to Mr. Garza. Instead, Mrs. Garza obtained abortion pills from another source on a separate occasion, demonstrating that she could, and did, have an abortion *without* obtaining pills from Dr. Coeytaux. *See* ECF No. 1 at ¶¶ 14–15. Those allegations foreclose any inference that Dr. Coeytaux's alleged mailing of pills was a but-

for cause of her abortion, and defeats causation. *See Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 115 (Tex. 2013) (physician's negligence was not but-for cause of patient's suicide where evidence did not show that suicide would not have occurred regardless); *Pediatrics Cool Care v. Thompson*, 649 S.W.3d 152, 161–63 (Tex. 2022) (same).

**Substantial factor causation.** Substantial-factor causation "incorporates the idea of responsibility." *Werner Enters.*, 719 S.W.3d at 528 (citation modified). "[L]iability falls only on a party whose substantial role in bringing about the injury is such that he is 'actually responsible for the ultimate harm'"—not "other participants in the causal chain whose actions merely created the condition which made the injury possible." *Id.* (quoting *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 224 (Tex. 2010)). For example, in *Bell v. Campbell*, after two cars collided and a trailer that was attached to one car overturned, three people who gathered to help move the trailer were struck by another vehicle. 434 S.W.2d 117, 119 (Tex. 1968). Although the defendants' negligence caused the first collision, they were not responsible for the three individuals who were subsequently struck because their negligent acts "had run their course" and "simply created a condition which attracted [the plaintiffs] to the scene, where they were injured by a third party." *Id.*; *see also Roberts v. TXU Energy Retail Co.*, 171 S.W.3d 901, 904 (Tex. App. 2005) (disconnection of electricity was not a substantial factor in deaths because a third party's choice to use candles started the fire that caused the deaths).

Here, Mrs. Garza's decision to have an abortion, not Dr. Coeytaux's alleged mailing of pills, was the "active and immediate cause" of the abortion. *Bell*, 434 S.W.2d at 120. Mailing pills to Mr. Garza did not in and of itself result in the alleged abortion. Once Mr.

Garza received the pills, Dr. Coeytaux's involvement was complete and merely created the condition for Mr. Garza's and Mrs. Garza's subsequent acts. The "singular fact that substantially explains why" the abortion occurred is Mrs. Garza's decision to have an abortion and to ingest the pills. *Werner Enters.*, 719 S.W.3d at 534.

### B. The Complaint's Allegations of Statutory Violations Do Not Support a Wrongful Death Claim.

Mr. Rodriguez failed to plead a wrongful act that could support tort liability. "It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." *Perry v. S.N.*, 973 S.W.2d 301, 304 (Tex. 1998) (quoting *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). Because a wrongful-death plaintiff steps into the shoes of the decedent, *Labatt*, 279 S.W.3d at 644, he must show a legal duty owed by Dr. Coeytaux to Mrs. Garza's fetus. Mr. Rodriguez's wrongful-death claim is premised solely on Dr. Coeytaux's purported violations of various statutes, not on his breach of any common-law duty. ECF No. 1 ¶¶ 17–18. But statutory violations generally do not create tort liability: the "norm" is to "deriv[e] duty from the common law and look[] to the statute only for the standard of conduct." *Perry*, 973 S.W.2d at 307. Mr. Rodriguez's claim fails because he has not shown that these statutes were violated or that any violation creates tort liability.

#### 1. Mr. Rodriguez failed to plead facts showing statutory violations.

Mr. Rodriguez's bare allegations that Dr. Coeytaux "violated the law," ECF No. 1 ¶ 17, followed by a laundry list of statutory citations, *id.* ¶¶ 18–28, do not meet the high bar of establishing that any of these statutes were violated. The complaint nowhere pleads facts showing *how* Dr. Coeytaux's alleged conduct satisfies the elements of any of these

statutes, much less how any such violation gives rise to a duty in tort. The Federal Rules require more than a catalog of legal conclusions untethered to specific factual allegations. *Twombly*, 550 U.S. at 557. That deficiency is dispositive.

Regardless, even accepting the factual allegations as true, Mr. Rodriguez failed to establish violations of all these statutes. For example, Texas's pre-*Roe* abortion ban, ECF No. 1 at ¶¶ 25–26, was "repealed by implication." *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004); *see id.* at 850 (Jones, J., concurring) ("A judicial decision . . . cannot turn back Texas's legislative clock to reinstate the laws, no longer effective, that formerly criminalized abortion"). As to murder, ECF No. 1 at ¶¶ 27–28, the Criminal Homicide chapter of the Penal Code "does not apply to the death of an unborn child" if the conduct was "committed by the mother of the unborn child." Tex. Penal Code Ann. § 19.06(1). A person is not liable for aiding or abetting murder where the conduct aided is not itself murder. *See* Tex. Penal Code Ann. § 7.02(a)(1); *State v. Hunter*, 624 S.W.3d 589, 589 (Tex. Crim. App. 2021) (Keller, P.J., concurring in denial of review). Dr. Coeytaux also did not "directly commit[] murder" or "felony murder," *contra* ECF No. 1 at ¶¶ 27–28, because he did not "cause[]" the death of Mrs. Garza's fetus, Tex. Penal Code Ann. § 19.02(b). As discussed, *supra* Section II.A, he was not a "but for" cause of the abortion, and his alleged mailing of medication to Mr. Garza alone was "clearly insufficient" to produce death. Tex. Penal Code Ann. § 6.04(a).

**2. Alleged violations of these statutes do not give rise to tort liability.**

"Texas courts rarely imply a civil tort duty from a criminal statute." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 180 (5th Cir. 2018); *see Perry*, 973 S.W.2d at 304–

05 & n.4 (“[A] duty to obey the criminal law . . . is not equivalent to a duty in tort.”). For example, the Texas Supreme Court has refused to imply civil tort liability from a violation of laws mandating reporting of child abuse and prohibiting providing alcohol to minor social guests. *Allen*, 907 F.3d at 181 (citing *Perry*, 973 S.W.2d at 309; *Reeder v. Daniel*, 61 S.W.3d 359, 364–65 (Tex. 2001)). Indeed, the Texas Supreme Court has created a new civil duty from a statute “on only one occasion.” *Perry*, 973 S.W.2d at 307. No Texas court has held that violating the statutes cited in the complaint gives rise to civil tort liability. Federal courts should not “create ‘innovative theories of recovery’” under state law but should “rather merely apply [state law] ‘as it currently exists.’” *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995) (en banc) (refusing to create state-law private cause of action for a statutory violation) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1217 (5th Cir. 1985)). Under current Texas law, Mr. Rodriguez has no wrongful-death claim based on violations of any of the cited statutes. That requires dismissal.

#### 3. The Court Should Decline to Create a New Duty in Tort for the Alleged Statutory Violations.

Even if this Court were to consider whether to create a new tort duty based on the statutes cited in the complaint, every relevant factor militates against doing so. There are two “threshold questions”: “whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff’s injury is of a type that the statute was designed to prevent.” *Perry*, 973 S.W.2d at 305. Because a wrongful death plaintiff steps into the shoes of the decedent, Mr. Rodriguez must show that (a) the cited laws were intended to protect, not Mrs. Garza, but her fetus, and (b) the laws were designed to prevent

Mrs. Garza from choosing to have an abortion. He cannot do so. For example, the stated reasons for the Woman's Right to Know Act (ECF No. 1 at ¶¶ 20, 22) are to provide information to women to protect their health and advise them about potential complications.[4] More broadly, Texas has argued that its abortion regulations are intended and designed to protect women who seek abortion care, not to prevent abortions.[5]

Assuming Mr. Rodriguez could surpass those threshold hurdles, the Texas Supreme Court has identified several factors to consider when "determin[ing] whether it is appropriate to impose tort liability for violations of [a] statute." *Perry*, 973 S.W.2d at 305. In analyzing the factors, the Court "must look beyond the facts of this particular case to consider the full reach of the statute." *Id.* at 305. The question is not whether a statute that criminalized *only* the conduct alleged in the case—here, mailing abortion medication—would be an appropriate basis for a tort action. *Id.* Instead, the question is "whether it is appropriate to impose tort liability on any and every person who" violates the statute in *any*

---

[4] *See, e.g.*, H. Comm. on State Affs., Bill Analysis, H.B. 15, 78th Leg., R.S., at 2 (Tex. 2003); H. Comm. On State Affs., Bill Analysis, H.B. 15, 82d Leg., R.S., at 2–3 (Tex. 2011); H. Comm. on State Affs., Bill Analysis, H.B. 2, R.S., at 5–7 (Tex. 2013); Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 10 §§ 2–3, secs. 171.006(a)–(b), 2021 Tex. Sess. Law Serv. 3934, 3934–35 (codified at Tex. Health & Safety Code Ann. §§ 171.006(a)–(b), 171.061).

[5] *See, e.g.*, Br. for Resp't at 16, *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) (No. 15-274), 2016 WL 344496, at *16 ("[F]acially apparent and expressly stated purpose" of abortion regulations, including those related to "abortion-inducing drugs," was "to ensure patient safety and raise standards of care"); Br. of Appellants, *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411 (5th Cir. 2001) (No. 00–20037), 2000 WL 33983059, at *35 (arguing abortion facility licensing requirements were for the "protection [of] the health and safety of women undergoing abortion); State Defs.' Resp. to Pls.' Mot. Summ. J. 13, *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, No. 1:11-cv-00486-SS (W.D. Tex. Dec. 7, 2011), ECF No. 101 (defending the disclosures required by the Woman's Right to Know Act because "the entire point of informed consent is to provide patients with information that they may not want to hear, to ensure that they are fully informed about the nature and consequences of a medical procedure").

way. *Id.* The five "factors are not necessarily exclusive, nor is the issue properly resolved by merely counting how many factors lean each way." *Id.* at 306. Rather, the factors are "guides to assist a court in answering the ultimate question of whether imposing tort liability for violations of a criminal statute is fair, workable, and wise." *Id.*

First, courts consider whether recognizing a tort claim "would derive the element of duty solely from" the statute, rather than from the common law. *Id.* at 306. "[T]he defendant in most negligence per se cases already owes the plaintiff a pre-existing common law duty to act as a reasonably prudent person, so that the statute's role is merely to define more precisely what conduct breaches that duty." *Id.* "But recognizing a new, purely statutory duty can have an extreme effect upon the common law of negligence when it allows a cause of action where the common law would not." *Id.* (quotation marks omitted).

Here, there are no preexisting common law duties owed to Mrs. Garza's fetus. A person who provides an abortion owes no common-law duty to a fetus to: (1) be a (Texas) licensed physician, *contra* ECF No. 1 ¶¶ 18, 21; (2) only perform abortions in a Texas-licensed facility, *contra id.* ¶ 23; (3) provide an ultrasound before providing an abortion, *contra id.* ¶ 20, 22; (4) avoid using mail or a common carrier to deliver abortion medications, *contra id.* ¶ 24; or more generally (5) to deny a patient an abortion, *contra id.* ¶¶ 25–26. While there is a general duty to obtain consent for a medical procedure, that duty is owed to the patient, not to the fetus. *Contra id.* ¶¶ 20, 22. All these requirements are creatures of statute. "[T]he absence of a relevant common law duty" strongly counts against recognizing tort liability. *Perry*, 973 S.W.2d at 307.

The second factor is "whether the statute clearly defines the prohibited or required

conduct." *Id.* A statute that conditions compliance on "difficult judgment calls does not clearly define what conduct is required in many conceivable situations." *Id.* at 307–08. Several of the cited laws do not clearly define prohibited conduct. As discussed, the pre-*Roe* ban was impliedly repealed; thus, it does not clearly prohibit any conduct. *Contra* ECF No. 1 ¶¶ 25–26. The Court should not deepen this uncertainty by creating a new tort duty.

Third, courts consider whether recognizing a legal duty "would create liability without fault." *Perry*, 973 S.W.2d at 308. Violations of licensing requirements—such as a requirement that an abortion provider be a Texas-licensed physician—generally do not give rise to tort liability, including because licenses may not be renewed for reasons unrelated to "lack of skill." *Michaels v. Avitech, Inc.*, 202 F.3d 746, 752 (5th Cir. 2000); *see Morrison v. Le Tourneau Co. of Ga.*, 138 F.2d 339, 341 (5th Cir. 1943) (lack of pilot's license does not show pilot's lack of skill); *contra* ECF No. 1 at ¶¶ 18, 21, 23.

Fourth, courts consider whether recognizing a tort claim "would impose ruinous liability disproportionate to the seriousness of the defendant's conduct." *Perry*, 973 S.W.2d at 308. Here, Texas law rightly excludes Mrs. Garza from liability for her decision to have a self-managed abortion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.003(c)(1). Imposing potentially ruinous liability on an upstream actor who allegedly mailed abortion pills, while exempting from liability the person who decided to take the pills, would be fundamentally disproportionate.

The fifth factor is whether the injury resulted "indirectly from the violation of the statute," which weighs against liability. *Perry*, 973 S.W.2d at 308–09. The Texas Supreme Court has rejected tort liability based on violations of "aiding and abetting" statutes because

such violations are too far removed from the tortious harm, and the liability would be based on a third party's act. *Id.*; *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 279 (Tex. 1979); *contra* ECF No. 1 ¶¶ 18–22.

Here, even assuming the alleged facts are true, none of the statutory violations directly caused the alleged harm. Dr. Coeytaux's licensing status and alleged use of the mail to provide medication did not themselves cause an abortion; the abortion was caused by the independent actions of Mr. and Mrs. Garza. ECF No. 1 at ¶ 13. The Texas Supreme Court has stated that it is "not aware of any Texas case" applying tort liability for violation of a statute that "interposes not one but two independent actors between the plaintiff and the defendant." *Perry*, 973 S.W.2d at 309. This case should not be the first one. It would be especially odd to impose tort liability here where the direct cause of the abortion—Mrs. Garza's independent act of taking the pills—does not create tort liability. *See Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1996) (noting it would be anomalous to impose civil liability on social hosts for serving alcohol to an underage person where the Texas Legislature decided not to impose such liability on commercial providers of alcohol).

In addition, imposing tort liability here would be inconsistent with legislative intent. Imposing tort liability for a violation of the federal Comstock Act would be improper because it would effectively allow private parties to enforce the Comstock Act despite no indication that Congress intended to allow private enforcement. *See, e.g., Cort v. Ash*, 422 U.S. 66, 77–80 (1975); *contra* ECF No. 1 at ¶ 24. And the other cited abortion regulations are "part of a highly regulated statutory scheme, detailing" how and by whom the regulations are to be enforced. *Brighthouse Life Ins. Co. v. Daboub*, 577 F. Supp. 3d 504,

526 (N.D. Tex. 2021) *contra, e.g.*, ECF No. 1 ¶¶ 18–23, 25–26. Indeed, in enacting HB7 and the Texas Heartbeat Act, Senate Bill 8 of 2021 (Tex. Health & Safety Code Ann. §§ 171.201–212) ("SB8"), the Texas Legislature has specified exactly when private parties purportedly may sue over alleged abortions, and neither of those laws applies to the abortion that is the subject of the wrongful-death claim. *See Smith*, 940 S.W.2d at 607 ("We will not circumvent the Legislature's intentions by imposing a duty . . . it[] has rejected.").

For any of the above numerous, independent reasons, Mr. Rodriguez's wrongful-death claim should be dismissed.

## III. Ms. Rodriguez Fails to State an HB7 "Qui Tam" Claim.

### A. Ms. Rodriguez Is a Prohibited Plaintiff Under HB7.

Ms. Rodriguez's HB7 claims must be dismissed because she failed to allege facts showing her capacity to sue. Relevant here, an HB7 "qui tam action may not be brought" by any person who "committed an offense for which an affirmative finding of family violence was made" *or by anyone who "acts in concert or participation" with such person*. Tex. Health & Safety Code Ann. § 171A.101(d)(3)(B), (E) (emphasis added). This is an element of the claim, not a defense. *Cf. id.* § 170A.102 ("Defenses").

Ms. Rodriguez did not allege absence of this disqualification, and for good reason. Mr. Rodriguez was convicted of assault, and the court made an "affirmative finding of family violence." *See* Decl. of Christopher M. Odell attached as **Exhibit A**.[6] Thus, Mr.

[6] The Court may take judicial notice of these documents on a motion to dismiss. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); Fed. R. Evid. 201(b)(2); *see United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020) (taking judicial notice of state court record of conviction); *Ducksworth v. Rook*, 647 F. App'x 383, 385 & n.1 (5th Cir. 2016) (affirming dismissal of a claim that was barred by a prior conviction based on public records of the conviction).

Rodriguez cannot bring an HB7 claim—a fact that Plaintiffs do not dispute. *See generally Rodriguez I*, ECF No. 45; *Rodriguez I*, ECF Nos. 40, 43 (reply briefs in support of plaintiff's injunction motions which do not dispute Mr. Rodriguez's ineligibility).

Mr. Rodriguez's daughter, Ms. Rodriguez, is likewise barred from bringing an HB7 claim because she is "act[ing] in concert or participation" with him. Tex. Health & Safety Code Ann. § 171A.101(d)(3)(E). Mr. Rodriguez's daughter was substituted for him "as a qui tam relator" expressly to try to "allow the HB 7 claim to proceed regardless of whether" Mr. Rodriguez's conviction makes him "ineligible to serve as a qui tam relator." *Rodriguez I*, ECF No. 45 at 1. That is a classic case of acting in concert or participation. A person acts "in concert or participation" with another when, for example, they enable the other to "engage[] in procedural gamesmanship," *Met Water Vista Ridge, LP v. Blue Water Sys., LP*, 717 S.W.3d 901, 909–10 (Tex. App.—Houston [14th Dist.] 2025, no pet.), such as by serving as a co-plaintiff with a family member to evade that family member's restriction from filing suit. *See Lundahl v. Glob. E. LLC*, 643 F. App'x 752, 753 (10th Cir. 2016); *In re Pub. Serv. Co. of N.H.*, 848 F. Supp. 318, 327–28 (D.R.I. 1994) (third party "acted in concert" or participation when he "agreed to serve as [the prohibited party's] alter ego by allowing the suit to be brought in his name"), *aff'd on other grounds*, 43 F.3d 763 (1st Cir. 1995). Ms. Rodriguez is thus also statutorily barred from bringing an HB7 claim.

**B. Ms. Rodriguez's Allegations Are Vague and Conclusory.**

Ms. Rodriguez's HB7 claim is premised on two allegations. First, she alleges that "Coeytaux has mailed abortion pills into Texas many times since HB 7 took effect" and that she "is aware of at least two such occasions." ECF No. 1 at ¶ 34. Second, she alleges

that Dr. Coeytaux "intends to continue mailing abortion-inducing drugs into Texas." *Id.*

That comes nowhere close to meeting the federal pleading standard, which "requires more than labels," "conclusions," *Twombly*, 550 U.S. at 555, and "bare bone allegations that a wrong has occurred," *Beanal*, 197 F.3d at 166. Rather, she must allege details regarding "names, dates, locations, times or any facts" that both put the defendant "on notice as to what conduct supports the nature of [the] claims" and that establish those claims are plausible on their face." *Beanal*, 197 F.3d at 165; *Twombly*, 550 U.S. at 565 n.10 (finding insufficient a complaint that "identif[ied] a 7-year span in which the [] violations were supposed to have occurred" but "mentioned no specific time, place, or person involved in the alleged conspiracies"); *FTC v. AdvoCare Int'l, L.P.*, 2020 WL 6741968, at *4 (E.D. Tex. Nov. 16, 2020) ("bare allegation by the FTC that 'we have reason to believe that the defendant is about to violate the law,' when unaccompanied by supporting factual allegations" was insufficient (citation modified)). Ms. Rodriguez's barebones allegations are insufficient in both regards. Plaintiff is apparently attempting to allege her way to discovery in order to fish for evidence that Dr. Coeytaux has sent abortion medication "to any person or location in Texas" since HB7 took effect. ECF No. 1 at ¶¶ 33, 36. But "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

**C. HB7 Violates the Texas Constitution.**

HB7's *qui tam* provision violates the Texas Constitution by divesting the Attorney General, district attorneys, and county attorneys of their exclusive authority to enforce and litigate the state's rights and delegating that authority to unaccountable citizens. Under the

Texas Constitution, district and county attorneys "shall represent the State in all cases in the District and inferior courts," Tex. Const. art. V, § 21, and the "Attorney General shall represent the State in all suits and pleas in the Supreme Court," Tex. Const. art. IV, § 22; *see Abbott v. Harris Cnty.*, 672 S.W.3d 1, 3 (Tex. 2023) (noting the Texas Constitution has a "strong separation-of-powers provision"). The "powers thus conferred by the Constitution upon these officials are exclusive," and "[t]he Legislature cannot devolve them upon others." *Maud*, 200 S.W. at 376. Accordingly, a statute is invalid if it deprives these officials of their authority to represent the state. *See id.*; *Hill Cnty. v. Sheppard*, 178 S.W.2d 261, 264 (Tex. 1944).

Texas courts have construed statutes to avoid supplanting these officials' exclusive authority to represent the state. *See, e.g.*, *Maud*, 200 S.W. at 377. For example, in *Staples v. State*, the Texas Supreme Court construed a statute that permitted *quo warranto* suits to require that such suits be filed "by a county attorney, a district attorney, or the Attorney General," because any other reading would "seriously infringe upon" those officials' constitutional authority. 245 S.W. 639, 641–43 (Tex. 1922). Likewise, in *Agey v. American Liberty Pipe Line Co.*, the Texas Supreme Court construed a penalty-recovery statute that allowed private litigants to recover "in the name of the State" to instead require prosecution "by the State through its proper officials," recognizing that the Attorney General "has the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit." 172 S.W.2d 972, 974–75 (Tex. 1943).

Similarly, a Texas court held that SB8 is an "unconstitutional delegation of enforcement power to private persons." *Stean v. Texas Right to Life*, 2021 WL 12394878,

at *25–26 (98th Dist. Ct., Travis County., Tex. Dec. 9, 2021).[7] SB8 bans abortion at approximately six weeks' gestation, but—like HB7—it excludes state officials from enforcing that prohibition. Instead, it unconstitutionally "grants to 21 million Texans the power to bring cases without any guidance, supervision, or screening." *Id.* at *26.

HB7 does exactly what the Texas Constitution forbids. HB7 specifically bars enforcement "by this state, a political subdivision of this state, a district or county attorney, or any officer or employee of this state." Tex. Health & Safety Code Ann. § 171A.052(b); *see also id.* § 171A.101(a). Instead, it impermissibly purports to delegate that authority to unelected, unaccountable, unsupervised private citizens.

Additionally, HB7 violates the Texas Constitution by impermissibly delegating authority to enforce a penal sanction. *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 474 (Tex. 1997). HB7's mandatory award of $100,000 per violation is penal because it is untethered to any damages sustained by the state. Tex. Health & Safety Code Ann. §§ 171A.101(a), 171A.104(a); *see supra* Section I.B.2. Permitting such a delegation to private citizens raises "troubling constitutional issues." *Tex. Boll Weevil*, 952 S.W.2d at 469. A private delegate may pursue "a personal or pecuniary interest which is inconsistent with or repugnant to the public interest," and the "basic concept of democratic rule" is undermined when public powers are exercised by those "who are neither elected by the people, appointed by a public official or entity, nor employed by the government." *Id.*; *see TransUnion*, 594 U.S. at 428–29 (noting unharmed citizens "are not charged with

[7] In the appellate proceedings following this decision, the appellate courts have not reached the question of SB8's constitutionality.

pursuing the public interest in enforcing" compliance with the law).

Unlike private parties, public officials are accountable to the people and have discretion over "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *TransUnion*, 594 U.S. at 429. It is therefore "necessary for the state to be a party where the action is for the benefit of the public at large." *Staples*, 245 S.W. at 641; *see also Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 949 (1997) ("[*Q*]*ui tam* relators are different in kind than the Government . . . . [They are] motivated primarily by prospects of monetary reward rather than the public good."). HB7's *qui tam* provision is thus unconstitutional.

**D. HB7 Violates the Dormant Commerce Clause of the U.S. Constitution.**

HB7's *qui tam* provision also violates the dormant Commerce Clause. The Commerce Clause reserves to Congress the power to "regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3. This Clause also "prohibits state laws that unduly restrict interstate commerce" and "prevents the States from adopting protectionist measures." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). State laws violate the dormant Commerce Clause if they mandate "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm v. Heald*, 544 U.S. 460, 472 (2005). "[A] law can discriminate against interstate commerce by its text (or 'face'), effects, or purpose." *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 321 (5th Cir. 2022) (footnote reference omitted).

Laws facially discriminate when they penalize out-of-state persons for shipping or transporting goods to in-state consumers while permitting in-state persons to do so. For

example, in *Granholm*, the Supreme Court invalidated a law that allowed in-state wineries to ship directly to consumers but banned out-of-state wineries from doing so, as well as a law that gave in-state wineries preferential treatment. 544 U.S. 460, 469–71, 473–75 (2005); *see also Dickerson v. Bailey*, 336 F.3d 388, 398 (5th Cir. 2003) (Texas law facially discriminated in permitting only in-state wineries to ship directly to Texas residents). Similarly, a state law facially discriminated when it defined "intoxicating hemp products" to include only in-state products, "effectively criminaliz[ing] the possession, shipment, and transportation of out-of-state intoxicating hemp products" "while simultaneously allowing intoxicating hemp products from [inside the state] to survive." *Loki Brands, LLC v. Platkin*, 2024 WL 4457485, at *4, *11 (D.N.J. Oct. 10, 2024).

A law can also facially discriminate if it "denies ordinary legal defenses or like privileges to out-of-state persons or corporations"—for example, by tolling statutes of limitations differently. *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 891–94 (1988); *see also John Havlir & Assocs., Inc. v. Tacoa*, Inc., 810 F. Supp. 752, 757 (N.D. Tex. 1993) (law facially discriminatory where it required only out-of-state manufacturers to enter into a written contract and pay commission to a Texas-based sales representative).

HB7 is a protectionist scheme that facially discriminates against out-of-state physicians and hospitals. By its text, HB7 "does not apply to and a civil action . . . may not be brought against . . . a physician," Tex. Health & Safety Code Ann. § 171A.002(a)(4), defined as "an individual licensed to practice medicine in this state," *id.* § 171A.001(8), "unless the qui tam relator pleads and proves that the provider or physician engaged in conduct constituting a violation of Section 171A.051 while located outside this state," *id.*

§ 171A.101(d)(8). Thus, HB7 explicitly does not prohibit Texas-licensed physicians inside Texas from mailing abortion pills to someone in Texas, while out-of-state physicians can be sued and held liable for the exact same conduct. Likewise, HB7 prohibits *qui tam* suits against hospitals licensed in Texas or owned or operated by the state, *see id.* §§ 171A.001(6), 171A.002(a)(1), but permits suits against out-of-state hospitals. This protectionism was deliberate. The Legislature added this language in response to lobbying for a carve-out for Texas physicians and hospitals. *See supra*, at 6 n.2.

"[T]he Supreme Court has long held that state laws discriminating against interstate commerce on their face are virtually *per se* invalid," and the State must demonstrate under "the strictest scrutiny" "that it has no other means to advance a legitimate local interest." *Dickerson*, 336 F.3d at 396. The State's burden is so heavy that courts have "generally struck down the statute without further inquiry" once facial discrimination is shown. *Id.* This Court should do so as well. The reason for HB7's discrimination, protectionism, is not a legitimate interest. *Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*, 128 F.3d 910, 917–18 (5th Cir. 1997). Even assuming some legitimate interest, there is no plausible explanation for why this interest could not be served by applying HB7 impartially, regardless of provider location.

## IV. Plaintiffs Failed to State an Anti-Clawback Claim Under HB7.

Relevant here, only the HB7 claimant may seek an anti-clawback injunction and the injunction may only issue in an action" "authorized by" or "alleg[ing] a violation of" HB 7. Tex. Health & Safety Code Ann. § 171A.151(a), (c). Even assuming such an injunction

could properly issue (which Defendant does not concede),[8] without an HB7 claim there is no basis for an anti-clawback injunction. Mr. Rodriguez does not—and cannot—assert an HB7 claim. Thus, he may not seek an anti-clawback injunction.[9] Ms. Rodriguez is also a prohibited plaintiff under HB7, *see supra* Section III.A, and has otherwise failed to state an HB7 claim for the reasons discussed *supra* Section III.B. Nor does the All Writs Act save Plaintiffs' claim, *contra* ECF No. 1 ¶ 42, as they lack standing and have not shown any "critical and exigent circumstances" that justify such extraordinary relief. *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers); *see supra* Section I. Thus, the anti-clawback injunction claim must be dismissed.

**CONCLUSION**

This Court should dismiss Plaintiff's complaint for lack of subject-matter jurisdiction and failure to state a claim under Rule 12(b)(1) and (6).

Dated: September 1, 2026

Respectfully submitted,
*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677

[8] Defendant will set forth additional reasons Plaintiffs are not entitled to an anti-clawback injunction in his forthcoming opposition briefs to Plaintiffs' motions for preliminary injunction (ECF No. 5) and for Rule 54(b) partial final judgment (ECF No. 6).

[9] Nor has Mr. Rodriguez alleged any facts entitling him to such injunction as a person "in privity" with the HB7 claimant, Ms. Rodriguez. Tex. Health & Safety Code Ann. § 171A.151(c); *see, e.g.*, *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985) ("Close family relationships are not sufficient, by themselves, to establish privity . . . ."); *Brown v. Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005, no pet.) ("[P]rivity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same facts.").

Christopher.Odell@arnoldporter.com
Leah Schultz
Texas State Bar No. 24126910
S.D. Tex. Bar No. 3737066
Leah.Schultz@arnoldporter.com
811 Main Street, Suite 1800
Houston, TX 77002-2755
P: (713) 576-2400
F: (713) 576-2499

Marc Hearron
HEARRON PLLC
Texas State Bar No. 24050739
(*pro hac vice forthcoming*)
marc@hearronlaw.com
100 Crescent Court
Suite 700, PMB 17265624
Dallas, TX 75201
P: (214) 278-6815

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
District of Columbia State Bar No. 1002396
(*pro hac vice forthcoming*)
jhudson@reprorights.org
1600 K St. NW
Washington, DC 20002
P: (202) 628-0286

**COUNSEL FOR DEFENDANT**
**REMY COEYTAUX**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1. 2026, the foregoing document was electronically filed with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic filing system.

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE
SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com