**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY RODRIGUEZ and ISABELLA IRENE RODRIGUEZ | § | |
| | § | |
| Plaintiffs, | § | C.A. NO. 3:26-cv-00207 |
| | § | |
| v. | § | |
| | § | |
| REMY COEYTAUX | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ..... 1
BACKGROUND ..... 3
A. California's Shield Law ..... 3
B. Plaintiffs' Lawsuit ..... 5
ARGUMENT ..... 7
I. HB7 Precludes Plaintiffs from Obtaining an Anti-Clawback Injunction. ..... 7
II. Plaintiffs Failed to Meet Their Burden Under the Traditional Four-Part Test. ..... 10
A. Plaintiffs Cannot Demonstrate Likelihood of Success on the Merits. ..... 11
B. Plaintiffs Cannot Demonstrate that They Face Irreparable Harm Absent an Injunction. ..... 13
C. The Balance of Equities Does Not Favor Injunctive Relief. ..... 17
D. Nor Is a Preliminary Anti-Clawback Injunction in the Public Interest. ..... 19
III. State Law Cannot Displace Federal Equitable Standards for Issuance of a Preliminary Injunction. ..... 22
A. The Judiciary Act of 1789 and Rule 65 Require This Court Apply the Four-Part Test. ..... 23
B. The Four-Part Test Is Procedural Under Erie. ..... 26
CONCLUSION ..... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Plaintiffs v. All Defendants*,
645 F.3d 329 (5th Cir. 2011) ........ 27

*Am. Radio Ass'n v. Mobile S.S. Ass'n, Inc.*,
483 F.2d 1 (5th Cir. 1973) ........ 20

*Aon Re, Inc. v. TIG Ins. Co.*,
2009 WL 3075584 (N.D. Tex. Sept. 28, 2009) ........ 20

*Barber v. Bryant*,
860 F.3d 345 (5th Cir. 2017) ........ 11

*Berk v. Choy*,
607 U.S. 187 (2026) ........ 24, 26

*Black Fire Fighters Ass'n of Dallas v. City of Dallas*,
905 F.2d 63 (5th Cir. 1990) ........ 10

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*,
356 U.S. 525 (1958) ........ 27, 28

*Clark Equip. Co. v. Armstrong Equip. Co.*,
431 F.2d 54 (5th Cir. 1970) ........ 29

*Coaction Specialty Mgmt. Co., Inc. v. eMaxx Ins. Services, LLC*,
2025 WL 3718475 (S.D.N.Y. Dec. 23, 2025) ........ 23

*D.F. Pray, Inc. v. Nat'l Fire Ins. Co. of Hartford*,
2026 WL 523895 (D. Mass. Feb. 25, 2026) ........ 15

*Dennis Melancon, Inc. v. City of New Orleans*,
703 F.3d 262 (5th Cir. 2012) ........ 15

*Direct Biologics, L.L.C. v. McQueen*,
63 F.4th 1015 (5th Cir. 2023) ........ 10

*Donovan v. City of Dallas*,
377 U.S. 408 (1964) ........ 20

*EEOC v. Pitre Inc.*,
2012 WL 12995020 (D.N.M. Jan. 26, 2012) ........ 19

*Expedia, Inc. v. Rebound Int'l, LLC*,
2021 WL 3702169 (S.D. Tex. May 13, 2021) ........ 16

*Fed. Sav. & Loan Ins. Corp. v. Dixon*,
835 F.2d 554 (5th Cir. 1987) .................... 24

*Ferrero v. Associated Materials Inc.*,
923 F.2d 1441 (11th Cir. 1991) .................... 25

*Fighters Inc., LLC v. Elec. Arts Inc.*,
2009 WL 10699504 (C.D. Cal. Oct. 30, 2009).................... 19

*Flood v. ClearOne Commc'ns, Inc.*,
618 F.3d 1110 (10th Cir. 2010) .................... 26, 28

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 (1996).................... 27

*Gonannies, Inc. v. Goupair.Com, Inc.*,
464 F. Supp. 2d 603 (N.D. Tex. 2006) .................... 16

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999).................... 24

*Guaranty Trust Co. of N.Y. v. York*,
326 U.S. 99 (1945).................... 23, 25, 27, 28, 29

*Hanna v. Plumer*,
380 U.S. 460 (1965).................... 27, 28

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944).................... 25

*Heil Trailer Int'l Co. v. Kula*,
542 F. App'x 329 (5th Cir. 2013) .................... 23, 28

*Kowalski v. Tesmer*,
543 U.S. 125 (2004).................... 21

*Louisiana v. Centers for Disease Control & Prevention*,
603 F. Supp. 3d 406 (W.D. La. 2022).................... 10, 11

*Moore v. Tangipahoa Par. Sch. Bd.*,
507 F. App'x 389 (5th Cir. 2013) .................... 19

*Murthy v. Missouri*,
603 U.S. 43 (2024).................... 12

*Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*,
756 F.3d 825 (5th Cir. 2014) .................... 25, 26

*Newby v. Enron Corp.*,
302 F.3d 295 (5th Cir. 2002) .................... 20

*Parr v. Cougle*,
127 F.4th 967 (5th Cir. 2025) ........ 11

*PCI Transp., Inc. v. Fort Worth & W. R. Co.*,
418 F.3d 535 (5th Cir. 2005) ........ 10

*Portée v. Morath*,
683 F. Supp. 3d 628 (W.D. Tex. 2023)........ 19

*Purcell v. Summers*,
145 F.2d 979 (4th Cir. 1944) ........ 29

*Sampson v. Murray*,
415 U.S. 61 (1974)........ 10

*Sheffield v. Bush*,
604 F. Supp. 3d 586 (S.D. Tex. 2022) ........ 13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 25, 28

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)........ 24

*Texas v. Biden*,
10 F.4th 538 (5th Cir. 2021) ........ 14

*Texas v. United States Env't Prot. Agency*,
662 F. Supp. 3d 739 (S.D. Tex. 2023) ........ 14

*TransPerfect Translations, Inc. v. Leslie*,
594 F. Supp. 2d 742 (S.D. Tex. 2009) ........ 23

*Truly v. Wanzer*,
46 U.S. 141 (1847)........ 24

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)........ 24

*United States v. Tellez*,
2009 WL 10669893 (W.D. Tex. June 11, 2009) ........ 10

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981)........ 26

*Vapor Tech. Ass'n v. Graham*,
167 F.4th 302 (5th Cir. 2026) ........ 11, 12

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*,
751 F.2d 721 (5th Cir. 1985) .......... 20

*Walker v. Armco Steel Corp.*,
446 U.S. 740 (1980) .......... 28

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 21

*Weatherly v. Pershing, L.L.C.*,
945 F.3d 915 (5th Cir. 2019) .......... 27

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) .......... 24, 25

*Winter v. Nat. Res. Defense Council, Inc.*,
555 U.S. 7 (2008) .......... 10, 13, 14, 23

**Statutes**

Cal. Civ. Code §§ 1798.300–1798.308 .......... 3

Cal. Civ. Code § 1798.300(a) .......... 4

Cal. Civ. Code § 1798.300(a)(2) .......... 17

Cal. Civ. Code § 1798.300(d)(1)(C) .......... 4

Cal. Civ. Code § 1798.300(e) .......... 4

Cal. Civ. Code § 1798.303 .......... 4

Cal. Civ. Code § 1798.305 .......... 5

42 U.S.C. § 1983 .......... 16

Tex. Code Crim. Proc. art. 42.013 .......... 5

Judiciary Act of 1789 .......... 7, 24, 25, 29

Rules Enabling Act .......... 24, 26

Tex. Health & Safety Code § 171A.051(a)(2) .......... 5

Tex. Health & Safety Code § 171A.101(a) .......... 5

Tex. Health & Safety Code § 171A.101(d)(3)(B) .......... 5, 8

Tex. Health & Safety Code § 171A.101(d)(3)(E) .......... 5, 8

Tex. Health & Safety Code § 171A.151(a) .......... 8, 12, 17

Tex. Health & Safety Code § 171A.151(c) .......... 6, 8, 26

Tex. Health & Safety Code § 171A.151(f) .......... 6, 15, 16, 22

**Other Authorities**

Fed. R. Civ. P. 54(b) .......... 6, 7

Fed. R. Civ. P. 65 .......... 7, 24, 25, 26, 29

Seventh Amendment .......... 25, 28

Texas Constitution .......... 12

United States Constitution .......... 12, 24

11A Wright & Miller's Federal Practice & Procedure § 2942 (3d ed.) .......... 20, 21

19 Wright & Miller's Federal Practice & Procedure § 4513 (3d ed.) .......... 27, 28

## INTRODUCTION

Jerry Rodriguez and his daughter Isabella Rodriguez seek the extraordinary remedy of an anti-suit injunction under Texas House Bill 7 ("HB7") to shield them from a purely hypothetical litigation risk of their own making. HB7 purports to permit private citizens to act as "*qui tam*" plaintiffs to bring civil actions against persons who they allege provide abortion-inducing drugs to someone in Texas. HB7 also purports to authorize issuance of an anti-suit injunction to such "*qui tam*" plaintiffs to prevent the filing of "clawback" lawsuits under other states' "shield" laws.

But because Plaintiffs are barred from being "*qui tam*" plaintiffs, they cannot invoke HB7's anti-suit injunction provision. HB7 prohibits Mr. Rodriguez from bringing a "*qui tam*" claim because he has a domestic-violence conviction. Mr. Rodriguez dismissed his prior HB7 lawsuit against Dr. Remy Coeytaux once his conviction was uncovered. Although his daughter, Ms. Rodriguez, asserts the "*qui tam*" claim in this second lawsuit, she is also precluded from bringing it because the bar extends to anyone working in concert or participation with a person who has a domestic-violence conviction. Ms. Rodriguez is acting in concert or participation with her father because she joined his lawsuit expressly to allow the HB7 claim to proceed despite her father's bar. This dooms Plaintiffs' request for injunctive relief because having an HB7 claim is a prerequisite to seeking an anti-suit injunction under HB7.

Regardless, Plaintiffs cannot possibly demonstrate a need for equitable relief under the well-established four-part test. Plaintiffs are unlikely to succeed on the merits given the numerous deficiencies in their claims raised in Dr. Coeytaux's Motion to Dismiss. Nor have

Plaintiffs provided evidence of irreparable harm. Plaintiffs argue that, absent an anti-clawback injunction, they "will be unable to litigate" this case "without exposing themselves to ruinous civil liability" from a hypothetical "clawback" suit under California law. ECF No. 5 at 6. But that did not stop Mr. Rodriguez from suing Dr. Coeytaux in July 2025—several months before HB7 was enacted. Mr. Rodriguez is determined to sue Dr. Coeytaux with or without a preliminary injunction. Plaintiffs also face no imminent harm: Mr. Rodriguez has litigated claims against Dr. Coeytaux for well over a year without even a hint of a clawback action being filed against them. Plaintiffs must show more than a mere risk that they might one day be named in a lawsuit; they must present evidence. They have presented none. Their speculative, self-inflicted "harm" does not establish Article III standing or justify the extraordinary relief they seek. Nor do Plaintiffs explain why the purely economic harm they allege would be "irreparable" in any case.

Neither does the balance of equities favor Plaintiffs' requested injunction, which would provide asymmetric rather than equitable relief. Though Plaintiffs seek damages and injunctive relief against Dr. Coeytaux through this lawsuit, they ask this Court to provide an insurance policy against any claims that Dr. Coeytaux might bring *against them* under California law. Plaintiffs' alleged harm is nothing more than the ordinary possibility of adverse litigation, while the requested injunction would impose concrete and immediate restrictions on Dr. Coeytaux's exercise of legal remedies available under California law. Finally, the public interest does not favor such an approach, which would require this Court to intrude on principles of federalism and comity by enjoining a California law in favor of Texas law at the request of a private litigant. Equity is best served by abstaining from a

needless battle between Texas and California laws based on a speculative threat of a future clawback suit.

Unable to satisfy the traditional four-factor test for injunctive relief, Plaintiffs argue that this Court must issue a preliminary injunction "on request"—without any evidence or analysis. ECF No. 5 at 11–12. But it is well settled that state law does not define federal courts' equitable powers or displace the elements necessary to access equitable jurisdiction. This Court should reject Plaintiffs' attempt to re-carve the well-established contours of federal equitable jurisdiction.

## BACKGROUND

### A. California's Shield Law

In 2023, California's legislature enacted a "shield law" to protect providers of reproductive and gender-affirming health care from facing civil or criminal liability for providing such care in any lawsuits that might be filed in other states. *See* Cal. Civ. Code §§ 1798.300–1798.308. The California legislature promulgated the law in response to many states' enactments of near-total abortion bans in the wake of the U.S. Supreme Court overturning the federal constitutional right to abortion.

Among other concerns, California's shield law addresses the potential for liability against providers who are alleged to have provided medication abortion via telehealth—care that is lawful in California. A California prescriber may face liability, for example, if they prescribe medication abortion to a patient who claims to be in a state where abortion is lawful but is actually in a state where abortion is banned. California's shield law protects the prescriber from liability for providing such care, regardless of the patient's location.

Specifically, under the shield law, "[l]egally protected health care activity" includes "[t]he provision of reproductive health care services . . . by a person duly licensed under the laws of California . . . if the service or care is lawful under the laws of California, regardless of the patient's location." Cal. Civ. Code § 1798.300(d)(1)(C). "Reproductive health care services" includes "all services, care, or products of a medical, . . . prescribing, or dispensing nature relating to the human reproductive system provided in accordance with the constitution and laws of this state, whether provided in person or by means of telehealth services which includes . . . all services, care, and products relating to . . . the termination of a pregnancy." *Id.* § 1798.300(e).

To protect providers against civil lawsuits for engaging in legally protected health care services, California's shield law provides so-called clawback causes of action. Specifically, the shield law creates a cause of action against a person who "engages or attempts to engage in abusive litigation." *Id.* § 1798.303. This clawback claim may be brought by "a defendant in the abusive litigation." *Id.* "Abusive litigation" is litigation "to deter, prevent, sanction, or punish a person engaging in legally protected health care activity" in either of two ways: (1) "[f]iling" litigation where liability is based on a legally protected health care activity or (2) "[a]ttempting to enforce an order or judgment issued in connection" with such litigation. *Id.* § 1798.300(a). California's shield law thus creates two potential avenues for a clawback claim: (1) a claim that accrues upon the filing of abusive litigation and (2) a separate claim that does not accrue until there is an order or judgment issued in abusive litigation and someone tries to enforce that order or judgment.

In a clawback lawsuit, if the court finds for the plaintiff, "recovery shall be in the amount of three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other expenses, costs, or reasonable attorney's fees incurred in connection with the abusive litigation." *Id.* § 1798.305.

**B. Plaintiffs' Lawsuit**

On July 20, 2025, Plaintiff Jerry Rodriguez filed a lawsuit against Dr. Coeytaux, seeking damages for wrongful death resulting from Kendal Garza's alleged abortion in September 2024. *See generally Rodriguez v. Coeytaux*, Case No. 3:25-cv-00225 (S.D. Tex. July 20, 2025), ECF No. 1.

On December 4, 2025, Texas House Bill 7 ("HB7") took effect. HB7 states that no person may "mail, transport, deliver, prescribe, or provide an abortion-inducing drug in any manner to or from any person or location in this state." Tex. Health & Safety Code Ann. § 171A.051(a)(2). It purports to grant any "person" (other than a state official) a cause of action against another who violates or intends to violate HB7. *Id.* § 171A.101(a). But HB7 prohibits certain people from bringing suit, including individuals who "committed an offense for which an affirmative finding of family violence was made under Article 42.013, Code of Criminal Procedure" and anyone who "act[s] in concert or participation" with them. *Id.* § 171A.101(d)(3)(B), (E).

HB7 also includes provisions that attempt to nullify other States' shield laws. For example, it states that if a person brings an HB7 suit, then "the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant" from

"bringing" or "continuing to litigate" a clawback suit. *Id.* § 171A.151(c). Furthermore, if a clawback suit is brought, HB7 creates a cause of action for the HB7 plaintiff to recover a mandatory award of (1) damages from defending against the clawback suit, including the amount of the clawback judgment, costs, and fees; (2) costs and fees for bringing the action to recover said damages; and (3) the greater of "twice the sum of" the prior two categories of damages, costs, and fees or $100,000. *See id.* § 171A.151(f).

On February 1, 2026, Mr. Rodriguez amended his complaint in *Rodriguez I* to add claims under HB7, including a claim for an anti-clawback injunction. *See Rodriguez I*, ECF No. 16. He then moved for a preliminary anti-clawback injunction and for partial final judgment under Rule 54(b) on the anti-clawback injunction claim. *Rodriguez I*, ECF Nos. 17, 24. On April 16, 2026, Dr. Coeytaux moved to dismiss all of plaintiff's claims, including the anti-clawback injunction claim, for lack of standing and failure to state a claim. *Rodriguez I*, ECF No. 30.

On June 30, 2026, Mr. Rodriguez voluntarily dismissed *Rodriguez I*—only to refile this lawsuit the same day, newly joined by his daughter Isabella Rodriguez. *Compare Rodriguez I*, ECF No. 49, *with Rodriguez v. Coeytaux*, Case No. 3:26-cv-00207 (S.D. Tex. June 30, 2026) ("*Rodriguez II*"), ECF No. 1. The instant lawsuit is nearly identical to *Rodriguez I*. Now, however, Ms. Rodriguez alone asserts the HB7 "*qui tam*" claim, and yet both Plaintiffs seek an anti-clawback injunction. *Compare Rodriguez II*, ECF No. 1, *with Rodriguez I*, ECF Nos. 16, 17, 45-2. Plaintiffs substituted Ms. Rodriguez for Mr. Rodriguez as the "*qui tam*" relator to "allow the HB 7 claim to proceed regardless of whether Jerry

Rodriguez's HB 7 claim" is statutorily barred due to his domestic-violence conviction. *Rodriguez I*, ECF No. 45 at 1.

As in *Rodriguez I*, Plaintiffs filed a motion for a preliminary anti-clawback injunction, as well as a premature motion for Rule 54(b) partial final judgment on the anti-clawback injunction claim. *Rodriguez II*, ECF Nos. 5–6. As in *Rodriguez I*, Dr. Coeytaux has moved to dismiss all of Plaintiffs' claims, including the anti-clawback injunction claim, for lack of standing and failure to state a claim. *Rodriguez II*, ECF No. 15.

## ARGUMENT

Plaintiffs' motion fails thrice over. First, neither Plaintiff may seek an anti-clawback claim under HB7 because Mr. Rodriguez has been convicted of family violence and his daughter Ms. Rodriguez is acting in concert with him. Second, even if Plaintiffs passed this threshold barrier, they have not met their heavy burden to justify one of the most extraordinary remedies available in law, an anti-suit injunction. Third, likely because they know they cannot meet their burden under the four-part test, Plaintiffs argue that the Court has no discretion and must issue a preliminary injunction upon their "request" based on Texas law. *See* ECF No. 5 at 11–15. But because the four-part test is a procedural rule derived from the Judiciary Act of 1789, Rule 65, and equity practice, this Court must apply that test rather than HB7's automatic injunction rule under *Erie*.

### I. HB7 Precludes Plaintiffs from Obtaining an Anti-Clawback Injunction.

The Court should deny Plaintiffs' motion for a straightforward reason: neither Mr. Rodriguez nor his daughter can bring an HB7 claim and, therefore, they have no basis to seek an HB7 anti-suit injunction. An automatic injunction is unavailable to a plaintiff who

has no right to invoke the statute in the first place. Two categories of persons are statutorily precluded from bringing an HB7 claim: (1) anyone who has "committed an offense for which an affirmative finding of family violence was made"; and (2) anyone who "acts in concert or participation" with such person. Tex. Health & Safety Code Ann. § 171A.101(d)(3)(B), (E). Mr. Rodriguez, who dismissed his HB7 claim, falls in the first category, while his daughter falls firmly in the second. As a result, Plaintiffs are prohibited from proceeding under HB7. Even if the Court determines HB7 does not require the four-part test, Plaintiffs do not have grounds to access HB7. Further, because an HB7 anti-clawback injunction may only issue if the plaintiff is "bringing or engaging in an action authorized by this chapter," *id.* § 171A.151(a), (c), Plaintiffs are equally prohibited from obtaining an anti-clawback injunction under HB7.

Start with Mr. Rodriguez. He certainly cannot obtain an anti-clawback injunction. He does not assert an HB7 claim in this action—only his daughter does. ECF No. 1 at 10. Mr. Rodriguez is therefore not "bringing or engaging" in an HB7 claim and has no right to invoke its anti-clawback provision. Tex. Health & Safety Code Ann. § 171A.151(a). Nor could he, because his conviction of domestic violence precludes him from asserting one—a fact that he effectively conceded by voluntarily dismissing *Rodriguez I* to remove his HB7 claim. *See* ECF No. 15 at 31–32.

Ms. Rodriguez's claim fares no better. She too is statutorily barred from "bringing or engaging" in an HB7 claim because she is "act[ing] in concert or participation" with her father. *See id.* at 31–32 & n.9; *see also* Tex. Health & Safety Code Ann. §§ 171A.151(a), 171A.101(d)(3)(E). Mr. Rodriguez's procedural machinations make this clear. Mr.

Rodriguez initiated an HB7 action more than a year ago, but only on his own behalf. Although his daughter could have joined that action at the outset or later, she never did. When Dr. Coeytaux raised Mr. Rodriguez's statutory disqualification for the first time in his motion to dismiss, *Rodriguez I*, ECF No. 30 at 32, Mr. Rodriguez requested multiple extensions of time to respond, then sought to file an amended complaint to include his daughter so that, in his words, his daughter's joinder "will allow the HB 7 claim to proceed regardless of whether" Mr. Rodriguez's conviction makes him "ineligible to serve as a qui tam relator." *Rodriguez I*, ECF No. 45 at 1. One day after Dr. Coeytaux noted that amendment would be futile because Ms. Rodriguez was also disqualified, *Rodriguez I*, ECF No. 48 at 10–11, Mr. Rodriguez voluntarily dismissed his case. *Rodriguez I*, ECF No. 49. Hours later, he filed *Rodriguez II*, which includes his daughter as a co-plaintiff and in which he does not assert an HB7 "*qui tam*" claim at all.

Indeed, Ms. Rodriguez now expressly asks the Court to grant "an antisuit injunction to prevent Dr. Coeytaux from suing *Mr. or Ms. Rodriguez* or any person providing legal representation or any type of assistance to the plaintiffs under these clawback provisions." ECF No. 5 at 2 (emphasis added); *see also* ECF No. 5-3 (proposed order) ("[P]laintiffs Jerry Rodriguez and Isabella Irene Rodriguez are likely to succeed on the merits of their request for an antisuit injunction that restrains defendant Remy Coeytaux from suing Mr. or Ms. Rodriguez."). In other words, Ms. Rodriguez is invoking HB7 to try to obtain an anti-clawback injunction for her father's protection because he is statutorily ineligible to obtain such protection himself. *See* ECF No. 15 at 38–39 & n.9. That is a textbook case of acting in concert or participation.

Thus, even accepting Plaintiffs' argument that HB7 mandates an injunction without application of the traditional four-part test, their statutory disqualification independently forecloses that relief.

**II. Plaintiffs Failed to Meet Their Burden Under the Traditional Four-Part Test.**

Even if Plaintiffs could overcome their statutory ineligibility to proceed under HB7, they fail to demonstrate entitlement to a preliminary anti-suit injunction. A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing," demonstrates: (1) substantial likelihood of success on the merits; (2) likelihood of irreparable injury; (3) a favorable balance of hardships; and (4) no adverse effect on the public interest. *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990); *accord Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1020 (5th Cir. 2023) (citing *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs must carry their burden on each element. *Black Fire Fighters Ass'n*, 905 F.2d at 65.

Plaintiffs fail to carry their burden on *any* of the four factors and do not present competent evidence supporting any element of relief. *See PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 545–46 (5th Cir. 2005) (affirming denial where movant failed to present probative evidence). Instead, their motion rests entirely on speculation and attorney argument, which is insufficient as a matter of law to sustain a request for extraordinary relief. *See Sampson v. Murray*, 415 U.S. 61, 88–89 (1974) (requiring verified pleadings, affidavits, or testimony to support a preliminary injunction); *United States v. Tellez*, 2009 WL 10669893, at *1 (W.D. Tex. June 11, 2009) (similar); *Louisiana v. Centers*

*for Disease Control & Prevention*, 603 F. Supp. 3d 406, 420 n.72 (W.D. La. 2022) (noting "unverified allegations are not sufficient . . . to support relief"). Each element will be addressed in turn.

**A. Plaintiffs Cannot Demonstrate Likelihood of Success on the Merits.**

Plaintiffs are not likely to succeed on their anti-clawback injunction claim for four independent reasons: (1) they lack standing to assert an anti-clawback claim; (2) they lack standing to assert an HB7 *qui tam* claim; (3) they are statutorily barred from asserting an HB7 claim; and (4) HB7 is doubly unconstitutional.

At the outset, Plaintiffs lack Article III standing over their anti-clawback claim. "Because a preliminary injunction may only be awarded upon a clear showing that the plaintiff is entitled to such relief, the plaintiffs must make a clear showing that they have standing to maintain the preliminary injunction." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (internal quotations omitted). Where the plaintiffs lack standing, it is axiomatic that they cannot prevail on their claims for relief. *Vapor Tech. Ass'n v. Graham,* 167 F.4th 302, 305 (5th Cir. 2026) (finding that where the plaintiffs lacked standing, they lacked likelihood of success on the merits); *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) ("Article III jurisdiction is always first . . . [S]tanding is a threshold issue that we consider before examining the merits." (internal quotations and citations omitted)).

Plaintiffs lack Article III standing to seek an anti-clawback injunction because there is no "certainly impending" threat of a clawback lawsuit and whatever "injury" they might suffer is self-inflicted. ECF No. 15 at 20–21. Mr. Rodriguez filed *Rodriguez I* in July 2025. Over a year of asserting baseless claims against Dr. Coeytaux did not result in any threats

of a clawback suit or any actions against Mr. Rodriguez. Nor has Ms. Rodriguez been threatened with a clawback suit. Because they lack Article III standing over their anti-clawback claim, their "failure to demonstrate it forecloses injunctive relief." *Vapor Tech.,* 167 F.4th at 305; *see also Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (holding a plaintiff's burden to show standing increases "at the preliminary injunction stage" because a plaintiff must make a "clear showing" for "each element of standing").

Additionally, because the anti-clawback injunction claim is derivative of the "*qui tam*" claim, *see* Tex. Health & Safety Code Ann. § 171A.151(a); *supra* Section I, the numerous additional deficiencies in Ms. Rodriguez's "*qui tam*" claim also preclude her from accessing HB7's anti-clawback provision. As discussed in Section I and in Defendant's Motion to Dismiss, Ms. Rodriguez is statutorily barred from bringing a "*qui tam*" claim; she lacks standing because she lacks an injury in fact and cannot manufacture standing through HB7's purported *qui tam* mechanism; and she otherwise fails to state a claim under HB7 because, *inter alia*, HB7 violates the Texas and United States Constitutions. *See* ECF No. 15 at 11–20 (standing), 31–38 (failure to state a claim). Each deficiency independently shows Plaintiffs are unlikely to succeed on the merits.

Plaintiffs seem to suggest that Ms. Rodriguez's mere incantation of "HB7" automatically entitles them to an injunction. ECF No. 5 at 5. But nothing in the statute suggests that Plaintiffs can bring wholly meritless HB7 claims and thereby obtain an automatic anti-clawback injunction. *See* ECF No. 24 at 14 & n.3. Stating a claim for relief and establishing standing are threshold issues that every litigant, including every HB7 claimant, must satisfy before reaching that extraordinary remedy.

Therefore, Plaintiffs cannot demonstrate likelihood of success on the merits, and their request for extraordinary injunctive relief should be denied.

### B. Plaintiffs Cannot Demonstrate that They Face Irreparable Harm Absent an Injunction.

Plaintiffs also fail to carry their burden to establish irreparable harm for five reasons.

***First***, Plaintiffs' alleged harm is purely speculative. "To merit injunctive relief, a party must show a *likelihood* of irreparable harm." *Sheffield v. Bush*, 604 F. Supp. 3d 586, 610 (S.D. Tex. 2022) (emphasis in original). Yet, after more than a year of litigation, their claimed harm *still* has not occurred. *See id.* (finding plaintiff failed to satisfy the element of irreparable harm where the injury was "hypothetical"). The mere "possibility" that Plaintiffs might suffer irreparable harm is "too lenient" to warrant the extraordinary remedy of injunctive relief; Plaintiffs must go further by demonstrating that an "irreparable injury is *likely* in the absence of an injunction." *See Winter*, 555 U.S. at 22 (emphasis in original) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy[.]"). The Court cannot sustain a preliminary injunction if the plaintiff's injury amounts to nothing "more than unfounded fear." *Sheffield*, 604 F. Supp. 3d at 610 (internal quotations omitted).

Here, Plaintiffs cannot possibly show a "likely" and "irreparable" injury. Their claimed injury is the possibility that Dr. Coeytaux will file a lawsuit under the California shield law, which might ultimately expose them or their attorney to damages. ECF No. 5 at 6–7. But Mr. Rodriguez retained counsel and filed the first lawsuit in July 2025, when

California's shield law had been in effect for over a year but HB7 had yet to go into effect. *See Rodriguez I*, ECF No. 1. At that time, the risks posed by clawback litigation from the California shield law were known. Nevertheless, Mr. Rodriguez and counsel still filed *Rodriguez I* in July 2025. Over one year has passed since—and in that time no action has been brought under the California shield law despite Plaintiffs' assertion that such a claim is imminent and readily available. Nor do Plaintiffs offer any actual evidence that (1) Dr. Coeytaux intends to file a lawsuit under California's clawback law, (2) Plaintiffs or their attorney have actual exposure to damages in that event, or (3) the purely notional threat of litigation has made it impossible to find additional counsel here or created the alleged "conflict of interest" for their attorney, ECF No. 5 at 6–7. *See* ECF No. 15 at 20–21. Plaintiffs are miles away from the "ruinous civil liability" they claim. ECF No. 5 at 6. None of Plaintiffs' hypothetical injuries are "likely," or sufficiently proximate, to satisfy the demanding standard for irreparable harm. *See Winter*, 555 U.S. at 21–22.

***Second***, Plaintiffs' request for equitable relief is barred because their alleged harm is self-inflicted. Self-inflicted harm is not irreparable and cannot justify injunctive relief. *See Texas v. United States Env't Prot. Agency*, 662 F. Supp. 3d 739, 756–57 (S.D. Tex. 2023) (citing *Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021)) (finding plaintiff's alleged chilling effect on business decisions was self-inflicted and thus was not irreparable harm). That is the case here. As previously noted, California's shield law was enacted years before Plaintiffs and their lawyer initiated *Rodriguez I* and this lawsuit, yet they chose to proceed despite the potential risk of liability under that law. Plaintiffs cannot manufacture

irreparable harm by voluntarily initiating litigation twice over and then invoking the Court's protection from the predictable legal risks that follow.

***Third***, the harm Plaintiffs claim is no different than the inherent risk that nearly all litigants face when deciding whether to bring a lawsuit. Disputes often involve fee-shifting statutes or contractual shifting of liabilities. In the normal course of litigation, the risk and costs associated with litigation are a choice that litigants make—not an undue risk warranting emergency relief. *See D.F. Pray, Inc. v. Nat'l Fire Ins. Co. of Hartford*, 2026 WL 523895, at *4 (D. Mass. Feb. 25, 2026) (finding that litigation costs and risks were not an irreparable injury). Plaintiffs provide no compelling reason why this case should be any different.

***Fourth***, Plaintiffs' claimed harm also fails under the well-established principle that an injury is irreparable only "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (internal quotations omitted) (finding lack of irreparable harm where the plaintiffs have recourse through the ordinary course of litigation). "Mere injuries, however substantial, in terms of money, time and energy . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (internal quotations omitted). Here, Plaintiffs fail to address how the threat of clawback liability is irreparable in light of Section 171A.151(f) of the Tex. Health & Safety Code. That provision states "if an action is brought or judgment is entered against a person under a clawback provision," the person is entitled to "compensatory damages," "costs, expenses, and reasonable attorney's fees," as well as

"additional amounts consisting of the greater of" "twice the sum of the damages, costs, expenses, and fees" or "$100,000." Tex. Health & Safety Code Ann. § 171A.151(f). Monetary remedies awarded under that provision would not only fully compensate Plaintiffs; they would provide windfall.[1] Whatever recourse Dr. Coeytaux could have under California law can equally be countered by Texas law. These competing laws set the parties up for a stalemate that militates against a clawback action ever being filed.

***Fifth***, Plaintiffs' undue delay in seeking a preliminary injunction weighs against a finding of irreparable harm. A delay in seeking injunctive relief is sufficient to rebut the presumption of irreparable harm. *Gonannies, Inc. v. Goupair.Com, Inc.,* 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006). This is because the concept of "irreparable harm" includes that the harm is imminent, and therefore must be remedied faster than a trial on the merits would allow. *Expedi, Inc. v. Rebound Int'l, LLC*, 2021 WL 3702169, at *2 (S.D. Tex. May 13, 2021) (finding no irreparable harm given plaintiff's delay). Here, California's shield law has been in effect since before Mr. Rodriguez filed his original complaint in July 2025 and HB7 became effective in December 2025. Mr. Rodriguez voluntarily dismissed his first action before the Court ever ruled on his preliminary injunction motion in *Rodriguez I*. Plaintiffs' attempt to seek injunctive relief a year after filing that first action shows "there is no apparent urgency to the request for the injunctive relief." *Id.*

[1] Although Plaintiffs assert that Dr. Coeytaux, a non-state actor, cannot be sued under 42 U.S.C. § 1983 "for the California legislature's decision to enact a statute authorizing private civil lawsuits," ECF No. 5 at 6–7, that misses the point. HB7 has its own statutory claim for damages and injunctive relief, which Plaintiffs fail to grapple with.

**C. The Balance of Equities Does Not Favor Injunctive Relief.**

The balance of equities also favors denying Plaintiffs' motion. Issuing a preliminary injunction would strip Dr. Coeytaux of statutory remedies that California has affirmatively created and make those rights unavailable before Dr. Coeytaux has even attempted to exercise them. Indeed, Plaintiffs' proposed injunction would prevent Dr. Coeytaux from filing *any* clawback claim contemplated by HB7, including one that has not yet accrued because Plaintiffs have not yet filed litigation "[a]ttempting to enforce an order or judgment issued" in abusive litigation. *See* Cal. Civ. Code § 1798.300(a)(2); ECF No. 5-3 (seeking to enjoin any clawback claim "under the provisions of California law . . . or any other clawback provision described in section 171A.151(a) of the Texas Health and Safety Code"). The requested injunction would thus impose a sweeping restraint on Dr. Coeytaux's ability to access courts and invoke rights afforded under the laws of another state. That is a paradigmatic form of irreparable harm.

In arguing that the balance of equities is tipped in their favor, Plaintiffs suggest that Dr. Coeytaux will not be harmed by the entry of a preliminary injunction because a permanent injunction is inevitable. *See* ECF No. 5 at 7–8. But this cursory argument assumes the merits of claims that Dr. Coeytaux seeks to dismiss and mistakenly assumes HB7's automatic injunction rule will apply rather than the federal standard for issuing injunctions. Those assumptions cannot substitute for the required equitable analysis. A preliminary injunction is not a vehicle for short-circuiting merits disputes or predetermining their outcome; yet that is precisely what Plaintiffs ask this Court to do. Plaintiffs' position effectively collapses the four-factor test into a foregone conclusion,

relieving them of their burden to establish entitlement to extraordinary relief while simultaneously imposing immediate and concrete restrictions on Dr. Coeytaux.

In contrast, denying a preliminary injunction leaves Plaintiffs no worse off. Plaintiffs still retain the ability to seek an injunction later if a clawback suit is ever filed; mount a full defense in such clawback suit; and seek damages, costs, and fees under HB7 for defending the clawback suit. By their own admission, Mr. Rodriguez and his counsel have been subject to potential clawback liability since July 2025, well before this instant lawsuit was filed. *Rodriguez I*, ECF No. 17. Granting the requested injunction would retrospectively provide cover to Mr. Rodriguez and his counsel for their own litigation choices in a prior lawsuit and despite Mr. Rodriguez's (and his daughter's) lack of entitlement to any injunctive relief. As discussed in Section II.B, whatever "harm" Plaintiffs presently face cannot tip the balance of equities because they rely on a hypothetical clawback suit that itself is not imminent and Plaintiffs have provided no evidence of it.

In short, Plaintiffs ask this Court to issue a preemptive anti-clawback injunction granting relief to which they have not shown—and cannot show—they are entitled. The requested injunction would restrict Defendant's access to other courts, displace the operation of another state's laws, and dispense with the traditional requirements for equitable relief—all before any concrete dispute has arisen. That is not a proper use of federal judicial power.

**D. Nor Is a Preliminary Anti-Clawback Injunction in the Public Interest.**

The public interest favors judicial restraint rather than preemptively nullifying California law based on Plaintiffs' fear of a hypothetical clawback action. As Plaintiffs concede, the public interest favors permitting litigants—including Dr. Coeytaux—access to the courts and resolving any potential claims through the adversarial process. *See* ECF No. 5 at 9 ("Our judicial system depends on adversarial presentations in which lawyers vigorously argue and contest the legal and factual issues and hammer the weaknesses that they perceive in the other side's position."); *see also EEOC v. Pitre Inc.*, 2012 WL 12995020, at *3 (D.N.M. Jan. 26, 2012) ("Upholding the truth-seeking function and providing free access to the courts is in the public interest."); *Fighters Inc., LLC v. Elec. Arts Inc.*, 2009 WL 10699504, at *11 (C.D. Cal. Oct. 30, 2009) ("[P]ublic interest favors that [plaintiff]'s claims be resolved through the adversarial process in open court.").

Similarly, the public interest favors judicial restraint, respect for state laws which should be given equal weight, and adherence to established equitable principles instead of allowing a Texas state law to displace well-settled federal procedure.[2] In stark contrast, granting the requested injunction would entangle this Court in a direct conflict between

[2] Because federal law determines whether to issue a preliminary injunction, Texas public policy does not outweigh or nullify the public policy of California or the federal interest in avoiding federalism and comity concerns. *See Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 399 (5th Cir. 2013) (recognizing "principles of federalism and comity" as significant factors under the public interest factor); *Portée v. Morath*, 683 F. Supp. 3d 628, 637 (W.D. Tex. 2023) (holding that, although "[t]he state of Texas undoubtedly ha[d] a strong interest," the overall public interest outweighed its policies when deciding whether to issue an injunction).

competing state policy regimes and require it to elevate Texas law over California law in a context where no concrete dispute has yet materialized, raising serious federalism and comity concerns.

Federal courts do not lightly enjoin access to other courts or nullify the prospective application of another sovereign's laws—particularly in the absence of any pending proceeding. *See, e.g.*, *Am. Radio Ass'n v. Mobile S.S. Ass'n, Inc.*, 483 F.2d 1, 7 (5th Cir. 1973); *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) (noting, when considering whether to prospectively enjoin filing of new suits, "we are constrained by the overarching principle that federal courts must be wary of infringing on legitimate exercises of state judicial power"); *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985) ("The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."); *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time." (footnote omitted)); *Aon Re, Inc. v. TIG Ins. Co.*, 2009 WL 3075584, at *6 (N.D. Tex. Sept. 28, 2009) ("[P]ublic interest considerations weigh in favor of protecting the independence of state court proceedings," particularly when "the California state court is capable of . . . ruling on the preclusive effect of any prior judgment rendered by this Court."); *see also* 11A Wright & Miller's Federal Practice & Procedure § 2942 (3d ed.) ("When the action sought to be halted is in a federal tribunal,

. . . in effect it acts to restrain the other federal body and therefore represents an interference with the jurisdiction of another tribunal.”). This Court should not do so either.

Plaintiffs’ contentions to the contrary hold no water.

***First***, Plaintiffs’ argument about their *counsel’s* purported ethical dilemma, ECF No. 5 at 7, is based on the same speculation regarding the outcome of a future lawsuit and poses only hypothetical injuries to third parties—not irreparable harm to a *party*. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (“We have adhered to the rule that a party ‘generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.’” (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))). To be sure, Plaintiffs’ counsel has a myriad of options to lessen his own risk—including obtaining conflict of interest waivers from his clients, adjusting fee structures to allocate risk, and advising his clients on the risks inherent in his representation *before* filing suit.

***Second***, Plaintiffs’ slippery slope argument, *see* ECF No. 5 at 10, invites this Court to intervene in an abstract policy dispute about competing state policy regimes regarding abortion while ignoring that such conflicts are already accounted for through ordinary litigation processes including jurisdictional defenses, choice-of-law rules, and limits on the constitutional power of state legislatures. There is nothing extraordinary or unmanageable about the existence of competing state laws. Federal courts address such tensions routinely without resorting to preemptive injunctions against hypothetical future suits.

***Third***, Plaintiffs’ public interest argument also falls flat because HB7 itself creates an aggressive, retaliatory remedial scheme, authorizing substantial damages—including compensatory damages, fees, and additional statutory awards of at least $100,000—against

those who pursue disfavored claims against litigants in Texas. *See* Tex. Health & Safety Code Ann. § 171A.151(f). Having invoked that very regime, Plaintiffs cannot now claim that the mere existence of reciprocal pro-choice laws in another state creates an intolerable cascade requiring federal intervention. Plaintiffs' request does not seek equity, but seeks to use this federal court to offer one-sided and politically motivated relief. The Court should decline to do so.

### III. State Law Cannot Displace Federal Equitable Standards for Issuance of a Preliminary Injunction.

Plaintiffs' concluding plea presents a remarkable and unprecedented argument: that "[t]he law of Texas requires [federal] courts to issue, 'on request,'" a preliminary injunction enjoining Dr. Coeytaux from filing a lawsuit under California law. ECF No. 5 at 11. But a preliminary injunction—especially an anti-suit injunction—is "an extraordinary remedy never awarded as of right," which a district court may issue only when a plaintiff makes a "clear showing" on all four elements of the traditional test. *Winter*, 555 U.S. at 22, 24. Plaintiffs cite no federal authority holding that state law may displace this standard—because virtually every federal court has reached the opposite conclusion. *See, e.g.*, *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 n.22 (5th Cir. 2013) ("[F]ederal law governs the procedural questions when a preliminary injunction may issue."); *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 748 (S.D. Tex. 2009); *Coaction Specialty*

*Mgmt. Co., Inc. v. eMaxx Ins. Services, LLC*, 2025 WL 3718475, at *6 (S.D.N.Y. Dec. 23, 2025) (collecting cases).

The Supreme Court expressly rejected Plaintiffs' theory in *Guaranty Trust Co. of N.Y. v. York*, holding that "[s]tate law *cannot* define the remedies which a federal court *must* give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts." 326 U.S. 99, 106 (1945) (emphasis added). This binding precedent forecloses Plaintiffs' choice-of-law argument. But even setting aside *Guaranty Trust*, each track of *Erie* analysis confirms that the federal standard applies.

### A. The Judiciary Act of 1789 and Rule 65 Require This Court Apply the Four-Part Test.

If a rule derives from the Constitution or a federal statute, federal law must prevail regardless of whether it is a substantive or procedural rule, unless the rule itself is unconstitutional or invalid. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 25–27 (1988). Likewise, an "on point" and "valid [Federal] Rule of Civil Procedure displaces contrary state law" if it does not violate the Rules Enabling Act. *Berk v. Choy*, 607 U.S. 187, 192 (2026). Here, both the Judiciary Act of 1789 and Federal Rule of Civil Procedure 65 require application of the four-part test, and Plaintiffs cannot demonstrate that Rule 65 is invalid.

"The Judiciary Act of 1789 endowed federal courts with jurisdiction over 'all suits . . . in equity,'" *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025), limited to "the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). These limits foreclose Plaintiffs' automatic-injunction theory. A

preliminary injunction "has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal quotations omitted); *see also Truly v. Wanzer*, 46 U.S. 141, 142–43 (1847) ("There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction." (internal quotations omitted)). This discretion ensures the "ultimate flexibility of the equitable powers of federal courts." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 562 (5th Cir. 1987). Each element of the four-part test expresses a limit on equitable jurisdiction that the Judiciary Act codified and that cannot be displaced by state law. Most critically, the irreparable-harm element delineates the core jurisdictional distinction between law and equity. *York*, 326 U.S. at 105–06 (holding state law "cannot remove" the requirement that "a plain, adequate and complete remedy at law must be wanting"); *Weinberger*, 456 U.S. at 312 ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). This requirement also preserves defendants' Seventh Amendment right to a jury trial for suits at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020).

The Court's reluctance to allow modifications even by Congress—which, unlike states, possesses constitutional authority to modify federal courts' equitable jurisdiction—further illustrates this point. Under the clear-statement rule, Congress cannot modify the traditional test "in the absence of a clear and valid legislative command." *Weinberger*, 456 U.S. at 313 (internal quotations omitted). In *Hecht Co. v. Bowles*, the Court interpreted a

federal statute stating an injunction "shall be granted" as *not* clearly displacing the traditional test. 321 U.S. 321, 326–30 (1944). If an act of Congress stating an injunction "shall be issued" does not displace the four-part test, HB7 certainly does not either.

Rule 65 independently confirms this result. Its plain language stating a court "*may* issue a preliminary injunction" underscores the discretionary nature of this relief. Fed. R. Civ. P. 65(a)(1) (emphasis added). Judicial interpretations of Rule 65 establish that the four-part test is "incorporate[d]" into Rule 65's discretionary language. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991); *see also Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834–35 (5th Cir. 2014) (noting courts also consider "judicial interpretations" of Rules to determine whether a conflict exists). HB7's mandate that an injunction "shall" issue "on request," Tex. Health & Safety Code Ann. § 171A.151(c), creates a direct conflict. *See, e.g.*, *Berk*, 607 U.S. at 192 (noting a Federal Rule is "on point" and conflicts with state law when the state law "addresses the same issue—and in doing so, imposes a different standard" for what a plaintiff must show for entitlement to relief).

Rule 65 and the four-part test are procedural under the Rules Enabling Act. Under that statute, courts apply a "modest test" that asks whether the Federal Rule "governs only the manner and the means by which the litigants' rights are enforced." *Berk*, 607 U.S. at 198 (internal quotations omitted). No Federal Rule of Civil Procedure, including Rule 65, has ever been invalidated under this analysis. *See id.* Because a preliminary injunction under Rule 65 functions to preserve the status quo, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), the standard for issuing one is procedural and merely affects the "manner

and means" of enforcing a substantive claim. *See Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) ("[F]ederal law governs the procedural question [of] when a preliminary injunction may issue[.]"). Plaintiffs' arguments that *HB7* is substantive, ECF No. 5 at 13–15, are misplaced: "the substantive nature of a [displaced] state law, or its substantive purpose, *makes no difference*" for this analysis. *Berk*, 607 U.S. at 198 (internal quotations omitted) (emphasis in original). Thus, Rule 65 and the incorporated four-part test apply without needing to consider the *Erie* test.

**B. The Four-Part Test Is Procedural Under *Erie*.**

Even treating the four-part test as a "judge-created rule," ECF No. 5 at 13, *Erie* still requires this Court to apply the federal standard. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The *Erie* test requires courts to apply a three-part framework to determine whether the rule is procedural or substantive. First, courts apply the "outcome determination" test to determine whether the federal rule would "significantly affect the result of a litigation." *All Plaintiffs v. All Defendants*, 645 F.3d 329, 335 (5th Cir. 2011) (quoting *York*, 326 U.S. at 109) (emphasis omitted). But this test is merely a starting point, having limited effect unless the federal rule would create "certainty that a different result would follow." *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 539 (1958). Second, to ensure that test is not "applied mechanically," courts consider the "twin aims" of *Erie*: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Gasperini*, 518 U.S. at 428 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). Third, courts consider whether the federal rule involves any

"countervailing" federal interests that warrant the application of federal law. *Byrd*, 356 U.S. at 537–39; *see also Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 925–26 (5th Cir. 2019). Applying this framework, the four-part test is procedural under *Erie*.

***First***, the four-part test is not substantive because it is not "certainly" outcome determinative—litigants may arrive at the same outcome in both forums, as Plaintiffs' attempt to prevail under both tests demonstrates. *See Byrd*, 356 U.S. at 539–40. Moreover, the test for a preliminary injunction to preserve the status quo does not determine the ultimate outcome on the merits, which is the "outcome" *Erie* is concerned with. *See* 19 Wright & Miller's Federal Practice & Procedure § 4513 (3d ed.) ("These orders are neither final determinations of the parties' rights nor final relief that would qualify as an 'outcome[.]'").

***Second***, the twin aims of *Erie* do not require application of HB7's automatic-injunction standard. Having a stricter standard in federal courts does not promote forum shopping because plaintiffs could still obtain a preliminary injunction in both forums. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 747 (1980). Nor is there inequitable administration of the laws. This element is triggered when a federal rule results in "grave discrimination by noncitizens against citizens"—*i.e.*, when a litigant loses a right to recovery solely because a party is a non-citizen. *Hanna*, 380 U.S. at 467. Plaintiffs have lost no right to any remedy by virtue of Defendant's citizenship; they can still obtain a preliminary injunction under the federal standard.

***Third***, countervailing federal interests also counsel against applying an automatic anti-suit injunction rule. Federal courts apply a uniform test for granting equitable relief.

*York*, 326 U.S. at 105–07. Absent such uniformity, states could effectively nullify the entire body of federal equity jurisprudence for cases touching their preferred policy areas. The four-part test also ensures the Seventh Amendment is not infringed by state laws that would allow litigants to seek equitable relief before a judge when an adequate remedy at law exists. *See Sonner*, 971 F.3d at 842; *Byrd*, 356 U.S. at 537–39. Together, the overwhelming federal interest in applying the federal standard outweighs the minimal concerns raised by the twin policy aims of *Erie*. *See Kula*, 542 F. App'x at 335 n.22; *Flood*, 618 F.3d at 1117.

Plaintiffs' arguments to the contrary lack merit. *See* ECF No. 5 at 13–15. The standard for issuing a preliminary injunction is not a substantive rule of decision. *See York*, 326 U.S. at 105–07 ("This does not mean that whatever equitable remedy is available in a State court must be available in a diversity suit in a federal court."); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970). The standard does not regulate the "rights themselves," "available remedies," or the "rules of decision." Here, HB7 answers the threshold question of whether a claimant could get an injunction, which Plaintiffs cannot establish based on their statutory bars. *See supra* Section I. Then the Court applies the four-part test, which Plaintiffs also fail to satisfy. *See supra* Section II; *Purcell v. Summers*, 145 F.2d 979, 990–91 (4th Cir. 1944) ("We look to state law to determine what the rights of the parties are; but we look to the federal [equity] practice to determine the remedies available[.]"). This well-established approach does not offend *Erie*.

In sum, multiple independent lines of authority—including *York*, the Judiciary Act, Rule 65, and each branch of the *Erie* analysis—lead to the same conclusion: the federal four-part standard for injunctive relief governs. Because Plaintiffs have not met their heavy

burden under that standard and have failed to establish Texas law affords them a right to an automatic injunction, the Court should deny their motion.

## CONCLUSION

For the reasons provided herein, this Court should deny Plaintiffs' Motion for Preliminary Injunction.

Dated: October 15, 2026

Respectfully submitted,

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com
Leah Schultz
Texas State Bar No. 24126910
S.D. Tex. Bar No. 3737066
Leah.Schultz@arnoldporter.com
811 Main Street, Suite 1800
Houston, TX 77002-2755
P: (713) 576-2400
F: (713) 576-2499

Marc Hearron
HEARRON PLLC
Texas State Bar No. 24050739
(*pro hac vice pending*)
MHearron@reprorights.org
100 Crescent Court
Suite 700, PMB 17265624
Dallas, TX 75201
P: (214) 278-6815

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
District of Columbia State Bar No. 1002396

(*admitted pro hac vice*)
jhudson@reprorights.org
1600 K St. NW
Washington, DC 20002
P: (202) 628-0286

**COUNSEL FOR DEFENDANT REMY COEYTAUX**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, the foregoing document was electronically filed with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the court.

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com