**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY RODRIGUEZ and<br>ISABELLA IRENE RODRIGUEZ<br><br>Plaintiffs,<br><br>v.<br><br>REMY COEYTAUX<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. NO. 3:26-cv-00207 |

---

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT UNDER RULE 54(b)**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

I. California's Shield Law ........................................................................................ 3

II. Plaintiffs' Lawsuits ............................................................................................. 5

ARGUMENT ............................................................................................................. 6

I. Plaintiffs' "Rule 54(b)" Motion Is Premature and Procedurally Improper. ............. 6

II. Even If the Motion Were Procedurally Proper, Plaintiffs Fail to Meet Their Burden to Show Rule 54(b) Final Judgment Is Warranted. ........................................................ 9

A. There Is Just Reason for Delay. ............................................................................ 9

B. Plaintiffs' Arguments Do Not Justify Entering Judgment Now. ......................... 12

1. This Court is not "required" to issue Plaintiffs an injunction "on request." ... 12

2. Plaintiffs have not shown any danger of hardship or injustice. ...................... 18

CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Associated Mach. Tool Techs. v. Doosan Infracore Am., Inc.*,
No. 4:15-CV-2755, 2016 WL 10675418 (S.D. Tex. Aug. 17, 2016) ............................ 11

*Brown v. Zimmerman*,
160 S.W.3d 695 (Tex. App.—Dallas 2005, no pet.) ..................................................... 14

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980) ............................................................................................. *passim*

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ........................................................................... 17

*Ex parte Foster*,
188 S.W.2d 382 (Tex. 1945) ........................................................................... 14

*Freeman v. Lester Coggins Trucking, Inc.*,
771 F.2d 860 (5th Cir. 1985) ........................................................................... 14

*GADV, Inc. v. Beaumont Indep. Sch. Dist.*,
No. 1:11-CV-187, 2011 WL 2220242 (E.D. Tex. June 7, 2011) .................................. 17

*Garziano v. La. Log Home Co.*,
No. 1:11CV393-LG-JMR, 2012 WL 12882923 (S.D. Miss. Aug. 9, 2012) ................. 11

*Goal Acquisitions Corp. v. Digital Virgo*,
No. 1:23-CV-1549-DII, 2024 WL 1078431 (W.D. Tex. Mar. 12, 2024) ....................... 16

*Guar. Tr. Co. of N.Y. v. York*,
326 U.S. 99 (1945) ........................................................................................ 15

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) ...................................................................................... 16

*Hughes v. Tobacco Inst., Inc.*,
278 F.3d 417 (5th Cir. 2001) ............................................................................. 8

*Matthews v. Rodgers*,
284 U.S. 521 (1932) ................................................................................. 15, 16

*Meredith v. City of Winter Haven*,
320 U.S. 228 (1943) ...................................................................................... 16

*Miller v. Michaels Stores, Inc.*,
98 F.4th 211 (5th Cir. 2024) .......... 8

*PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*,
81 F.3d 1412 (5th Cir. 1996) .......... 10, 18

*Rd. Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.*,
967 F.2d 145 (5th Cir. 1992). .......... 9, 10

*Rodriguez v. Quicken Loans, Inc.*,
257 F. Supp. 3d 840 (S.D. Tex. 2017) .......... 16

*Scott v. Pasadena Unified Sch. Dist.*,
306 F.3d 646 (9th Cir. 2002) .......... 13

*Sears, Roebuck & Co. v. Mackey*,
351 U.S. 427 (1956) .......... 7, 8

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 16

*T.E.S. Entm't v. Walsh*,
No. CV 01-947-C, 2005 WL 8157678 (M.D. La. Mar. 29, 2005) .......... 19

*Texas v. U.S. Dep't of Labor*,
929 F.3d 205 (5th Cir. 2019) .......... 14

*Treece v. Perrier Condo. Owners Ass'n, Inc.*,
569 F. Supp. 3d 347 (E.D. La. 2021) .......... 19

*United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp.*,
No. 07CV2172 AJB, 2012 WL 3861946 (S.D. Cal. Sept. 5, 2012) .......... 17

*Valentine v. Collier*,
993 F.3d 270 (5th Cir. 2021) .......... 17

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 16

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) .......... 16

*Westmoreland v. Venice Marine & Outdoor Consultants, Inc.*,
No. CV 17-6220, 2018 WL 2124040 (E.D. La. May 8, 2018) .......... 18, 19

*Weyerhaeuser Co. v. Pardee Mins., LLC*,
No. CV 17-0856, 2018 WL 3825224 (W.D. La. Aug. 10, 2018) .................................. 11

**Statutes**

2023 Cal. Legis. Serv. Ch. 260 ................................................................................. 3

28 U.S.C. § 1292 ........................................................................................................ 18

Cal. Civ. Code § 1798.300 ................................................................................... 4, 13

Cal. Civ. Code § 1798.303 .......................................................................................... 4

Cal. Civ. Code § 1798.305 .......................................................................................... 5

Tex. Health & Safety Code § 171A.051 ..................................................................... 5

Tex. Health & Safety Code § 171A.101 ..................................................... 5, 14, 15

Tex. Health & Safety Code § 171A.151 ............................................................ *passim*

**Other Authorities**

Tex. H. Comm. State Affs., *C.S.H.B.7 Bill Analysis* (2025),
https://capitol.texas.gov/tlodocs/892/analysis/pdf/HB00007H.pdf .............................. 15

Tex. House of Reps., *89th Legislative Session - Second Called Session Chamber Broadcast* (Aug. 28, 2025), https://house.texas.gov/videos/22544 ............................... 15

Tex. House Rsch. Org., *HB 7 Bill Analysis* (2025),
https://hro.house.texas.gov/pdf/ba892/HB0007.PDF .................................................. 15

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................ 7

Fed. R. Civ. P. 54 ............................................................................................... *passim*

Fed. R. Civ. P. 56 ........................................................................................................ 7

**Treatises**

10 Charles A. Wright et al., *Federal Practice & Procedure* § 2656 (4th ed. 2026) ............ 7

10 Charles A. Wright et al., *Federal Practice & Procedure* § 2658.1 (4th ed. 2026) ......... 7

## INTRODUCTION

Plaintiffs' Motion for Entry of Judgment Under Rule 54(b), ECF No. 6 ("Rule 54(b) Mot."), is procedurally improper. Rule 54(b) simply permits courts to certify already fully adjudicated claims for appeal. Nothing more. Yet Plaintiffs invoke Rule 54(b) as if it were a separate avenue to adjudicate claims on the merits. Their motion asks the Court to decide the merits of their Texas House Bill 7 ("HB7") claim for an anti-clawback injunction—an extraordinary remedy to which Plaintiffs have no right—and enter final judgment for a claim that has not been litigated or adjudicated at all. This is backwards. Rule 54(b) is not an end run around the well-established vehicles for obtaining a final judgment, e.g., a motion for judgment on the pleadings or a motion for partial summary judgment. Plaintiffs cannot bypass those Rule's requirements by misreading Rule 54(b).

Here, the Court has not issued an order or decision adjudicating *any* claims. The only dispositive motion that has been filed is Defendant Remy Coeytaux's motion to dismiss, which has not yet been fully briefed, and which could fully and conclusively adjudicate this lawsuit in Dr. Coeytaux's favor. Dr. Coeytaux also has yet to assert any affirmative defenses or counterclaims. Nor have Plaintiffs presented any evidence demonstrating entitlement to an injunction. There is simply no order or decision that could be certified as a final judgment under Rule 54(b) at present. The Court should not rush to decide the ultimate merits of this lawsuit before the parties have left the starting line.

Even if there were such an order, Plaintiffs' motion should be denied because they have failed to show "that there is no just reason for delay." Fed. R. Civ. P. 54(b). Granting Plaintiffs' motion would contravene the "historic federal policy against piecemeal

appeals." *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Rather than allow this litigation to proceed in the ordinary course, Plaintiffs ask the Court for a rush-issued insurance policy protecting them against the prospect of liability under California's "shield" law. They would have the Court allow their own claims to advance, while protecting them from any claims Dr. Coeytaux might eventually assert under California's shield law, including claims that have yet to accrue. And they ask the Court to grant it *now*—before any evidence has been presented, and in the face of a motion to dismiss on which briefing is ongoing.

Plaintiffs cannot demonstrate any cognizable harm in the absence of an early judgment. Although plaintiffs assert that it would be otherwise "impossible . . . to litigate their claims" without exposing themselves and their counsel to "ruinous liability," Rule 54(b) Mot. 3, they present no evidence that they or their counsel would be on the hook for any damages, much less ruinous liability, without immediate judicial action. Their claimed injuries are indistinguishable from other ordinary features of litigation, including fee-shifting provisions and defensive counterclaims.

And Plaintiffs and their counsel voluntarily assumed these self-inflicted risks by initiating this lawsuit against Dr. Coeytaux. They claim they need an immediate final judgment (1) after Plaintiff Jerry Rodriguez litigated a related case against Dr. Coeytaux for eleven months before voluntarily dismissing it,[1] and (2) despite Plaintiffs' decision to initiate this case against Dr. Coeytaux over 2.5 years after the California shield law was

---

[1] *Rodriguez v. Coeytaux* (*Rodriguez I*), No. 3:25-CV-00225 (S.D. Tex. July 20, 2025), ECF No. 1; *Rodriguez I*, ECF No. 49 (June 30, 2026).

enacted, knowingly and voluntarily assuming the risk that their choice would expose them to the same liability they now seek to avoid.

Plaintiffs' main argument—that they are entitled to issuance of an injunction "on request," Rule 54(b) Mot. 3—not only runs afoul of established federal precedent; it is an argument that goes directly to the merits (or lack thereof) of their claim, not an argument for Rule 54(b) certification. The Court should deny Plaintiffs' motion.

## BACKGROUND

### I. California's Shield Law

In September 2023, California's legislature enacted a "shield law" to protect providers of reproductive and gender-affirming health care from facing out-of-state civil or criminal liability for providing such care. *See* 2023 Cal. Legis. Serv. Ch. 260 (S.B. 345). The law was enacted in response to the near-total abortion bans that went into effect in many states in the wake of the U.S. Supreme Court overturning the federal constitutional right to abortion.

Among other concerns, California's shield law addresses the potential for liability against providers who are alleged to have provided medication abortion via telehealth—care that is lawful in California. For example, if a California provider prescribes abortion medication to a patient who tells the provider that they are in a state where abortion is lawful, while actually being in a state with an abortion ban, California's shield law protects that provider from liability for providing such care, regardless of the patient's location. Specifically, under the shield law, "[l]egally protected health care activity" includes "[t]he provision of reproductive health care services . . . by a person duly licensed under the laws

of California . . . if the service or care is lawful under the laws of California, regardless of the patient's location." Cal. Civ. Code § 1798.300(d)(1). "Reproductive health care services" includes "all services, care, or products of a medical, . . . prescribing, or dispensing nature relating to the human reproductive system provided in accordance with the constitution and laws of this state, whether provided in person or by means of telehealth services which includes . . . all services, care, and products relating to . . . the termination of a pregnancy." *Id.* § 1798.300(e).

To protect providers against civil lawsuits for providing legally protected health care services, California's shield law creates so-called clawback causes of action. Specifically, the shield law provides a cause of action against a person who "engages or attempts to engage in abusive litigation." *Id.* § 1798.303. This clawback claim may be brought by "a defendant in the abusive litigation." *Id.* "Abusive litigation" is litigation "to deter, prevent, sanction, or punish a person engaging in legally protected health care activity" in either of two ways: (1) "[f]iling" litigation where liability is based on a legally protected health care activity or (2) "[a]ttempting to enforce an order or judgment issued in connection" with such litigation. *Id.* § 1798.300(a). California's shield law thus creates two potential avenues for a clawback claim: (1) a claim that accrues upon the filing of abusive litigation and (2) a separate claim that does not accrue until there is an order or judgment issued in abusive litigation and someone tries to enforce that order or judgment.

In a clawback lawsuit, if the court finds for the plaintiff, "recovery shall be in the amount of three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other

expenses, costs, or reasonable attorney's fees incurred in connection with the abusive litigation." *Id.* § 1798.305.

## II. Plaintiffs' Lawsuits

On July 20, 2025, Plaintiff Jerry Rodriguez filed a lawsuit against Dr. Coeytaux, seeking damages for wrongful death resulting from Kendal Garza's alleged abortion in September 2024. *See generally Rodriguez I*, ECF No. 1.

On December 4, 2025, HB7 took effect. HB7 states that no person may "mail, transport, deliver, prescribe, or provide an abortion-inducing drug in any manner to or from any person or location in this state." Tex. Health & Safety Code § 171A.051(a)(2). It purports to grant any "person" (other than state officials) a cause of action against a person who violates or intends to violate HB7. *Id.* § 171A.101(a). HB7 prohibits certain people from bringing suit, including individuals who "committed an offense for which an affirmative finding of family violence was made under Article 42.013, Code of Criminal Procedure" and anyone who "act[s] in concert or participation" with them. *Id.* § 171A.101. HB7 also includes provisions that attempt to nullify other states' shield laws: For example, it states that if a person brings an HB7 suit, then "the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant" from "bringing" or "continuing to litigate" a clawback suit. *Id.* § 171A.151(c).

On February 1, 2026, Mr. Rodriguez amended his complaint in *Rodriguez I* to add claims under HB7, including a claim for an anti-clawback injunction. *Rodriguez I*, ECF No. 16. He then moved for a preliminary anti-clawback injunction and for partial final judgment under Rule 54(b) on the anti-clawback injunction claim. *Rodriguez I*, ECF Nos.

17, 24. On April 16, 2026, Dr. Coeytaux moved to dismiss all of plaintiff's claims, including the anti-clawback injunction claim, for lack of standing and failure to state a claim. *Rodriguez I*, ECF No. 30.

On June 30, 2026, Mr. Rodriguez voluntarily dismissed *Rodriguez I*—only to refile this lawsuit the same day, newly joined by his daughter Isabella Rodriguez. *See Rodriguez v. Coeytaux* (*Rodriguez II*), No. 3:25-CV-00207 (S.D. Tex. June 30, 2026), ECF No. 1. The instant lawsuit is nearly identical to *Rodriguez I*. Now, however, Ms. Rodriguez alone asserts the HB7 "*qui tam*" claim, and yet both Plaintiffs seek an anti-clawback injunction. *Compare Rodriguez II*, ECF No. 1, *with Rodriguez I*, ECF Nos. 16, 17, 45-2.

As in *Rodriguez I*, Plaintiffs filed a motion for a preliminary anti-clawback injunction, as well as a motion for Rule 54(b) partial final judgment on the anti-clawback injunction claim. *Rodriguez II*, ECF Nos. 5–6. As in *Rodriguez I*, Dr. Coeytaux has moved to dismiss all of Plaintiffs' claims, including the anti-clawback injunction claim, for lack of standing and failure to state a claim. *Rodriguez II*, ECF No. 15.

## ARGUMENT

### I. Plaintiffs' "Rule 54(b)" Motion Is Premature and Procedurally Improper.

Plaintiffs' motion for entry of final judgment under Rule 54(b) is premature and procedurally improper. Rule 54(b) provides a process by which the Court's final adjudication on a subset of the claims in the case can be made into a final, appealable judgment. Where there are multiple claims, the background rule is that any order "that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims.

. . ." Fed. R. Civ. P. 54(b). But where the court has finally adjudicated some, but not all, of the claims, the court may certify that "there is no just reason for delay" and direct entry of final judgment on those claims. *Id.*

A "prerequisite for invoking Rule 54(b) is that at least one claim or the rights and liabilities of at least one party must be finally decided." 10 Charles A. Wright et al., *Federal Practice & Procedure* § 2656 (4th ed. 2026). Rule 54(b) is not itself a vehicle for adjudicating a claim; rather, it "simply establishes a procedure that expedites [appellate] review of a separable portion of a multiple-claim or multiple-party action that has been finally adjudicated." *Id.* § 2658.1. Rule 54(b) is properly invoked only after the Court has finally adjudicated a claim, such as by dismissing the claim under Rule 12(b), by granting partial summary judgment under Rule 56, or through trial. Thus, for example, "a partial summary judgment that decides some of the issues pertinent to a single claim is interlocutory and not within the scope of [Rule 54(b)], but a summary judgment that completely disposes of one of several claims will be final and appealable if a Rule 54(b) certificate is made." *Id.* § 2656.

As the Supreme Court has explained, there are "steps to be followed in making determinations under Rule 54(b)." *Curtiss-Wright Corp.*, 446 U.S. at 7. "A district court must first determine that it is dealing with a 'final judgment.'" *Id.* "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436

(1956)). "Once having found finality, the district court must go on to determine whether there is any just reason for delay." *Id.* at 8.

Here, Plaintiffs' "Rule 54(b)" motion puts the cart before the horse. Plaintiffs have not filed a dispositive motion on their claim for an anti-clawback injunction. Nor has this Court rendered any decision on their claim, let alone an "ultimate disposition" of it. *See id.* There is simply no order adjudicating Plaintiffs' anti-clawback claim that the Court could certify for entry of final judgment under Rule 54(b).

Nor should this Court accept Plaintiffs' strained use of Rule 54(b), which is not supported by any citations to case law. Doing so would allow Plaintiffs to nullify the well-established mechanisms for obtaining final judgments in the absence of a trial—e.g., judgment on the pleadings and summary judgment—which include procedural safeguards and evidentiary limits to protect the non-moving party. For example, judgment on the pleadings "is appropriate only if there are no disputed issues of fact." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). Likewise, a party cannot obtain summary judgment when there is a "genuine dispute of material fact." *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 216 (5th Cir. 2024). Neither standard would be met here. As discussed further *infra* pp. 10–11, discovery could reveal further evidence that Ms. Rodriguez is statutorily barred from obtaining a permanent injunction under HB7 or evidence relating to equitable defenses to injunctive relief. *See also* ECF No. 24 (Def.'s Mem. in Opp'n to Pls.' Mot. Prelim. Inj.) at 7–12. The Court should not permit Rule 54(b) to be contorted to allow Plaintiffs to get relief they could not obtain through those well-established vehicles for

receiving a final judgment. Plaintiffs' premature, improper "Rule 54(b)" motion should be denied for this reason alone.

## II. Even If the Motion Were Procedurally Proper, Plaintiffs Fail to Meet Their Burden to Show Rule 54(b) Final Judgment Is Warranted.

### A. There Is Just Reason for Delay.

Even if there were an order that could be certified as a final judgment under Rule 54(b), certification would be inappropriate here because Plaintiffs have failed to show "that there is no just reason for delay." Fed. R. Civ. P. 54(b). Dr. Coeytaux has a currently pending motion to dismiss that could fully and conclusively adjudicate this lawsuit. He also still has the potential to file an answer or counterclaims that would be intertwined with the anti-clawback claim.

"Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss-Wright Corp.*, 446 U.S. at 8. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal," considering "judicial administrative interests as well as the equities involved." *Id.* In "weigh[ing] the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other," courts may consider factors like "whether the claims under review [a]re separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.*; *Rd. Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.*, 967

F.2d 145, 148 (5th Cir. 1992). Because Rule 54(b) "preserves the historic federal policy against piecemeal appeals," *Curtiss-Wright Corp.*, 446 U.S. at 8, a "district court should grant certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; it should not be entered routinely as a courtesy to counsel." *PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996).

Even if there were an order adjudicating Plaintiffs' anti-clawback claim, there would be good reasons to delay entry of final judgment on that claim. First, Dr. Coeytaux has moved to dismiss because Plaintiffs do not have standing and cannot state a claim under HB7. That motion could dispose of this case in its entirety. Even if granted only in part, it could eliminate Plaintiffs' ability to seek an anti-clawback injunction, because their ability to do so is wholly dependent on their ability to bring an HB7 claim. HB7 only authorizes Plaintiffs to seek an anti-clawback injunction in connection with "an action described by Subsection (a)(1) or (2)" of Texas Health and Safety Code § 171A.151. Tex. Health & Safety Code § 171A.151(c). In turn, Subsections (a)(1) and (2) describe "an action authorized by [HB7]" or "an action that alleges a violation of" HB7's prohibition on manufacturing, distributing, mailing, transporting, delivering, prescribing or providing abortion-inducing drugs. *Id.* § 171A.151(a)(1), (2). Put otherwise, Plaintiffs' ability to seek an anti-clawback injunction hinges on their underlying ability to bring a claim "authorized by" or "alleg[ing] a violation of" HB7. *See id.* § 171A.151(a)(1), (2) (describing the bases for a claim under HB7); *id.* § 171A.151(c) (authorizing an anti-suit injunction in connection with "an action described by Subsection (a)(1) or (2)").

Furthermore, should this case proceed beyond the motion to dismiss, Dr. Coeytaux's answer would necessarily include defenses and/or counterclaims whose resolution would be intertwined with the anti-clawback injunction claim. For example, Dr. Coeytaux could assert equitable affirmative defenses to the anti-clawback injunction claim or discovery could reveal additional statutory bars to Plaintiffs' capacity to sue under HB7 and, in turn, their ability to seek an anti-clawback injunction.

Thus, entering final judgment on the anti-clawback injunction claim at this stage all but guarantees that the "appellate court would have to decide the same issues more than once even if there were subsequent appeals" or that a decision by this Court on the motion to dismiss might moot the appeal. *Curtiss-Wright Corp.*, 446 U.S. at 8; *see, e.g.*, *Associated Mach. Tool Techs. v. Doosan Infracore Am., Inc.*, No. 4:15-CV-2755, 2016 WL 10675418, at *3 (S.D. Tex. Aug. 17, 2016) (denying Rule 54(b) motion on state statutory claim because the remaining claims "rely on" the statute to modify the parties' duties); *Weyerhaeuser Co. v. Pardee Mins., LLC*, No. CV 17-0856, 2018 WL 3825224, at *3 (W.D. La. Aug. 10, 2018) (denying Rule 54(b) motion on cross-claims that were dependent on plaintiff's pending claim because "there would be an appeal of an issue that may never have to be decided" if plaintiff's claim failed); *Garziano v. La. Log Home Co.*, No. 1:11CV393-LG-JMR, 2012 WL 12882923, at *1 (S.D. Miss. Aug. 9, 2012) (denying Rule 54(b) motion when the parties subsequently filed motions that were "potentially dispositive of the case").

### B. Plaintiffs' Arguments Do Not Justify Entering Judgment Now.

Plaintiffs proffer two justifications for why the Court should not delay entry of judgment on their anti-clawback claim. First, they claim that "[t]he law of Texas unambiguously entitles [Plaintiffs] to a permanent antisuit injunction." Rule 54(b) Mot. 3. Second, they argue that the "ongoing threat of clawback lawsuits makes it impossible for the plaintiffs and their attorneys to litigate their claims without exposing themselves to ruinous liability," so "a final judgment with res judicata effect is needed to ensure that [Dr.] Coeytaux will not file retaliatory lawsuits against the plaintiffs or their lawyers." *Id.* Neither of these arguments justifies certifying that some unspecified order supposedly adjudicating Plaintiffs' claim for an anti-clawback injunction—even if such an order existed—is a final judgment at this early stage of the litigation.

#### 1. This Court is not "required" to issue Plaintiffs an injunction "on request."

As an initial matter, Plaintiffs' argument that they are entitled to an injunction, Rule 54(b) Mot. 4, is an argument on the *merits* of their claim, not a Rule 54(b) argument. Their assertions are more appropriate for a motion for judgment on the pleadings or a motion for summary judgment—which would consider the evidence and the allegations that Plaintiffs have pleaded to determine their entitlement to the relief that they seek under HB7. In each of the dispositive motion contexts, the legal issues could be fully briefed with supporting evidence rather than getting the cursory and conclusory treatment that Plaintiffs' motion gives them. Only if Plaintiffs were to prevail on the merits of their anti-clawback injunction

claim via one of those motions would it then be appropriate to consider whether there is just reason to delay entry of final judgment on that claim under Rule 54(b).

Setting that aside, there are four categorical reasons to believe that Plaintiffs will not prevail on their anti-clawback injunction claim.

***First***, as explained in Defendant's Motion to Dismiss, *Rodriguez II*, ECF No. 15 ("Mot. to Dismiss"), Plaintiffs lack standing to assert any of their claims, including their claim for an anti-clawback injunction. They have no certainly impending injury; Plaintiffs do not, and cannot, allege that Dr. Coeytaux has ever threatened to file a clawback suit against them. Mot. to Dismiss 20–21. "The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient" to establish standing; a plaintiff must allege a future injury from the statute's threatened enforcement by showing he or she "is *immediately* in danger of sustaining some *direct* injury" and that "the injury or threat of injury is both real and immediate, not conjectural or hypothetical." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (citations and quotation marks omitted).

***Second***, Plaintiffs' request for an injunction is overbroad and unripe. As discussed above, California's shield law creates two potential avenues for a clawback claim: (1) a claim that accrues upon the filing of abusive litigation and (2) a separate claim that does not accrue until there is an order or judgment issued in abusive litigation and someone tries to enforce that order or judgment. *See* Cal. Civ. Code § 1798.300(a)(2). Plaintiffs' request seeks injunctive relief preventing Dr. Coeytaux from filing *any* clawback claim, including one that has not yet accrued because Plaintiffs have not yet filed litigation attempting to

enforce an order or judgment issued in abusive litigation, as well as "any other clawback provision" HB7 might contemplate. ECF No. 6, Ex. 3. Because Plaintiffs have not even obtained any order or judgment in this case—let alone attempted to enforce it—a clawback claim based on such activity has not accrued, and their request for injunctive relief is not yet ripe.

***Third***, if Plaintiffs' HB7 "*qui tam*" claim is dismissed for any of the numerous reasons raised in Dr. Coeytaux's motion to dismiss, their claim for an anti-clawback injunction also must be dismissed. Mot. to Dismiss 38–39. Only an HB7 claimant may seek an anti-clawback injunction, and then the injunction may only issue if it is "authorized by" or "alleges a violation of" HB7. Tex. Health & Safety Code § 171A.151(a), (c). Thus, Plaintiffs' anti-clawback injunction claim hinges on their ability to bring an HB7 "*qui tam*" claim. Mr. Rodriguez does not assert an HB7 "*qui tam*" claim; nor could he, because he is barred by his family-violence conviction. *See id.* § 171A.101(d)(3)(B); Mot. to Dismiss Ex. A. Thus, he cannot seek an anti-clawback injunction.[2] Ms. Rodriguez's HB7 "*qui tam*"

[2] Nor has Mr. Rodriguez alleged any facts that would entitle him to such an injunction as a person "in privity" with the HB7 claimant, Ms. Rodriguez. Tex. Health & Safety Code § 171A.151(c); *see, e.g.*, *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985) ("[C]lose family relationships are not sufficient, by themselves, to establish privity . . . ."); *Brown v. Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005, no pet.) ("[P]rivity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same facts."). Indeed, he could not do so; were Mr. Rodriguez to assert that he is "in privity" with Ms. Rodriguez such that he is entitled to an anti-clawback injunction, he would defeat Ms. Rodriguez's ability to pursue an HB7 claim by establishing that they are "act[ing] in concert or participation," which would make her a prohibited HB7 plaintiff. *See Ex parte Foster*, 188 S.W.2d 382, 384–85 (Tex. 1945) (analogous "concert or participation" language includes privies); *Texas v. U.S. Dep't of Labor*, 929 F.3d 205, 210–11 (5th Cir. 2019) (same).

claim is not authorized for numerous reasons, including that Ms. Rodriguez is "act[ing] in concert or participation" with her father, who is a prohibited HB7 plaintiff; she lacks standing because she lacks an injury in fact and is not an appropriate *qui tam* relator; and she fails to state a claim. Tex. Health & Safety Code § 171A.101(d)(3)(E); *see also* Mot. to Dismiss 31–33, 38–39.[3]

***Fourth***, as detailed in Dr. Coeytaux's concurrently filed Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, federal standards and principles apply, and under those standards and principles, Plaintiffs' request fails. ECF No. 24, §§ II–III. State law cannot require federal courts to issue injunctions. "State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 106 (1945); *see also Matthews v. Rodgers*, 284 U.S. 521, 529 (1932) ("[S]tate legislation cannot . . . avoid or dispense with the prohibition

[3] Nor is it sufficient for Plaintiffs to merely raise an HB7 claim when HB7 plainly bars them from bringing such a claim. Holding otherwise would contravene the clear legislative intent in enacting these prohibitions by allowing prohibited individuals to bring harassing suits that are meritless on their face. *See, e.g.*, Tex. House of Reps., *89th Legislative Session - Second Called Session Chamber Broadcast*, at 6:08:21 (Aug. 28, 2025), https://house.texas.gov/videos/22544 (HB7 prohibitions intended to "ensure . . . that bad actors like those who have committed sexual assault, family violence, abortion coercion, or stalking" cannot sue under HB7) (statement of HB7 sponsor Rep. Leach); Tex. House Rsch. Org., *HB 7 Bill Analysis* 13 (2025), https://hro.house.texas.gov/pdf/ba892/HB0007.PDF (noting that, among other provisions intended to "limit[] opportunities for harassment," HB7 "would prevent convicted abusers or individuals with histories of domestic violence, stalking, or sexual assault from seeking legal action under the bill, further protecting vulnerable women"); Tex. H. Comm. State Affs., *C.S.H.B.7 Bill Analysis* 11–12 (2025), https://capitol.texas.gov/tlodocs/892/analysis/pdf/HB00007H.pdf (expanding categories of prohibited persons under HB7).

against the maintenance of any suit in equity in the federal courts, where the legal remedy is adequate."); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (in diversity actions, "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies," apply even though state law dispensed with these requirements); *Rodriguez v. Quicken Loans, Inc.*, 257 F. Supp. 3d 840, 851 (S.D. Tex. 2017) ("It is well settled that [s]tate law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision." (citation modified)); *see also* ECF No. 24 § III (discussing *Hanna* and *Erie*).

Nor may state law "obligate" a federal court to "mechanically . . . grant an injunction for every violation of law" with no discretion to consider the equities. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). The "essence of equity jurisdiction has been the power of the [court] to do equity and to mould each decree to the necessities of the particular case" by "balancing . . . public and private interests." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *Webster v. Doe*, 486 U.S. 592, 604–05 (1988); *see Meredith v. City of Winter Haven*, 320 U.S. 228, 235 (1943) ("An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity."); *cf., e.g.*, ECF No. 24.

Because state law cannot control the scope of a federal equitable remedy here, the federal injunction standard and federal principles of equity apply. *See, e.g.*, *Goal Acquisitions Corp. v. Digital Virgo*, No. 1:23-CV-1549-DII, 2024 WL 1078431, at *3 n.2 (W.D. Tex. Mar. 12, 2024) (applying federal injunction test because "[e]ven if the likelihood of success depends on state law, the remaining [injunction] elements speak to

the principles underlying awards of equitable relief in federal court" and applying state law would "enlarge the federal court's equitable powers" where state—but not federal—law recognized stipulations to entry of an injunction as automatic); *GADV, Inc. v. Beaumont Indep. Sch. Dist.*, No. 1:11-CV-187, 2011 WL 2220242, at *2 (E.D. Tex. June 7, 2011) (applying federal permanent injunction test because "specific authority to ensure compliance with a state statute does not require a federal judge exercising equitable power to mechanically grant an injunction for every violation of the law"); *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1002–03 (9th Cir. 2023) (applying federal permanent injunction test); *United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp.*, No. 07CV2172 AJB, 2012 WL 3861946, at *4 (S.D. Cal. Sept. 5, 2012) (collecting cases).

As discussed more fully in Dr. Coeytaux's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 24 § II, to obtain a permanent injunction, Plaintiffs bear the burden of establishing that (1) they "ha[ve] succeeded on the merits"; (2) "failure to grant the injunction will result in irreparable injury"; (3) "said injury outweighs any damage that the injunction will cause the opposing party"; and (4) the "injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). Plaintiffs pay these elements only lip service—because they cannot satisfy them. Plaintiffs lack any irreparable harm and have only a speculative, self-inflicted injury that has a clear remedy at law. Even if they tried, it is unclear how Plaintiffs could show an irreparable injury in light of the provision in HB7 stating that a defendant in a clawback action "is entitled to . . . damages from any person who brought" the clawback action,

which would be an adequate remedy at law. *See* Tex. Health & Safety Code § 171A.151(f); ECF No. 24 at 15–16.

Thus, even if Plaintiffs were to file a procedurally appropriate dispositive motion on their anti-clawback claim, it would likely fail on the merits.

**2. Plaintiffs have not shown any danger of hardship or injustice.**

Nor have Plaintiffs met their burden to overcome the Court's general policy against piecemeal appeals by showing that they are in "danger of hardship or injustice through delay which would be alleviated by immediate appeal." *PYCA Indus.*, 81 F.3d at 1421.

Plaintiffs do not explain why a Rule 54(b) final judgment is necessary to alleviate any hardship or injustice at this stage. Any order by this Court granting or denying their pending motion for a preliminary anti-clawback injunction would be an immediately appealable interlocutory order. *See* 28 U.S.C. § 1292(a)(1) (appellate jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"). Rule 54(b) therefore adds nothing of practical value, as Plaintiffs would already be entitled to appeal.

Additionally, the purported injuries and hardships to which Plaintiffs point are inherent in litigation or of their own making. Plaintiffs' speculative future exposure to monetary liability as a result of a hypothetical countersuit, their potential inability to collect damages, and the mere possibility that an injunction might be vacated on appeal, Rule 54(b) Mot. 8–10, are risks inherent in *any* litigation and therefore cannot be sufficient to justify a Rule 54(b) order. *See, e.g.*, *Westmoreland v. Venice Marine & Outdoor Consultants, Inc.*,

No. CV 17-6220, 2018 WL 2124040, at *2 (E.D. La. May 8, 2018) ("What the plaintiff identifies are features common to all litigation involving multiple parties and claims; he offers no danger of injustice that would be alleviated by an immediate appeal."); *T.E.S. Entm't v. Walsh*, No. CV 01-947-C, 2005 WL 8157678, at *3 (M.D. La. Mar. 29, 2005) ("[A]s with most legal matters involving financial disputes, a plaintiff almost always faces the possibility that he will be unable to collect a money judgment from the defendant."); *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 569 F. Supp. 3d 347, 362 (E.D. La. 2021) ("continued expense and emotional strain" are "present in every case" and do "not indicate that this is the sort of infrequent hard . . . case that Rule 54(b) was designed to address" (citation modified)).

Plaintiffs' assertion that they need an immediate final judgment on their anti-clawback claim to be able to prosecute their other claims rings hollow. California's shield law has been on the books since well before Mr. Rodriguez filed *Rodriguez I* against Dr. Coeytaux on July 20, 2025. Yet Mr. Rodriguez was willing to litigate *Rodriguez I* months before the anti-clawback injunction provisions of HB7 took effect. Plaintiffs then chose to file this near-identical lawsuit on June 30, 2026, despite Mr. Rodriguez's (and his counsel's) awareness of the shield law, which had been on the books for over 2.5 years at that point. Moreover, Plaintiffs offer no evidence that they or their counsel will be personally on the hook for any damages at all, much less face "ruinous liability" in the absence of immediate judicial action, and in any case, they fail to explain why they are not fully protected by the remedy that HB7 provides entitling them to "damages from any person who brought" a clawback action. Rule 54(b) Mot. 3; Tex. Health & Safety Code § 171A.151(f).

At bottom, Plaintiffs ask this Court to insure them from potential future consequences of their own litigation choices rather than allow the lawsuit to run its course. At every turn, Plaintiff Jerry Rodriguez has engaged in dilatory tactics: suing Dr. Coeytaux in federal court while filing a separate case against the other alleged wrongdoers in state court; amending and then dismissing his case, only to file a virtually identical case hours later that attempts to cure his statutory bar from filing an HB7 claim; and now, asking this Court to enter injunctive relief to block Dr. Coeytaux from filing a hypothetical future case for damages before it rules on Defendant's motion to dismiss or has the opportunity to consider the merits of Plaintiffs' claims. Rule 54(b) is not an avenue for skipping ahead of the normal course of litigation just because of Plaintiffs' worries, and this Court should not reward Plaintiffs' procedural gamesmanship.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Entry of Judgment under Rule 54(b).

Dated: October 15, 2026

Respectfully submitted,
*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com
Leah Schultz
Texas State Bar No. 24126910
S.D. Tex. Bar No. 3737066
Leah.Schultz@arnoldporter.com

811 Main Street, Suite 1800
Houston, TX 77002-2755
(713) 576-2400 (phone)
(713) 576-2499 (fax)

Marc Hearron
HEARRON PLLC
Texas State Bar No. 24050739
(*pro hac vice forthcoming*)
marc@hearronlaw.com
100 Crescent Court
Suite 700, PMB 17265624
Dallas, Texas 75201
(214) 278-6815 (phone)

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
District of Columbia State Bar No. 1002396
(*admitted pro hac vice*)
jhudson@reprorights.org
1600 K St. NW
Washington, DC 20002
(202) 628-0286 (phone)

**COUNSEL FOR DEFENDANT**
**REMY COEYTAUX**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, the foregoing document was electronically filed with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the court.

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com