For invalid pensioners, eighty thousand two hundred and thirty-nine dollars, and fifty-five cents: For fortifying certain ports and harbors of the United States, and purchasing the lands necessary for the erection of the same, seventy-six thousand dollars: For the purchase of cannon, implements and shot, ninety-six thousand dollars.

Out of what funds payable.

Sec. 2. *And be it further enacted*, That the several appropriations herein before made, shall be paid and discharged out of the funds following, to wit: First, the surplus of the sum of six hundred thousand dollars, reserved by the act "making provision for the debt of the United States," and which will accrue during the year one thousand seven hundred and ninety-four: Secondly, the surplus of revenue and income, beyond the appropriations heretofore charged thereupon, to the end of the year one thousand seven hundred and ninety-four: And thirdly, the surplus which may remain unexpended, of the monies appropriated for the use of the war department, in the year one thousand seven hundred and ninety-three.

1790, ch. 34.

Approved, March 21, 1794.

Statute I.

March 22, 1794.

Chap. XI.—*An Act to prohibit the carrying on the Slave Trade from the United States to any foreign place or country.*(a)

Forfeiture of ship, &c. concerned in slave trade.

Section 1. *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That no citizen or citizens of the United States, or foreigner, or any other person com-

(a) The acts prohibiting and punishing the Slave trade, are: An act to prohibit the carrying on the slave trade from the United States to any foreign place or country, March 22, 1794, chap. 11; an act in addition to the act entitled, "An act to prohibit the carrying on the slave trade from the United States to any foreign place or country," May 10, 1800; an act to prevent the introduction of certain persons into certain states, where by the laws thereof their admission is prohibited, February 28, 1803, chap. 10; an act to prohibit the importation of slaves into any port or place within the jurisdiction of the United States from and after the first of January one thousand eight hundred and eight, March 2, 1807, chap. 22; an act in addition to an act entitled, "An act to prohibit the importation of slaves within the jurisdiction of the United States from and after the first day of January one thousand eight hundred and eight," April 20, 1818, chap. 86; an act to continue in force "an act to protect the commerce of the United States, and punish the crime of piracy," and also to make further provision for punishing the crime of piracy, May 15, 1820, chap. 112, sec. 4, 5.

*Decisions of the Courts of the United States on the acts prohibiting and punishing the Slave Trade.*—A libel or information under the 9th section of the slave trade act of March 2, 1797, alleging that the vessel sailed from the port of New York and Perth Amboy, without the captain having delivered the manifest required by law, to the collector or surveyor of the port of New York and Perth Amboy, is defective; the act requiring the manifest to be delivered to the collector or surveyor of a single port. The Mary Ann, 8 Wheat. 380; 5 Cond. Rep. 471.

Under the same section, the libel must charge the vessel to be of the burthen of forty tons or more. In general it is sufficient to charge the offence in the words directing the forfeiture. But if the words are general, embracing a whole class of individual subjects, they must necessarily be so construed as to embrace only a subdivision of that class; the allegation must conform to the legislative sense and meaning. *Ibid.*

The prohibitions in the slave trade acts of May 10, 1800, and April 20, 1818, extend as well to carrying slaves on freight, as to cases where the persons transported are the property of the United States; and the carrying of them from one port to another of the same foreign empire, as well as from one foreign country to another. The Merino, 9 Wheat. 391; 5 Cond. Rep. 623.

Under the 4th section of the act of May 10, 1800, the owner of the slaves transported contrary to the provisions of that act, cannot claim the same in a court of the United States, although, according to the laws of his own country, they may be held in servitude. But if at the time of capture by a commissioned vessel, the offending ship was in the possession of a non-commissioned captor, who had made a seizure for the same offence, the owner of the slaves may claim them; the section only applying to persons interested in the enterprise or voyage in which the ship was employed, at the time of such capture. *Ibid.*

Under the slave trade act of 1794, sec. 1, it is not necessary, in order to incur the forfeiture, that the vessel shall be completely fitted and ready for sea. As soon as the preparations have proceeded so far as clearly to manifest the intention, the right of seizure attaches. The Emily and Caroline, 9 Wheat. 381; 5 Cond. Rep. 623.

The African slave trade is a trade which has been authorized and protected by the laws of all commercial nations. The right to carry it on has been claimed by each, and exercised by each; and it therefore cannot be considered as contrary to the laws of nations. The slave trade remains lawful to those nations which have not forbidden it. The Antelope, 10 Wheat. 66; 6 Cond. Rep. 30.

If the slave trade is not contrary to the laws of nations, it cannot be piracy, unless so declared by statute; and the obligations of such statute cannot exceed the power of the state which has enacted it. *Ibid.*

No vessels to be built or fitted out to carry on the slave trade.

ing into, or residing within the same, shall, for himself or any other person whatsoever, either as master, factor or owner, build, fit, equip, load or otherwise prepare any ship or vessel, within any port or place of the said United States, nor shall cause any ship or vessel to sail from

---

A foreign vessel engaged in the slave trade, captured on the high seas, in time of peace, by an American cruiser, and brought in for adjudication, will be restored, even where the vessel belongs to a nation which has prohibited the trade. *Ibid.*

The right of visitation and search does not exist in time of peace. A vessel engaged in the slave trade in time of peace, even if belonging to a nation which has prohibited the trade, cannot, for that cause alone, be seized on the high seas, and brought in for adjudication in the courts of another country. But if the laws of that other country be violated, or the proceeding be authorized by treaty, the capture is not illegal. *Ibid.*

Africans who are first captured by a belligerent privateer, fitted out in violation of our neutrality, or by a pirate, and then recaptured and brought into the ports of the United States, under a reasonable suspicion that a violation of the slave trade acts was intended, are not to be restored without full proof of the proprietary interests; for in such a case the capture is lawful. And whether in such a case restitution ought to be decreed or not, was a question on which the court was equally divided. *Ibid.*

The District Courts have jurisdiction under the slave trade acts, to determine who are the actual captors, under a state law made in pursuance of the 4th section of the slave trade act of 1807; and directing the proceeds of the negroes to be paid, "one moiety for the use of the commanding officer of the capturing vessel," &c. The Josefa Segunda, 10 Wheat. 312; 6 Cond. Rep. 111.

Under the 7th section of the slave trade act of 1807, the entire proceeds of the vessel are forfeited to the use of the United States; unless the seizure be made by armed vessels of the navy, or by revenue cutters; in which case distribution is to be made in the same manner as prizes taken from the enemy. *Ibid.*

Upon an indictment under the slave trade act of April 20, 1818, against the owner of the ship, testimony of the declarations of the master, being a part of the res gestæ, connected with acts in furtherance of the voyage and within the scope of his authority as the agent of the owner, in the conduct of the guilty enterprise, is admissible. Upon such an indictment against the owner, charging him with fitting out the ship, with an intent to employ her in the illegal voyage, evidence is admissible that her commander authorized, and directed the fitment through the instrumentality of his agent, without being personally present. The United States *v.* Gooding, 12 Wheat. 460; 6 Cond. Rep. 572.

It is not essential to constitute the fitting out, under the acts of Congress, that every equipment necessary for a slave voyage, or any equipment peculiarly adapted to such a voyage, should be taken on board. It is sufficient if the vessel is actually fitted out with intent to be employed in the illegal voyage. The offence may be laid in the words of the statute. *Ibid.*

Nor is it necessary that there should be some principal offender, to whom the defendant might be aiding and abetting. Those terms in the statute do not refer to the relation of principal and accessory in cases of felony, but to the actor; and they who aid and abet the act, are considered as principals. The offence must be alleged to have been committed within the United States. *Ibid.*

Under the act of March 22, 1794, prohibiting the slave trade, if the original object and equipment of the voyage from the United States, was to carry on the African slave trade, the forfeiture attaches, whether the vessel was then owned by American citizens or by foreigners. It is equally unimportant if the act was done by the party, suo jure, or for the benefit of another. The Margaret, 9 Wheat. 421; 5 Cond. Rep. 638.

Even if the equipments are innocent, and adapted to ordinary voyages, if there is positive proof of a guilty intention, forfeiture will attach. Nor is it necessary that the equipments shall have been completed. It is sufficient if any preparations have been made for the unlawful voyage. *Ibid.*

Under the 2d and 3d sections of the act of April, 1818, the offence of sailing from a port to engage in the slave trade, is not committed unless the vessel sails out of the port. United States *v.* La Coste, 2 Mason's C. C. R. 129.

If a foreign claimant of a vessel seized for being engaged in the slave trade, sets up a title derived from an American owner, he must prove affirmatively that the case has no admixture of American ownership. United States *v.* La Jeune Eugenia, 2 Mason's C. C. R. 409.

The 1st section of the slave trade act of May 10, 1800, prohibits not only the transportation of slaves, but the being employed on the business of the slave trade; and therefore a vessel caught in such trade, though before she has taken on board any slaves, is liable to forfeiture. The Alexander, 3 Mason's C. C. R. 175.

The offence against the law of the United States, under the 7th section of the act of March 2, 1807, is not that of importing or bringing into the United States persons of colour, with intent to hold or sell those persons as slaves, but that of hovering on the coast of the United States with such intent; and although it forfeits the vessel and any goods or effects found on board, it is silent as to disposing of any persons found on board, any further than to impose a duty upon the officers of any armed vessels, who make the capture, to keep them safely, to be delivered to the overseers of the poor, or to the governor of the state, or persons appointed by the respective states to receive them. United States *v.* Preston, 3 Peters, 65.

Certain persons who were slaves in Louisiana, were, by their owners, taken to France as servants, and after some time, they, by their own consent, were sent back to Louisiana. The ships in which these persons were passengers, were, after the arrival of the vessels in the United States, libelled for alleged breaches of the act of Congress of April 20, 1818, prohibiting the importation of slaves into the United States. Held that the provisions of the act of Congress do not apply to such cases. The United States *v.* Garonne, 11 Peters, 73.

The act of March 22, 1794, was intended to prohibit any citizen or resident of the United States from equipping vessels within the United States, carrying on trade or traffic in slaves to any foreign country. The Tryphemea, 1 Wash. C. C. R. 522.

The act of May 10, 1800, extends the prohibitions to citizens of the United States, in any manner con-

any port or place within the same, for the purpose of carrying on any trade or traffic in slaves, to any foreign country; or for the purpose of procuring, from any foreign kingdom, place or country, the inhabitants of such kingdom, place or country, to be transported to any foreign country, port, or place whatever, to be sold or disposed of, as slaves: And if any ship or vessel shall be so fitted out, as aforesaid, for the said purposes, or shall be caused to sail, so as aforesaid, every such ship or vessel, her tackle, furniture, apparel and other appurtenances, shall be forfeited to the United States; and shall be liable to be seized, prosecuted and condemned, in any of the circuit courts, or district court for the district where the said ship or vessel may be found and seized.

1800, ch. 51.

Sec. 2. *And be it further enacted*, That all and every person, so building, fitting out, equipping, loading, or otherwise preparing, or sending away, any ship or vessel, knowing or intending that the same shall be employed in such trade or business, contrary to the true intent and meaning of this act, or any ways aiding or abetting therein, shall severally forfeit and pay the sum of two thousand dollars, one moiety thereof to the use of the United States, and the other moiety thereof to the use of him or her who shall sue for and prosecute the same.

Forfeiture on persons aiding or abetting contrary to this act.

Sec. 3. *And be it further enacted*, That the owner, master or factor of each and every foreign ship or vessel, clearing out for any of the coasts or kingdoms of Africa, or suspected to be intended for the slave trade, and the suspicion being declared to the officer of the customs, by any citizen, on oath or affirmation, and such information being to the satisfaction of the said officer, shall first give bond with sufficient sureties, to the treasurer of the United States, that none of the natives of Africa, or any other foreign country or place, shall be taken on board the said ship or vessel, to be transported, or sold as slaves, in any other foreign port or place whatever, within nine months thereafter.

In what cases owners of foreign vessels shall give bond.

Sec. 4. *And be it further enacted*, That if any citizen or citizens of the United States shall, contrary to the true intent and meaning of this act, take on board, receive or transport any such persons, as above described, in this act, for the purpose of selling them as slaves, as aforesaid, he or they shall forfeit and pay, for each and every person, so received on board, transported, or sold as aforesaid, the sum of two hundred dollars, to be recovered in any court of the United States proper to try the same; the one moiety thereof to the use of the United States, and the other moiety to the use of such person or persons, who shall sue for and prosecute the same.

Forfeiture for receiving persons on board to be sold as slaves.

Approved, March 22, 1794.

---

cerned in this kind of traffic, either by personal service on board of American or foreign vessels wherever equipped, and to the owners of such vessels, citizens of the United States. *Ibid.*

The act of Congress declares that "no person shall build, fit, equip, load, or otherwise prepare any ship or vessel, to sail from any port of the United States, for the purpose of carrying on any trade or traffic in slaves to any foreign country." And it declares that "if any ship or vessel shall be so fitted out as aforesaid, or shall be caused to sail as aforesaid, such ship or vessel shall be forfeited to the United States." And the 2d section inflicts a penalty of two thousand dollars on any person who shall build, fit out, &c., any ship or vessel knowing or intending that the same shall be so employed. Held, 1. That the forfeiture of the vessel is not incurred by the building of the vessel for the illegal purpose aforesaid, but only for the fitting out and causing her to sail as aforesaid. 2. An information against the vessel which charges that "she was built, fitted, equipped, loaded, or otherwise prepared, or caused to sail," &c., is bad for uncertainty as to which of the several offences is charged, and on such information, a forfeiture ought not to be pronounced. The Brig Caroline, 1 Brockenb. C. C. R. 384.

The act of Congress of February 28, 1803, forbidding any master or captain of a ship or vessel, to import or bring into any port of the United States, any negro, mulatto, or person of colour, under certain penalties, where the admission of such persons is prohibited by the laws of such state, does not apply to coloured seamen employed in navigating such ship or vessel. The Brig Wilson, 1 Brockenb. C. C. R. 423.

If under the act of April 22, 1818, sec. 2, 3, the offence of causing a vessel to sail from the United States, with an intent, be alleged in an indictment to be on a day now last past, and on divers days before and since that day, the allegation is sufficient. United States *v.* La Coste, 2 Mason's C. C. R 129.

It is not necessary in an indictment on the act of 1818, to aver the defendant knowingly committed the offence. United States *v.* Smith, 2 Mason's C. C. R. 143.