Sec. 16. *And be it further enacted*, That a personal demand of the proprietor or proprietors of any still, of the duties due, or a notice in writing of the amount thereof left at his dwelling by the collector, shall have all the effect of a demand made, as required by the twenty-third section of the act, intituled "An act repealing after the last day of June next, the duties heretofore laid upon distilled spirits imported from abroad, and laying others in their stead; and also upon spirits distilled within the United States, and for appropriating the same.

How collector may demand duties on stills.

1791, ch. 15.

Sec. 17. *And be it further enacted*, That all fines, penalties, and forfeitures, which shall have been incurred by force of any present or future law of the United States for the laying, levying and collecting of any duties or taxes, other than duties on goods, wares and merchandise imported, and on the tonnage of ships and vessels, shall and may be mitigated or remitted, by the like ways and means, and upon and under the like conditions, regulations and restrictions, as are contained, prescribed, authorized and directed, in and by the act, intituled "An act to provide for mitigating or remitting the forfeitures and penalties accruing under the revenue laws in certain cases therein mentioned," touching fines, penalties, and forfeitures incurred or accruing in relation to the cases therein mentioned; which act, and every clause, matter and thing therein contained, shall be of like force and effect, for the mitigating or remitting of fines, penalties and forfeitures, which shall have been incurred in reference to the said other duties and taxes, as if the same were repeated and re-enacted, in the several and respective laws for laying, levying and collecting the said other duties and taxes.

And certain fines, &c. may be mitigated or remitted.

1790, ch. 12.

Sec. 18. *And be it further enacted*, That the judicial courts of the several states, to whom, by this act, a jurisdiction is given, shall and may exercise all and every power, in the cases cognizable before them, for the purpose of obtaining a mitigation or remission of any fine, penalty or forfeiture, which may be exercised by the judges of the district courts, in cases depending before them: The said state courts first causing reasonable notice to be given to the person or persons claiming such fine, penalty or forfeiture, and to the attorney, who may, under warrant from the attorney of the district, prosecute, for the United States, in such court, that each may have an opportunity of showing cause against the mitigation or remission thereof.

How state judicial courts may obtain mitigation of fines, &c.

Sec. 19. *And be it further enacted*, That the act, intituled "An act repealing, after the last day of June next, the duties heretofore laid upon distilled spirits imported from abroad, and laying others in their stead, and also upon spirits distilled within the United States, and for appropriating the same;" and the act, intituled "An act concerning the duties on spirits distilled in the United States," shall extend to, and be in full force, for the recovery and distribution of the penalties and forfeitures herein contained, and, generally, for the execution of this act, as fully and effectually, as if every regulation, restriction, penalty, provision, clause, matter and thing, therein contained, were inserted in, and re-enacted by this present act, subject only to the alterations hereby made.

Provisions of certain act extended for recovery of penalties, &c. under this.

1791, ch. 15.
1792, ch. 32.

Approved, June 5, 1794.

Statute I.

June 5, 1794.

Chap. L.—*An Act in addition to the act for the punishment of certain crimes against the United States.*(a)

Act of April 30, 1790, ch. 9.
Act of April 24, 1800, ch. 35.

Section 1. *Be it enacted and declared by the Senate and House of Representatives of the United States of America in Congress assembled*, That if any citizen of the United States shall, within the territory or

(a) Illegal outfit of vessels in the ports of the United States.—Where a vessel had been built in New York, for the purpose of employing her in a war with England, if a war had broken out, and was afterwards sold to a French citizen, who used her as a privateer, the Supreme Court refused to hear counsel

Repealed by Act of April 20, 1818, ch. 53.
Punishment on persons accept-

jurisdiction of the same, accept and exercise a commission to serve a foreign prince or state in war by land or sea, the person so offending shall be deemed guilty of a high misdemeanor, and shall be fined not more than two thousand dollars, and shall be imprisoned not exceeding three years.

---

against the allegation that this was an original construction or outfit of the vessel for the purposes of war. Moodie *v.* The Alfred, 3 Dall. 307; 1 Cond. Rep. 135.

A French privateer had taken out her guns, masts, and sails, which remained on shore until the general repairs were completed, and they were again put on board; after which she sailed on a cruise, and captured a British vessel, which she sent into Charleston. On a claim of restitution on the ground that the vessel had been originally fitted out in the United States, in a neutral port, the court decided that the mere replacement of her force could not be considered as an augmentation; even if an augmentation of force should be considered a cause for restoration. Moodie *v.* The sloop Phœbe Ann, 3 Dall. 319; 1 Cond. Rep. 139.

A neutral nation may, if so disposed, without a breach of her neutrality, grant permission to both belligerents to equip their vessels of war within her territories. But without such permission, the subjects of such belligerent powers have no right to equip vessels of war, or to augment their force, either with arms or men, within the neutral territory. The Alerta *v.* Blas Moran, 9 Cranch, 359; 3 Cond. Rep. 425.

Such unauthorized acts violate the sovereignty of a neutral nation. All captures made by such equipments are illegal in respect to such nation, and it is competent for her courts to punish the offenders; and if prizes are brought within their jurisdiction, to order and cause them to be restored. *Ibid.*

It is immaterial whether the persons taken on board at the neutral port were native American citizens or foreigners domiciled in the United States. Neither the law of nations, nor the act of Congress recognizes any distinction, except to the subjects of the state in whose service they were enlisted transiently in the United States. *Ibid.*

An augmentation of force, affects only captures made during the original cruise. The offence terminates at the end of the voyage, and does not affect subsequent transactions. But as to captures made during the same cruise, the doctrine has been long established, that such illegal augmentation of force is a violation of the law of nations, as well as of our own municipal laws; and as a violation of our neutrality, it affects the captures subsequently made with the character of torts; and justifies and requires a restitution of the property to such persons as have been injured by such misconduct. The Santissima Trinidad, 7 Wheat. 283; 5 Cond. Rep. 284.

The practice is now fully established, that prizes made by vessels which have violated the acts of Congress enacted for the preservation of the neutrality of the United States, if brought within her territory shall be restored. The Gran Para, 7 Wheat. 471; 5 Cond. Rep. 328.

It has never been held that the offence adheres to the vessel under whatever change takes place; nor that it does not terminate when the voyage, for which the illegal outfit was made, shall have ended. But if this termination was merely colourable, and the vessel was equipped with the intention of being employed on the cruise during which the capture was made, the violation is not purged. *Ibid.*

Property belonging to a friendly power, captured on the high seas by a privateer, armed and fitted out by citizens of the United States, in the waters of the United States, as a vessel of war, and commanded by a citizen of the United States, is illegally captured; and must be restored to its owner, if brought within our jurisdiction. The Fanny, 9 Wheat. 658; 5 Cond. Rep. 722.

A French privateer fitted out in the United States, and commissioned as a privateer by the French minister residing in the United States, being proscribed by the President of the United States, dismantled and sold in Charleston, was afterwards fitted out for war in a foreign port, and was commissioned by France. Captures made by her are not illegal, and are no violation of the neutrality of the United States. Williamson *v.* The Betsey, Bee's Admiralty Decisions, 67.

The laws of neutrality and nations do not, in any case, interdict vessels from going to sea armed and fitted for defensive war. Bee's Adm. Decisions, 69.

It is a violation of the act of June 5, 1794, to concert an expedition from the United States to commit hostilities against a power at peace with the United States; and it is unimportant that such expedition originated beyond seas, if carried on from this country. It is unimportant whether the persons engaged in such a purpose, engage the whole vessel to themselves, or depart as passengers. 1 Peters's C. C. R. 487.

The previous knowledge or approbation of the President of the United States, of the illegal act of a citizen, can afford him no justification of the breach of a constitutional law. Trial of Smith and Ogden, 237.

To bring a case within the 5th section of the act of June 5, 1794, made perpetual by the act of April 24, 1800, prohibiting any person within the territory or jurisdiction of the United States from providing or preparing the means of a military expedition or enterprise to be carried on from thence, against the territory or dominions of any foreign prince or state, with whom the United States are at peace, it is immaterial whether or not the vessel, at the identical time of sailing, is in complete readiness for hostile engagement. If the vessel sailed with the means or intent to carry it on, such an enterprise is within the act. *Ibid.*

Indictment under the 3d section of the act for the punishment of certain crimes against the United States, passed April 20, 1818. The indictment charged the defendant with being knowingly concerned in fitting out in the port of Baltimore, a vessel with intent to employ her in the service of a "foreign people," "The United Provinces of Buenos Ayres," against the subjects of the emperor of Brazil, with whom the United States were at peace. The vessel went from Baltimore to St. Thomas, and was there fully armed. She afterwards cruised under the Buenos Ayrean flag. Held:—To bring the defendant within the words of the act, it is not necessary to charge him with being concerned in fitting out and arming the vessel. The words are, fitting out or arming; either will constitute the offence. It is sufficient if the indictment charges the offence in the words of the act. The United States *v.* John B. Quincy, 6 Peters, 445.

The law does not prohibit armed vessels, belonging to citizens of the United States, from sailing out of our ports. It only requires the owner of such vessels to give security, that such vessels shall not be employed by them to commit hostilities against a foreign power at peace with the United States. *Ibid.*

ing certain commissions.

Sec. 2. *And be it further enacted and declared,* That if any person shall within the territory or jurisdiction of the United States enlist or enter himself, or hire or retain another person to enlist or enter himself, or to go beyond the limits or jurisdiction of the United States with intent to be enlisted or entered in the service of any foreign prince or state as a soldier, or as a marine or seaman on board of any vessel of war, letter of marque or privateer, every person so offending shall be deemed guilty of a high misdemeanor, and shall be fined not exceeding one thousand dollars, and be imprisoned not exceeding three years. *Provided,* That this shall not be construed to extend to any subject or citizen of a foreign prince or state who shall transiently be within the United States and shall on board of any vessel of war, letter of marque or privateer, which at the time of its arrival within the United States was fitted and equipped as such, enlist or enter himself or hire or retain another subject or citizen of the same foreign prince or state, who is transiently within the United States, to enlist or enter himself to serve such prince or state on board such vessel of war, letter of marque or privateer, if the United States shall then be at peace with such prince or state. *And provided further,* That if any person so enlisted shall within thirty days after such enlistment voluntarily discover upon oath to some justice of the peace or other civil magistrate, the person or persons by whom he was so enlisted, so as that he or they may be apprehended and convicted of the said offence; such person so discovering the offender or offenders shall be indemnified from the penalty prescribed by this act.

On enlisting, &c. to go beyond jurisdiction of United States.

Proviso.

Sec. 3. *And be it further enacted and declared,* That if any person shall within any of the ports, harbors, bays, rivers or other waters of the United States, fit out and arm or attempt to fit out and arm or procure to be fitted out and armed, or shall knowingly be concerned in the furnishing, fitting out or arming of any ship or vessel with intent that such ship or vessel shall be employed in the service of any foreign prince or state to cruise or commit hostilities upon the subjects, citizens or property of another foreign prince or state with whom the United States are at peace, or shall issue or deliver a commission within the territory or jurisdiction of the United States for any ship or vessel to the intent that she may be employed as aforesaid, every such person so offending shall upon conviction be adjudged guilty of a high misdemeanor, and shall be fined and imprisoned at the discretion of the court in which the conviction shall be had, so as the fine to be imposed shall in no case be more than five thousand dollars and the term of imprisonment shall not exceed three years, and every such ship or vessel with her tackle, apparel and furniture together with all materials, arms, ammunition and stores which may have been procured for the building and equipment thereof shall be forfeited, one half to the use of any person who shall give information of the offence, and the other half to the use of the United States.

Punishment on fitting out ships of war or issuing certain commissions.

1797, ch. 1.

Sec. 4. *And be it further enacted and declared,* That if any person shall within the territory or jurisdiction of the United States increase or augment, or procure to be increased or augmented, or shall be knowingly concerned in increasing or augmenting the force of any ship of war, cruiser or other armed vessel which at the time of her arrival within the United States, was a ship of war, cruiser or armed vessel in the service of a foreign prince or state or belonging to the subjects or citizens of such prince or state the same being at war with another foreign prince or state with whom the United States are at peace, by adding to the number or size of the guns of such vessel prepared for use, or by the addition thereto of any equipment solely applicable to war, every such person so offending shall upon conviction be adjudged guilty of a misdemeanor, and shall be fined and imprisoned at the discretion of the court in which the conviction shall be had, so as that such fine shall not exceed one thousand dollars, nor the term of imprisonment be more than one year.

On increasing or augmenting force of any ship, &c.

Punishment of persons setting on foot certain expeditions.

Sec. 5. *And be it further enacted and declared,* That if any person shall within the territory or jurisdiction of the United States begin or set on foot or provide or prepare the means for any military expedition or enterprise to be carried on from thence against the territory or dominions of any foreign prince or state with whom the United States are at peace, every such person so offending shall upon conviction be adjudged guilty of a high misdemeanor, and shall suffer fine and imprisonment at the discretion of the court in which the conviction shall be had, so as that such fine shall not exceed three thousand dollars nor the term of imprisonment be more than three years.

District courts to take cognizance of certain captures.

Sec. 6. *And be it further enacted and declared,* That the district courts shall take cognizance of complaints by whomsoever instituted, in cases of captures made within the waters of the United States, or within a marine league of the coasts or shores thereof.

Power of the President of the United States herein.

Sec. 7. *And be it further enacted and declared,* That in every case in which a vessel shall be fitted out and armed, or attempted so to be fitted out or armed, or in which the force of any vessel of war, cruiser or other armed vessel, shall be increased or augmented, or in which any military expedition or enterprise shall be begun or set on foot contrary to the prohibitions and provisions of this act; and in every case of the capture of a ship or vessel within the jurisdiction or protection of the United States as above defined, and in every case in which any process issuing out of any court of the United States, shall be disobeyed or resisted by any person or persons having the custody of any vessel of war, cruiser or other armed vessel of any foreign prince or state, or of the subjects or citizens of such prince or state, in every such case it shall be lawful for the President of the United States, or such other person as he shall have empowered for that purpose, to employ such part of the land or naval forces of the United States or of the militia thereof as shall be judged necessary for the purpose of taking possession of, and detaining any such ship or vessel, with her prize or prizes if any, in order to the execution of the prohibitions and penalties of this act, and to the restoring such prize or prizes, in the cases in which restoration shall have been adjudged, and also for the purpose of preventing the carrying on of any such expedition or enterprise from the territories of the United States against the territories or dominions of a foreign prince or state, with whom the United States are at peace.

Sec. 8. *And be it further enacted and declared,* That it shall be lawful for the President of the United States, or such other person as he shall have empowered for that purpose, to employ such part of the land or naval forces of the United States or of the militia thereof, as shall be necessary to compel any foreign ship or vessel to depart the United States, in all cases in which, by the laws of nations or the treaties of the United States, they ought not to remain within the United States.

Prosecution of treason not to be impaired.

Sec. 9. *And be it further enacted,* That nothing in the foregoing act shall be construed to prevent the prosecution or punishment of treason, or any piracy defined by a treaty or other law of the United States.

Continued by act of 1800, ch. 35.

Sec. 10. *And be it further enacted,* That this act shall continue and be in force for and during the term of two years, and from thence to the end of the next session of Congress, and no longer.

Approved, June 5, 1794.

---

Statute I.

June 5, 1794.

Chap. LI.—*An Act laying certain duties upon Snuff and Refined Sugar.*

Act of March 3, 1795, ch. 43.

Section 1. *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That from and after the thirtieth day of September next, there be levied, collected and paid, upon all snuff, which, after that day, shall be manufactured for