**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY RODRIGUEZ and<br>ISABELLA IRENE RODRIGUEZ<br><br>Plaintiffs,<br><br>v.<br><br>REMY COEYTAUX<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. NO. 3:26-cv-207 |

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

---

# TABLE OF CONTENTS

ARGUMENT .... 1
I. Plaintiffs Do Not Have Standing to Assert Any of Their Claims. .... 1
A. Mr. Rodriguez Lacks Standing for the Wrongful-Death Claim. .... 1
B. Ms. Rodriguez Lacks Standing to Bring Her HB7 Claims. .... 3
1. Texas has not suffered an injury to assign to Ms. Rodriguez. .... 3
2. HB7 is an improper qui tam statute. .... 5
C. Plaintiffs Lack Standing to Seek an Anti-Clawback Injunction. .... 10
II. Plaintiffs Failed to State a Wrongful Death Claim. .... 12
A. Plaintiffs Failed to Plead Causation. .... 12
B. Plaintiffs Failed to Plead Wrongfulness. .... 14
III. Ms. Rodriguez Failed to State an HB7 "Qui Tam" Claim. .... 16
A. Ms. Rodriguez Is Acting in "Concert or Participation" with Her Father. .... 17
B. Ms. Rodriguez's HB7 Allegations Are Vague and Conclusory. .... 17
C. HB7 Violates the Texas Constitution. .... 18
D. HB7 Violates the Dormant Commerce Clause. .... 19
IV. Plaintiffs Failed to State an Anti-Clawback Injunction Claim. .... 20
CONCLUSION .... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & R Eng'g & Testing, Inc. v. Scott,*
72 F.4th 685 (5th Cir. 2023) ........ 12

*Abbott v. Harris Cnty.,*
672 S.W.3d 1 (Tex. 2023) ........ 6

*Ambrosio v. Carter's Shooting Ctr., Inc.,*
20 S.W.3d 262 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ........ 14

*American Tax Funding, LLC v. City of Syracuse,*
41 F. Supp. 3d 188 (N.D.N.Y. 2014) ........ 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........ 4

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) ........ 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........ 4

*Bendix Autolite Corp. v. Midwesco Enters., Inc.,*
486 U.S. 888 (1988) ........ 19, 20

*Bennett v. Spear,*
520 U.S. 154 (1997) ........ 2

*Bostic v. Ga.-Pac. Corp.,*
439 S.W.3d 332 (Tex. 2014) ........ 13

*Bryant v. Envoy Air, Inc.,*
2021 WL 3704731 (N.D. Tex. 2021) ........ 18

*U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.,*
741 F.3d 390 (4th Cir. 2013) ........ 9

*Burt v. Playtika, Ltd.,*
132 F.4th 398 (6th Cir. 2025) ........ 6

*California v. Texas*,
593 U.S. 659 (2021) ........ 1, 2

*Canada v. United States*,
950 F.3d 299 (5th Cir. 2020) ........ 17

*City Nat'l Bank of Austin v. Falkner*,
428 S.W.2d 429 (Tex. App.—Austin 1968), writ ref'd n.r.e., 432 S.W.2d 689 (Tex. 1968) ........ 20

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 4, 10

*Cmty. for Creative Non-Violence v. Pierce*,
814 F.2d 663 (D.C. Cir. 1987) ........ 2

*Consumer Fed'n of Am. v. FCC*,
348 F.3d 1009 (D.C. Cir. 2003) ........ 2

*Cook Cnty. v. U.S. ex rel. Chandler*,
538 U.S. 119 (2003) ........ 9

*Department of Commerce v. New York*,
588 U.S. 752 (2019) ........ 2

*Dickerson v. Bailey*,
336 F.3d 388 (5th Cir. 2003) ........ 19

*Doe v. Bolton*,
410 U.S. 179 (1973) ........ 11

*Dowden v. State*,
758 S.W.2d 264 (Tex. Crim. App. 1988) ........ 3

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
608 U.S. 174 (2026) ........ 11

*United States ex rel. FLFMC, LLC v. Wham-O, Inc.*,
2010 WL 3156162 (W.D. Pa. Aug. 3, 2010) ........ 7, 9

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ........ 2

*Fund Tex. Choice v. Paxton*,
658 F. Supp. 3d 377 (W.D. Tex. 2023) ........ 16

*Gaylor v. Hamilton Crossing CMBS*,
582 F. App'x 576 (6th Cir. 2014) .......... 4

*Grossman v. Wolfe*,
578 S.W.3d 250 (Tex. App.—Austin 2019, pet. denied) .......... 19

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) .......... 5, 8

*Jackson v. City of Houston*,
143 F.4th 640 (5th Cir. 2025) .......... 2

*John Havlir & Assocs. Inc. v. Tacoa, Inc.*,
810 F. Supp. 752 (N.D. Tex. 1993) .......... 20

*Joint Heirs Fellowship Church v. Akin*,
629 F. App'x 627 (5th Cir. 2015) .......... 11

*Lundahl v. Glob. E. LLC*,
643 F. App'x 752 (10th Cir. 2016) .......... 17

*Magadia v. Wal-Mart Associates, Inc.*,
999 F.3d 668 (9th Cir. 2021) .......... 6

*Mahmoud v. Taylor*,
606 U.S. 522 (2025) .......... 10

*Massachusetts v. EPA*,
549 U.S. 497 (2007) .......... 2

*Mendia v. Garcia*,
768 F.3d 1009 (9th Cir. 2014) .......... 2

*Nat'l Carloading Corp. v. Phoenix-El Paso Exp.*,
176 S.W.2d 564 (Tex. 1943) .......... 16

*Norsworthy v. Houston Indep. School Dist.*,
70 F.4th 332 (5th Cir. 2023) .......... 18

*In re Novartis Pharm. Corp.*,
722 S.W.3d 720 (Tex. 2025) .......... 6, 8, 9, 19

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
117 F.4th 628 (5th Cir. 2024) .......... 14

*Ortega Garcia v. United States*,
427 F. Supp. 3d 882 (S.D. Tex. 2019), aff'd, 986 F.3d 513 (5th Cir. 2021) ........ 15

*Parsons v. U.S. Dep't of Justice*,
801 F.3d 701 (6th Cir. 2015) ........ 2

*Paxton v. Dettelbach*,
105 F.4th 708 (5th Cir. 2024) ........ 11

*Perry v. S.N.*,
973 S.W.2d 301 (Tex. 1998) ........ 14, 15

*Pollice v. National Tax Funding, L.P.*,
225 F.3d 379 (3d Cir. 2000) ........ 7

*In re Pub. Serv. Co. of N.H.*,
848 F. Supp. 318 (D.R.I. 1994), aff'd on other grounds, 43 F.3d 763 (1st Cir. 1995) ........ 17

*Rodriguez v. State*,
454 S.W.3d 503 (Tex. Crim. App. 2014) ........ 15

*Rodriguez-Escobar v. Goss*,
392 S.W.3d 109 (Tex. 2013) (per curiam) ........ 12, 13

*Rosen v. Tenn. Comm'r of Fin. & Admin.*,
288 F.3d 918 (6th Cir. 2002) ........ 4

*Rosenfeld v. Lu*,
766 F. Supp. 1131 (S.D. Fla. 1991) ........ 20

*Scott v. Bd. of Adjustment*,
405 S.W.2d 55 (Tex. 1966) ........ 19

*Smith v. Am. Pain & Wellness, PLLC*,
747 F. Supp. 3d 989 (E.D. Tex. 2024) ........ 16

*Spence v. Fenchler*,
180 S.W. 597 (Tex. 1915) ........ 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 8

*Sprint Comm'cs Co., L.P. v. APCC Services, Inc.*,
554 U.S. 269 (2008) .......... 5, 7, 9

*State v. Hunter*,
606 S.W.3d 836 (Tex. App.—Austin 2020, pet. ref'd) .......... 16

*State v. Hunter*,
624 S.W.3d 589 (Tex. Crim. App. 2021) .......... 15

*State v. Stephens*,
663 S.W.3d 45 (Tex. Crim. App. 2021) .......... 8

*Stauffer v. Brooks Bros., Inc.*,
619 F.3d 1321 (Fed. Cir. 2010) .......... 7, 9

*Steffel v. Thompson*,
415 U.S. 452 (1974) .......... 10

*Stenberg v. Carhart*,
530 U.S. 914 (2000) .......... 11

*In re Swinton*,
287 B.R. 634 (W.D. Pa. 2003) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7

*Turaani v. Wray*,
988 F.3d 313 (6th Cir. 2021) .......... 1

*Umphress v. Hall*,
133 F.4th 455 (5th Cir. 2025) .......... 11

*Unified Data Servs., LLC v. Fed. Trade Comm'n*,
39 F.4th 1200 (9th Cir. 2022) .......... 12

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) .......... passim

*Werner Enters., Inc. v. Blake*,
719 S.W.3d 525 (Tex. 2025) .......... 12, 13, 14

*State ex rel. White v. Griffin*,
604 F. Supp. 3d 1143 (D.N.M. 2022) .......... 6, 7

*White v. Smith & Wesson Corp.*,
97 F. Supp. 2d 816 (N.D. Ohio 2000) .... 2

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) .... 12

*Ex parte Young*,
209 U.S. 123 (1908) .... 11

**Statutes**

18 U.S.C. § 962 .... 7

46 U.S.C. § 80103(b) .... 7

All Writs Act .... 20

Cal. Civ. Code § 1798.303 .... 11

Comstock Act .... 16

False Claims Act .... 5, 6, 8, 9

False Marking Statute .... 7

Texas House Bill 7 .... passim

Tex. Gov't Code § 2400.004 .... 19

Tex. Health & Safety Code Ann. § 171A.001(8) .... 19, 20

Tex. Health & Safety Code Ann. § 171A.101 .... 7, 20

Tex. Hum. Res. Code §§ 36.101–.102, .104, .109–.110 .... 19

Tex. Penal Code § 7.02 .... 16

Tex. Penal Code § 7.03 .... 16

Tex. Penal Code § 19.02(b) .... 15

Texas Medicaid Fraud Prevention Act .... 19

Texas Senate Bill 8 .... 16

Wrongful Death Act .... 14

**Other Authorities**

Restatement (Third) of Torts § 27 ........................................................................ 13

Tex. House of Reps., 89th Leg., Second Called Sess., Chamber Broadcast (Aug. 28, 2025), https://house.texas.gov/videos/22544 ............................................. 20

Tex. Const. art. III, § 36 ........................................................................................ 16

Plaintiffs' response overcomes none of the defects requiring dismissal. *First*, Plaintiffs lack standing: Mr. Rodriguez cannot trace the Garzas' independent choices back to Dr. Coeytaux; Ms. Rodriguez has no injury and HB7 is not a valid *qui tam* law; and no clawback suit has ever been threatened, let alone filed. *Second*, Mr. Rodriguez's wrongful-death claim fails because he pleaded no facts showing cause-in-fact, nor a cognizable tort duty to establish a "wrongful" act. *Third*, the HB7 claims fail: Ms. Rodriguez is statutorily barred from bringing a "*qui tam*" claim, her allegations are conclusory, and HB7 is doubly unconstitutional. Accordingly, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs Do Not Have Standing to Assert Any of Their Claims.

#### A. Mr. Rodriguez Lacks Standing for the Wrongful-Death Claim.

Mr. Rodriguez's "quarrel is with" Mr. and Mrs. Garza, not Dr. Coeytaux. *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021) (Sutton, J.). According to the Complaint, the abortion occurred because Mrs. Garza decided to take the abortion pills that Mr. Garza provided to her. Compl. ¶¶ 11–13; *see* Def.'s Mot. to Dismiss 9–11, ECF No. 15 ("MTD"). Such "'unfettered choices made by independent actors not before the courts'" "break[] the chain of constitutional causation." *Turaani*, 988 F.3d at 317.

While Mr. Rodriguez argues he need not show proximate causation, that is not responsive to the salient point: standing is "substantially more difficult to establish" when, as here, causation depends on independent third parties' decisions. *California v. Texas*, 593 U.S. 659, 675 (2021). As his own citations and Fifth Circuit precedent make clear, Mr. Rodriguez must show that Dr. Coeytaux had a determinative or coercive effect on Mr. and

Mrs. Garza's decisions, or at least motivated the decision to have an abortion. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015); *Jackson v. City of Houston*, 143 F.4th 640, 645 n.4 (5th Cir. 2025).[1]

Mr. Rodriguez falls back on the "predictable effect" language from *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019), but that is another articulation—not a relaxation—of the same standard. There, the government's addition of a citizenship question to the census had a coercive or motivating effect on noncitizens, "predictabl[y]" causing them to not answer the census due to "fears" that the government would "us[e] [their] answers against them for law enforcement purposes." *Id.* at 767–68; *see California*, 593 U.S. at 675. Regardless, predictability alone is not enough: "The causation requirement also rules out attenuated links—that is, where the [defendant's] action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

Mr. Rodriguez has not satisfied this standard. By the Complaint's own terms, Dr. Coeytaux did not coerce, motivate, or in any way prompt Mrs. Garza's decision to have an abortion or Mr. Garza's alleged decision to "pressure[]" her to take the pills. Compl. ¶ 13.

---

[1] *Compare Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (government action "led third parties to act in a way that injured" plaintiff), *with Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 669 (D.C. Cir. 1987) (rejecting causation where agency action was not "a substantial factor motivating the third parties' actions against" challengers). The remaining cases concern inapposite situations where a challenged agency action is what permitted third parties to inflict the claimed injury, *Consumer Fed'n of Am. v. FCC*, 348 F.3d 1009, 1012 (D.C. Cir. 2003); *Massachusetts v. EPA*, 549 U.S. 497, 523–24 (2007), or where a defendant's own negligence in manufacturing guns caused the alleged injury. *White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816, 825 (N.D. Ohio 2000).

Indeed, the Complaint alleges that Mrs. Garza later had another abortion without Dr. Coeytaux's involvement at all. *Id.* ¶¶ 14–15. Plaintiffs' argument that Dr. Coeytaux's "purpose and intent" was to facilitate an abortion is irrelevant to Article III's causation requirement. *See* Opp. 4–5. Their lone citation to *Dowden v. State*, 758 S.W.2d 264, 273 (Tex. Crim. App. 1988), a state criminal case concerning a fatal shoot-out, has nothing to do with federal standing. Because the alleged injury is not fairly traceable to Dr. Coeytaux's alleged actions, the wrongful-death claim must be dismissed.

### B. Ms. Rodriguez Lacks Standing to Bring Her HB7 Claims.

#### 1. Texas has not suffered an injury to assign to Ms. Rodriguez.

Ms. Rodriguez lacks standing to bring the HB7 "*qui tam*" claim because Plaintiffs have not adequately alleged any injury to the State of Texas, as they have not adequately alleged any past or future violation of HB7. An assignee may assert only "the injury in fact suffered by the assignor." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

Plaintiffs have not adequately alleged a past violation of HB7 to support HB7's monetary penalty. The only concrete shipment of abortion medication that is alleged occurred in 2024, more than a year before HB7 took effect. *See* Compl. ¶¶ 11–12. While the Complaint states Dr. Coeytaux mailed abortion pills into Texas "many times" after December 4, 2025, and Ms. Rodriguez knows of "at least two such occasions," Opp. 7, such vague, barebones allegations are insufficient for standing, MTD 12 (collecting cases). Plaintiffs argue that detailed factual allegations are not required, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Here, Plaintiffs offer nothing—no transaction, communication, timing beyond the statutory effective date, or other facts as to any alleged shipment. *See* Opp. 9. Merely stating the legal prohibition and declaring that it happened twice is insufficient.

Nor have Plaintiffs adequately alleged that Texas faces an imminent future injury to support injunctive relief. Plaintiffs disclaim any "powers of divination," yet ask this Court to accept their unsupported prediction of future violations as a "certainly impending" injury. *See id.* 8–9. Their assertion that Dr. Coeytaux "intends to continue" violating HB7 is nothing more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Such a vague, conclusory allegation cannot establish a "certainly impending" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013). Nor can Plaintiffs bootstrap their conclusory allegation that Dr. Coeytaux has violated HB7 "many times" to allege future harm. Although past conduct may inform the likelihood of recurrence, it does not relieve Plaintiffs of the obligation to allege a real and immediate threat. *See Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014) ("The 'threat' of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone."); *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 929 (6th Cir. 2002) (no standing for injunctive relief where threat of repeated injury is speculative or tenuous). Here, Plaintiffs allege no facts evidencing an ongoing course of prohibited conduct or a concrete plan to undertake it. Because Plaintiffs failed to allege an injury to Texas, Ms. Rodriguez has no injury to assert as Texas's purported assignee.

**2. HB7 is an improper *qui tam* statute.**

Even if the Complaint alleged plausible violations of HB7, Ms. Rodriguez would still lack standing. The only way to square *qui tam* statutes with Article III jurisprudence is to require the two elements that *Vermont Agency* relied on: the statute must be "[1] a partial assignment of [2] the Government's damages claim." *Sprint Comm'cs Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 286 (2008) (quoting *Vt. Agency*, 529 U.S. at 773); *Hollingsworth v. Perry*, 570 U.S. 693, 711 (2013) (California authorizing a suit on its behalf was "readily distinguishable" from *Vermont Agency* because the FCA is a "partial assignment of the Government's damages claim"). These two requirements reflect courts' careful parsing of *Vermont Agency* in the context of Article III jurisprudence.

By contrast, Plaintiffs' "formalistic" approach turns on magic words in the statute. Opp. 22. According to Plaintiffs, while States cannot manufacture citizen-suit standing through statutes that "merely '*authorize[]*' uninjured private citizens to sue lawbreakers in federal court," they can supposedly manufacture citizen-suit standing through "statutes that '*assign*' the government's own claims against lawbreakers to qui tam relators." Opp. 22 (emphasis added). But Article III jurisprudence does not let States circumvent the well-established rule against citizen suits simply by replacing the word "authorize" in statutes with "assign." States cannot "issu[e] to private parties who otherwise lack standing a ticket to the federal courthouse." *Hollingsworth*, 570 U.S. at 715. Requiring a partial assignment of a damages claim is necessary to respect that well-established rule.

**Partial Assignment.** Plaintiffs concede, as they must, that numerous federal courts have concluded that a partial assignment is a quintessential requirement for *qui tam*

standing. Opp. 15–19; *see State ex rel. White v. Griffin*, 604 F. Supp. 3d 1143, 1148–49 (D.N.M. 2022); *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 677 (9th Cir. 2021); *Burt v. Playtika, Ltd.*, 132 F.4th 398, 404–05 (6th Cir. 2025). Plaintiffs nonetheless ask this Court to "disavow" those opinions. Opp. 15. It should not.

First, requiring a partial assignment mirrors *Vermont Agency*'s holding. The numerous procedural safeguards in the FCA cited by the Court, including the government's right to intervene and its right to receive a share of the recovery, were necessary to ensure the government "remains the real party in interest." *Magadia*, 999 F.3d at 677; *see Vt. Agency*, 529 U.S. at 769–70. Indeed, the Court rejected the dissent's characterization "that a *qui tam* relator 'is, in effect, suing as an assignee'" of the government, clarifying that "a *qui tam* relator is, in effect, suing as a *partial* assignee." *Vt. Agency*, 529 U.S. at 773 n.4. Second, this distinction matters because the assignment comes from the State. *Cf.* Opp. 12–13. Unlike a private assignor, the Texas Legislature is constrained by the Texas "Constitution's strong separation-of-powers provision." *Abbott v. Harris Cnty.*, 672 S.W.3d 1, 3 (Tex. 2023). Permitting the Texas Legislature to delegate entirely the state attorneys' exclusive authority to litigate on behalf of Texas would permit unelected private citizens to act without any democratic check. *See infra* Section III.C.; *In re Novartis Pharm. Corp.*, 722 S.W.3d 720, 722 (Tex. 2025) (Young, J., Sullivan, J., respecting the denial of the petition for writ of mandamus) (noting the Texas Constitution may generate "constitutional doubts about *qui tam* litigation"). Third, as Plaintiffs concede, the "historical" *qui tam* statutes were "partial" assignments because they required, at minimum, the government to

share in the recovery. Opp. 16; *Vt. Agency*, 529 U.S. at 776–77 nn.6–7.[2]

Plaintiffs' case law is inapposite. *Sprint* concerned a private assignment of damages claims. 554 U.S. at 286. No federal court has held that a government can use the same assignment rules as private citizens, because such a view would run afoul of separation of powers. *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1327 n.3 (Fed. Cir. 2010) (recognizing that False Marking Statute and statutes cited in *Vermont Agency* were partial assignments). The debt-collector cases Plaintiffs cite do not address Article III standing, *Vermont Agency*, or separation-of-powers principles. Opp. 13–14.[3] Nor do Plaintiffs explain how these cases—which involve municipalities selling monetary injuries to private debt collectors—are analogous to the State fully assigning the right to litigate its sovereign interests to unaccountable private citizens.

Because HB7 "absolute[ly]" and fully assigns Texas's interest in the claim while mandating that the private citizen recover the "entire amount awarded," HB7 is an improper *qui tam* statute that cannot confer standing on Ms. Rodriguez. Tex. Health & Safety Code Ann. § 171A.101(b).

**Damages Claim.** A proper *qui tam* statute requires a proprietary injury-in-*fact* to the government; it cannot be based on a sovereign injury-in-*law* alone. *Griffin*, 604 F. Supp. 3d at 1147; *United States ex rel. FLFMC, LLC v. Wham-O, Inc.*, 2010 WL 3156162, at *5–

---

[2] *Accord id.* at 776 n.5 (noting 18 U.S.C. § 962 and 46 U.S.C. § 80103(b) do "not expressly authoriz[e] suit" by private citizens).

[3] *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 389 (3d Cir. 2000); *In re Swinton*, 287 B.R. 634, 638 (W.D. Pa. 2003); *American Tax Funding, LLC v. City of Syracuse*, 41 F. Supp. 3d 188, 191 (N.D.N.Y. 2014).

6 (W.D. Pa. Aug. 3, 2010); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("[U]nder Article III, an injury in law is not an injury in fact."). A State's sovereign injury is an injury arising solely "from violation of its laws" which "suffices to support a criminal lawsuit by the Government." *Vt. Agency*, 529 U.S. at 771.

But a sovereign injury is not assignable under a *qui tam* scheme. *See Novartis Pharm.*, 722 S.W.3d at 721 (noting *Vermont Agency* relied on an "injury in fact"—i.e., a "damages claim"—and "not merely on some violation of law"). First, allowing the public to enforce the State's sovereign interests through *qui tam* suits would violate Article III, which requires plaintiffs to have a personal stake separate from citizens' general grievances with violations of the law. *See Hollingsworth*, 570 U.S. at 709–14 (rejecting argument that private citizens could assert the State's interest in defending and enforcing its law); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Second, limiting *qui tam* standing to proprietary injuries avoids separation-of-powers concerns that would arise if the legislature could delegate to private citizens the executive branch's core law-enforcement role. *See Hollingsworth*, 570 U.S. at 715; *State v. Stephens*, 663 S.W.3d 45, 50 (Tex. Crim. App. 2021) (Texas "more aggressively enforce[s] separation of powers . . . than would the federal government."); *infra* Section III.C.

Contrary to Plaintiffs' assertion, nothing about Dr. Coeytaux's contention requires overruling *Vermont Agency*. *Contra* Opp. 21. While the FCA allows *qui tam* relators to seek civil penalties, those damages are still "compensatory" and "remedial" in nature because they are designed to fully compensate the government for the fraud committed against the

U.S. Treasury, including "hard to quantify" losses from "costs, delays, and inconvenience occasioned by fraudulent claims." *See U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 403–04 (4th Cir. 2013); *Cook Cnty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 130–32 (2003); *see also Vt. Agency*, 529 U.S. at 773 (FCA is "a partial assignment of the Government's *damages claim*." (emphasis added)). Conversely, as Plaintiffs concede, HB7's civil penalties cannot remedy any monetary injury to Texas—they are instead penal sanctions designed to redress Texas's sovereign injury by "punishing" violations of HB7. *See* MTD 19–20; Opp. 6, 22. Put simply, HB7 is a penal statute whereas the FCA's civil penalties are functionally liquidated damages designed to make the U.S. Treasury whole.

Plaintiffs' reliance on *Bunk* and *Stauffer* is misplaced. *Bunk* treated FCA penalties as "compensat[ing] the Government completely" for damage to the U.S. Treasury, not as establishing standing under a purely penal statute. *Bunk*, 741 F.3d at 403–04. *Stauffer* involved a partial assignment of the government's claim, *Stauffer*, 619 F.3d at 1327 n.3, and its standing holding divided federal courts before Congress amended that statute. *See Wham-O*, 2010 WL 3156162, at *5 (noting the split among federal courts). Finally, while historical "*qui tam*" statutes are "a meaningful guide," they are not dispositive, *Sprint*, 554 U.S. at 274, and their existence does not displace the serious separation-of-powers concerns raised by assigning a purely sovereign injury. *See Vt. Agency*, 529 U.S. at 778 n.8 (leaving the separation-of-powers questions open); *see also Novartis Pharm. Corp.*, 722 S.W.3d at 722 (collecting cases that raise separation-of-powers concerns with even the FCA).

Because HB7 does not compensate Texas for any injury to its property or treasury, and Article III does not allow an assignment of purely sovereign injuries, HB7 is an

improper *qui tam* statute that cannot confer standing on Ms. Rodriguez.

### C. Plaintiffs Lack Standing to Seek an Anti-Clawback Injunction.

Plaintiffs also lack standing to request an injunction barring Dr. Coeytaux from filing a California clawback claim. For standing, Plaintiffs must show the alleged future harm—Dr. Coeytaux's hypothetical clawback suit—is "certainly impending." *Clapper*, 568 U.S. at 409. Plaintiffs' allegations fall short—no clawback suit has been filed or threatened, and there is no allegation that one is planned. *See* MTD 20–21. Plaintiffs do not dispute these realities and instead argue that the threat posed by the mere *existence* of the clawback statute is sufficient to confer standing, and that they need not wait until a clawback claim is filed or threatened to seek injunctive relief. Opp. 23. Not so.

To start, Plaintiffs' argument relies on precedent involving pre-enforcement suits against the government that challenge allegedly unconstitutional laws. Opp. 23–25. There, "it is not necessary that [the challenger] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). That context is materially different. Governmental enforcement carries the weight of the state, and the potential for constitutional violations is afforded special weight. *See Mahmoud v. Taylor*, 606 U.S. 522, 559–60 (2025). Here, by contrast, Mr. Rodriguez sued Dr. Coeytaux, exposing himself to the possibility of a clawback suit, before HB7's anti-clawback provision was enacted.

Even if that context were applicable, Plaintiffs misstate the standard. *Cf.* Opp. 24. To obtain pre-enforcement injunctions against the government, the plaintiff must show "he (1) has an 'intention to engage in a course of conduct arguably affected with a constitutional

interest,' (2) his intended future conduct is 'arguably . . . proscribed by [the policy in question]' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'" *Umphress v. Hall*, 133 F.4th 455, 463 (5th Cir. 2025) (quoting *Babbitt*, 442 U.S. at 298). That is the import of the decisions cited by Plaintiffs. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 302 & n.13 (1979); *Doe v. Bolton*, 410 U.S. 179, 184–85, 188–89 (1973); *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. 174, 180, 183, 189, 193 (2026); *Ex parte Young*, 209 U.S. 123, 149, 155–57, 163 (1908); *Stenberg v. Carhart*, 530 U.S. 914, 921–22, 940, 945–46 (2000).

Plaintiffs satisfy none of the elements here. First, Plaintiffs seek only a state statutory remedy and identify no constitutional interest. Compl. ¶¶ 37–42; Opp. 39–40. Second, California's clawback statute does not proscribe *any* conduct—let alone Plaintiffs'—and is not subject to governmental enforcement. *See* Cal. Civ. Code § 1798.303. Third, there is no substantial threat of a clawback suit where no suit has even been threatened in the 16 months since Mr. Rodriguez initially sued Dr. Coeytaux. *See* MTD 3–4, 21. Unlike in the cases cited by Plaintiffs, the mere possibility of a private clawback suit under California law is insufficient to confer Article III standing. *See, e.g.*, *Paxton v. Dettelbach*, 105 F.4th 708, 712 (5th Cir. 2024) (no pre-enforcement standing where the challenged statutes "d[id] not prohibit" plaintiffs' anticipated conduct); *Joint Heirs Fellowship Church v. Akin*, 629 F. App'x 627, 631 (5th Cir. 2015) (no credible threat of enforcement where statute authorized private suits, because "[t]he possibility of private litigation does not constitute a credible threat of enforcement by the Commission," and rejecting argument that "the very existence of the statute" was itself a credible threat).

Nor must Dr. Coeytaux expressly "disavow[] any intention" of filing a clawback suit. Opp. 25. In *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), an express disavowal established that no credible threat existed. But the burden still remains on Plaintiffs to show a certainly impending action. *See, e.g.*, *A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023) (no credible threat where "the Attorney General hasn't taken any action to suggest he *might* enforce the provision"); *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022) (finding a "credible threat" from a "specific warning or threat to initiate proceedings").

## II. Plaintiffs Failed to State a Wrongful Death Claim.

### A. Plaintiffs Failed to Plead Causation.

**But-For Causation.** Mr. Rodriguez alleged no facts showing that, "without the act or omission, the harm would not have occurred." *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532 (Tex. 2025). Nothing in the Complaint alleges that if Dr. Coeytaux had not mailed pills, Mrs. Garza would not have had an abortion. Indeed, Plaintiffs allege that Mrs. Garza had a subsequent abortion that did not involve Dr. Coeytaux. Compl. ¶¶ 13–15.

Citing no authority, Mr. Rodriguez argues that he needs "only to allege that Coeytaux's wrongful acts caused the death of Mr. Rodriguez's unborn child at the particular time and in the precise manner that it occurred." Opp. 27. But that is refuted by *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109 (Tex. 2013) (per curiam), MTD 23, which Mr. Rodriguez ignored. There, a physician failed to involuntarily hospitalize a patient who subsequently died by suicide. *Id.* at 115. The Court framed the causation question not as whether hospitalization would have prevented suicide in the particular time and manner it occurred,

but whether hospitalization "would have made her death unlikely." *Id.* Despite testimony that she "would not have been able to shoot herself while hospitalized," the Court rejected liability because there was no "evidence that hospitalization probably would have prevented her from doing so after she was released." *Id.*

The authorities Mr. Rodriguez cites, Opp. 26–27, address inapposite situations involving multiple separate causes, each of which is independently sufficient to cause the harm. *See*, *e.g.*, *Bostic v. Ga.-Pac. Corp.*, 439 S.W.3d 332, 342–46 (Tex. 2014) (addressing cases of multiple exposures to asbestos); Restatement (Third) of Torts § 27 ("Multiple Sufficient Causes"). Here, Dr. Coeytaux's alleged mailing of pills alone was not sufficient to cause the abortion; Mrs. Garza had to ingest them.

**Substantial-Factor Causation.** Mr. Rodriguez also failed to plead facts showing Dr. Coeytaux is a substantial-factor cause of his harm. "The substantial-factor requirement incorporates 'the idea of responsibility' into the question of causation." *Werner Enters.*, 719 S.W.3d at 528 (citation omitted). "Liability does not fall on other participants in the causal chain whose actions merely 'created the condition which made the injury possible.'" *Id.* (citation omitted). Dr. Coeytaux's alleged mailing of pills merely created the condition for Mr. Garza's and Mrs. Garza's subsequent acts, which were the "active and efficient cause" of the abortion. *Id.* at 535. The "singular fact that substantially explains why" the abortion occurred is Mrs. Garza's decision to ingest abortion pills. *Id.* at 534; *see* MTD 23–24.

Mr. Rodriguez does not rebut any of this or address the substantial-factor-causation decisions that Dr. Coeytaux cited. Instead, Mr. Rodriguez argues that Mr. and Mrs. Garza's

acts "were the foreseeable results of Coeytaux's conduct." Opp. 28. But foreseeability does not equate to substantial-factor causation, which is a separate requirement, as Mr. Rodriguez concedes, Opp. 26. His citations are "legally distinguishable": they "focus[] on the foreseeability aspect of proximate cause, not on the requirement of substantial-factor causation," which is a "distinct" requirement. *Werner Enters.*, 719 S.W.3d at 537; *see Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 269 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (store's negligent storage of guns was not the substantial-factor cause of a murder using a stolen gun, so the "foreseeability" of the theft was "immaterial").

Because Dr. Coeytaux's alleged mailing of abortion pills was not the cause-in-fact of Mrs. Garza's abortion, the wrongful-death claim should be dismissed with prejudice.

**B. Plaintiffs Failed to Plead Wrongfulness.**

Plaintiffs allege no wrongful act that could give rise to liability under the Wrongful Death Act. "It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability"—whether the tort derives from statute or common law. *Perry v. S.N.*, 973 S.W.2d 301, 304 (Tex. 1998); *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 642 (5th Cir. 2024) (dismissing tort claim because "[b]efore proving that [] alleged violation of the cited federal regulations constituted a breach, [claimant] must show that there was something to breach, i.e., a duty"); *cf.* Opp. 32–33.

Plaintiffs' sole bases for a duty and a "wrongful" act resulting from breaching such duty are the "criminal statutes described in the complaint." Opp. 31. But these statutes do not establish a duty owed by Dr. Coeytaux to Mrs. Garza's fetus. "[T]he considerations which warrant imposing tort liability are not identical with those which warrant criminal

conviction." *Perry*, 973 S.W.2d at 304. Thus, it "is well-established that the mere fact that the Legislature adopts a criminal statute does not mean that this court must accept it as a standard for civil liability." *Id*. Plaintiffs do not even *attempt* to explain why any of the criminal laws should confer civil liability. Opp. 29–34. Nor could they. *See* MTD 24–31.[4]

Unable to point to any case law, Plaintiffs seize on the phrase "wrongful act" in the statute. Opp. 29–30, 33. But "wrongful act" merely refers to the requirement that the "death was caused by the tortious conduct of another." *Ortega Garcia v. United States*, 427 F. Supp. 3d 882, 904 (S.D. Tex. 2019), *aff'd*, 986 F.3d 513 (5th Cir. 2021). Where plaintiffs fail to "allege[] a cause of action for any underlying tortious conduct, they cannot maintain an action for wrongful death." *Id.* The phrase "wrongful act" does not excuse Plaintiffs from the requirement to plead a cognizable duty in tort. Nor does it grant private citizens the power to enforce criminal statutes through civil tort lawsuits. *Contra* Opp. 33–34.

Plaintiffs' arguments about particular criminal statutes fail for additional reasons. First, Plaintiffs ignore that the highest criminal court in Texas rejected the basis for their aiding-and-abetting argument. Opp. 31–32; *see State v. Hunter*, 624 S.W.3d 589, 589 (Tex. Crim. App. 2021) (Keller, P.J., concurring, joined by five other Judges) (because self-

---

[4] Instead, Plaintiffs argue that Dr. Coeytaux did not "den[y] that his alleged actions" violated some of the cited statutes. Opp. 31. But at the motion to dismiss stage, Dr. Coeytaux need not deny *any* allegations. Rather, the onus is on *Plaintiffs* to plead sufficient facts to state a plausible claim—which they do not. For example, as to the homicide statutes, Plaintiffs pleaded no *facts* establishing elements like intent or causation. Compl. ¶¶ 27–28 (merely quoting Tex. Penal Code § 19.02(b)); *cf. supra* Section II.A. Nor do they explain why the alleged failure to comply with Texas's abortion protocol, an *omission*, would qualify as an "*act* clearly dangerous to human life" for felony murder. *See Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014), *on reh'g* (Feb. 25, 2015).

managed abortion "is not a crime under Texas law," a person "cannot be guilty of the offense of solicitation"). To be guilty of aiding an offense, there must be "an offense committed by the conduct of another," Tex. Penal Code § 7.02; *see id.* § 7.03 (requiring "proof of commission of the offense"), but Mrs. Garza's alleged abortion is not an offense. *See State v. Hunter*, 606 S.W.3d 836, 842–45 & n.6 (Tex. App.—Austin 2020, pet. ref'd) (rejecting arguments based on language identical to § 7.03).

Second, as to the pre-*Roe* ban, Plaintiffs rely on the legislative findings and statutory-construction provision in SB8, which was enacted in 2021. Opp. 32. But those "are insufficient to revive a law that has been repealed, and even assuming that resuscitation were possible, the Texas Legislature has not chosen to reenact the pre-*Roe* laws." *Fund Tex. Choice v. Paxton*, 658 F. Supp. 3d 377, 412–13 (W.D. Tex. 2023); *see Nat'l Carloading Corp. v. Phoenix-El Paso Exp.*, 176 S.W.2d 564, 570 (Tex. 1943); Tex. Const. art. 3, § 36. Third, Plaintiffs' arguments about private enforcement of the federal Comstock Act, Opp. 34, ignore the threshold question whether it can support tort liability under Texas law. Texas courts refuse to create tort duties based on federal criminal laws that do not contain a private right of action because doing so contravenes Congress's intent. *See Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1004–05 (E.D. Tex. 2024); MTD 30. This Court should follow suit.

Plaintiffs pleaded no wrongful act, and their wrongful-death claim should be dismissed with prejudice.

## III. Ms. Rodriguez Failed to State an HB7 "*Qui Tam*" Claim.

### A. Ms. Rodriguez Is Acting in "Concert or Participation" with Her Father.

Ms. Rodriguez is a prohibited plaintiff under HB7. She does not dispute that Mr. Rodriguez is a prohibited plaintiff for purposes of HB7. Opp. 34–35 & n.28. Nor does she dispute that the sole reason she is serving "as a qui tam relator" in this suit is to "allow the HB 7 claim to proceed regardless of whether" Mr. Rodriguez is "ineligible to serve as a qui tam relator." *See* MTD 32 (citing *Rodriguez I*, ECF No. 45, at 1).[5] Thus, Ms. Rodriguez is acting "in concert or participation" with Mr. Rodriguez—*not* because she is his daughter, Opp. 34–35, but because she is helping him engage in "procedural gamesmanship" to avoid filing restrictions, which other courts have found constitutes acting "in concert or participation." *See Lundahl v. Glob. E. LLC*, 643 F. App'x 752, 753 (10th Cir. 2016); *In re Pub. Serv. Co. of N.H.*, 848 F. Supp. 318, 327–28 (D.R.I. 1994) (third party "acted in concert" when he "agreed to serve as [the prohibited party's] alter ego by allowing the suit to be brought in his name"), *aff'd on other grounds*, 43 F.3d 763 (1st Cir. 1995).

**B. Ms. Rodriguez's HB7 Allegations Are Vague and Conclusory.**

Ms. Rodriguez fails to address Dr. Coeytaux's argument that her HB7 allegations are too vague and conclusory to put him on notice and prepare a defense. MTD 32–33; *cf.* Opp. 35–36. Nor does she explain how her allegations that "[Dr.] Coeytaux has mailed abortion pills into Texas many times since HB 7 took effect," that she "is aware of at least two such occasions," and that Dr. Coeytaux "intends to continue mailing abortion-inducing

---

[5] This Court may take judicial notice of filings in *Rodriguez I*. *See Canada v. United States*, 950 F.3d 299, 313 n.16 (5th Cir. 2020). And Plaintiffs cannot invoke "factual disputes" to defer resolution while seeking a preliminary injunction and Rule 54(b) judgment on their anti-clawback claim, which depend on their ability to sue under HB7. Either the issue is ripe for resolution and bars their HB7 claims, or it is not and their requests for relief fail.

drugs into Texas," Compl. ¶ 34, are anything more than impermissible "unadorned [] accusation[s] . . . devoid of 'further factual' support." *Bryant v. Envoy Air, Inc.*, 2021 WL 3704731, at *2 (N.D. Tex. Jan. 28, 2021) (quoting *Iqbal*, 556 U.S. at 678); *see Norsworthy v. Houston Indep. School Dist.*, 70 F.4th 332, 336–37 (5th Cir. 2023) (affirming dismissal where plaintiff "offer[ed] no specifics" to support claims).[6] Rather, Ms. Rodriguez merely points to Plaintiffs' arguments on Article III standing, Opp. 35–36, which fail for the reasons in Section I.B. Thus, the HB7 claim must be dismissed.

**C. HB7 Violates the Texas Constitution.**

HB7's *qui tam* provision violates the Texas Constitution by impermissibly delegating the authority to bring suits on behalf of the State to private citizens. MTD 33–36. Ms. Rodriguez fails to engage at all with the Texas Constitution's separation-of-powers provisions, which give state officials exclusive authority to enforce and litigate the State's rights, or well-established precedent interpreting those provisions. *See* Opp. 36–37. Rather, her arguments focus on Texas's standing requirements and are irrelevant.

None of Plaintiffs' cited cases involve *qui tam* claims or the State's attempt to assign *its own* claim. Rather, each statute merely relaxed the "particularized injury" requirement for standing in state court. *See Spence v. Fenchler*, 180 S.W. 597, 609 (Tex. 1915); *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56–57 (Tex. 1966); *Grossman v. Wolfe*, 578 S.W.3d 250, 256–57 (Tex. App.—Austin 2019, pet. denied). Nor is the "Save Chick-fil-A law" relevant,

---

[6] Ms. Rodriguez claims that the "complaint attaches evidence showing that Coeytaux is mailing abortion pills into Texas." Opp. 36. But "evidence" of an alleged purchase of abortion pills over a year before HB7 even took effect, Compl. Ex. A, does not support relief under HB7. *See supra* Section I.B.; MTD 11–15, 32–33.

as it does not create a cause of action for private plaintiffs to sue *on behalf of* the State. *See* Tex. Gov't Code § 2400.004. Finally, the Texas Medicaid Fraud Prevention Act is distinguishable because it partially assigns the State's proprietary injury. Tex. Hum. Res. Code §§ 36.101–.102, .104, .109–.110; *cf. supra* Section I.B.; MTD 15–20.[7]

**D. HB7 Violates the Dormant Commerce Clause.**

The plain text of HB7—and Ms. Rodriguez's arguments—make clear that HB7 facially discriminates against out-of-state physicians by subjecting them to a more punitive legal environment than in-state physicians engaged in the same conduct. MTD 36–38. This is exactly what the dormant Commerce Clause prohibits. *See Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 891–94 (1988); *Dickerson v. Bailey*, 336 F.3d 388, 398 (5th Cir. 2003). Nor does the equal treatment of in-state and out-of-state physicians in *other* provisions save HB7. Opp. 37–39; *see Bendix*, 486 U.S. at 891–94 (tolling provisions for fraud claims discriminatory though all were prohibited from committing fraud).

Ms. Rodriguez's sole justification for the discrimination against out-of-state physicians is that the State can more "easily" enforce its abortion and licensing laws against Texas-licensed individuals. Opp. 37–38. But this rationale cannot overcome the heavy presumption of unconstitutionality and is contradicted by the plain text of the statute: HB7 still discriminates against Texas-licensed physicians located outside of Texas, Tex. Health & Safety Code § 171A.001(8), .101(d)(8). Furthermore, courts have rejected the argument that discrimination is permissible merely because out-of-state defendants are harder or

[7] *Cf. Novartis Pharm.*, 722 S.W.3d at 722 (recognizing the TMFPA still raises constitutional doubts about *qui tam* litigation).

more expensive to sue. *See, e.g.*, *Bendix*, 486 U.S. at 893–94; *John Havlir & Assocs. Inc. v. Tacoa, Inc.*, 810 F. Supp. 752, 758–59 (N.D. Tex. 1993); *Rosenfeld v. Lu*, 766 F. Supp. 1131, 1140 (S.D. Fla. 1991). Regardless, Ms. Rodriguez concedes that a non-discriminatory alternative—HB7 without the Texas carveout—is possible. Opp. 38–39.[8] Accordingly, Ms. Rodriguez's HB7 claim must be dismissed.

## IV. Plaintiffs Failed to State an Anti-Clawback Injunction Claim.

Plaintiffs argue that mere incantation of HB7 is sufficient to entitle them to an anti-clawback injunction. Opp. 39–40. Not so. Plaintiffs are statutorily barred from bringing HB7 claims and, thus, have no right to invoke HB7's anti-clawback-injunction provision. PI Opp. 7–10, 19–22; Rule 54(b) Opp. 14–15 & n.3. Regardless, Plaintiffs are not entitled to an anti-clawback injunction under either HB7 or the All Writs Act, and their requested injunction falls outside federal equitable jurisdiction. *See* Rule 54(b) Opp. 10, 12–19; MTD 38–39; *see generally* PI Opp. Accordingly, Plaintiffs' anti-clawback-injunction claim should be dismissed with prejudice.

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

Dated: November 20, 2026 Respectfully submitted,

---

[8] Nor can the exception be severed, *contra* Opp. 38–39, as that would contravene legislative intent. *City Nat'l Bank of Austin v. Falkner*, 428 S.W.2d 429, 432 (Tex. App.—Austin 1968), *writ ref'd n.r.e.*, 432 S.W.2d 689 (Tex. 1968). Exempting Texas hospitals and physicians was an important part of the legislative compromise. MTD 6 & n.2; *see* Tex. House of Reps., *89th Legislative Session - Second Called Session Chamber Broadcast*, at 6:05:13–:44, 6:07:20–:30 (Aug. 28, 2025), https://house.texas.gov/videos/22544 (HB7 is a "carefully and meticulously crafted" bill resulting from "extensive work and collaboration" with "stakeholders" like "the Texas Medical Association and the Texas Hospital Association") (statement of sponsor Rep. Leach).

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com
Leah Schultz
Texas State Bar No. 24126910
S.D. Tex. Bar No. 3737066
Leah.Schultz@arnoldporter.com
811 Main Street, Suite 1800
Houston, TX 77002-2755
(713) 576-2400 (phone)
(713) 576-2499 (fax)

Marc Hearron
HEARRON PLLC
Texas State Bar No. 24050739
(*admitted pro hac vice*)
marc@hearronlaw.com
100 Crescent Court
Suite 700, PMB 17265624
Dallas, Texas 75201
(214) 278-6815 (phone)

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
District of Columbia State Bar No. 1002396
(*admitted pro hac vice*)
jhudson@reprorights.org
1600 K St. NW
Washington, DC 20002
(202) 628-0286 (phone)

**COUNSEL FOR DEFENDANT REMY COEYTAUX**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2026, the foregoing document was electronically filed with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the court.

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com