UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

**Jerry Rodriguez** and **Isabella Irene Rodriguez**,

Plaintiffs,

v.

**Remy Coeytaux**,

Defendant.

Case No. 3:26-cv-207

# REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS


Table of contents ..... i

Table of authorities ..... ii

I. The plaintiffs are entitled to a preliminary injunction under the traditional four-part test for injunctive relief ..... 1

A. The plaintiffs have made a clear showing of likely success on their antisuit-injunction claim ..... 2

B. The plaintiffs have made a clear showing that they will suffer irreparable harm absent a preliminary injunction ..... 5

C. The plaintiffs have made a clear showing that the balance of equities tips in their favor ..... 13

D. The plaintiffs have made a clear showing that a preliminary injunction is in the public interest ..... 18

II. If the Court concludes that the plaintiffs have failed to satisfy the four-part test for preliminary injunctive relief, it should still issue a preliminary injunction in accordance with the command of section 171A.151(c) ..... 19

A. Section 171A.151(c) does not conflict with any provision of supreme federal law ..... 21

B. Section 171A.151(c)'s mandatory preliminary-injunction regime is a substantive rule of decision under 28 U.S.C. § 1652 ..... 25

Conclusion ..... 29

Certificate of word count ..... 30

Certificate of service ..... 31

## TABLE OF AUTHORITIES

### Cases

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ................................ 16, 17

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ............................................ 2

*Berk v. Choy*, 607 U.S. 187 (2026) ................................................ 20, 21, 24

*Berman v. Parker*, 348 U.S. 26 (1954) ......................................................... 18

*Burlington Northern Railroad Co. v. Woods,* 480 U.S. 1 (1987) ...................... 23

*Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525 (1958) .............................................................. 27, 28

*Capital Tool & Manufacturing Co., Inc. v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988) ................................................ 21

*Coaction Specialty Mgmt. Co., Inc. v. eMaxx Ins. Services, LLC*, 2025 WL 371847 (S.D.N.Y. Dec. 23, 2025) ............................................ 21

*D.F. Pray, Inc. v. National Fire Insurance Co. of Hartford*, 2026 WL 523895 (D. Mass. Feb. 25, 2026) ....................................................... 7

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) ........................................................................... 19

*Ex parte Young*, 209 U.S. 123 (1908) .......................................................... 1

*Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289 (2022) ........................................................................ 6, 8

*First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. 174 (2026) ........................................................................... 5

*Flood v. ClearOne Communications, Inc.*, 618 F.3d 1110 (10th Cir. 2010) .............................................................. 21

*FTC v. Standard Oil Co.*, 449 U.S. 232 (1980) ............................................. 7

*Glossip v. Gross*, 576 U.S. 863 (2015) ......................................................... 6

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ........................................................................... 22

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945) ......................... 25

*Hanna v. Plumer*, 380 U.S. 460 (1965) ................................................. 26, 27

*Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329 (5th Cir. 2013) ..................... 21

*Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*,
313 U.S. 487 (1941) .......... 18

*Perez v. City of San Antonio*, 163 F.4th 110 (5th Cir. 2025) .......... 21

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) .......... 28

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) .......... 11

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......... 16, 17

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) .......... 7

*Tinker v. Des Moines Independent Community School District*,
393 U.S. 503 (1969) .......... 6

*TransPerfect Translations, Inc. v. Leslie*,
594 F. Supp. 2d 742 (S.D. Tex. 2009) .......... 21

*Trump v. CASA, Inc.*, 606 U.S. 831 2025) .......... 22

*Umphress v. Hall*, 133 F.4th 455 (5th Cir. 2025) .......... 17

*Walker v. Armco Steel Corp.*, 446 U.S. 740 n.9 (1980) .......... 25

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) .......... 1

**Statutes**

28 U.S.C. § 1652 .......... 20, 21, 25

28 U.S.C. § 2072(b) .......... 24

Cal. Civil Code § 1798.300(a)(2) .......... 16

Cal. Civil Code § 1798.305 .......... 7, 12

Tex. Health & Safety Code § 171A.101(a) .......... 2

Tex. Health & Safety Code § 171A.151(a)(2) .......... 3, 4

Tex. Health & Safety Code § 171A.151(c) .......... passim

Tex. Health & Safety Code § 171A.151(c)(2) .......... 11

Tex. Health & Safety Code § 171A.151(f) .......... 8

**Rules**

Fed. R. Civ. P. 65 .......... 20

Fed. R. Civ. P. 65(a)(1) .......... 24

**Other Authorities**

John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989 (2008) .......................... 1

Herbert Wechsler, *Toward Neutral Principles of Constitutional Law*, 73 Harv. L. Rev. 1 (1959) ................................................................ 19

The Court need not resolve the motion for preliminary injunction if it grants the plaintiffs' motion for entry of partial final judgment under Rule 54(b). But if the Court denies or postpones ruling on the Rule 54(b) motion, then the plaintiffs respectfully ask the Court to preliminarily enjoin Coeytaux from suing them or their attorneys for treble damages under California's clawback law. A court of law cannot tolerate a regime that imposes ruinous civil liability on litigants and attorneys for bringing meritorious claims against lawbreakers. Nor can it accept Coeytaux's insistence that the plaintiffs and their lawyer expose themselves to catastrophic civil liability as the price for presenting their claims in federal court.[1]

## I. The Plaintiffs Are Entitled To A Preliminary Injunction Under The Traditional Four-Part Test For Injunctive Relief

Coeytaux denies that section 171A.151(c)'s mandatory preliminary-injunction regime can displace the four-part test of *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), which requires a movant to show: (1) likely success on the merits; (2) irreparable harm absent a preliminary injunction; (3) that the balance of equities favors preliminary injunctive relief; and (4) that the public interest supports a preliminary injunction. *Id.* at 20. But the plaintiffs' lead argument is that they satisfy the traditional four-part test for preliminary relief regardless of the answer to this

1. There is nothing "extraordinary" about issuing an antisuit injunction. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 7 (describing the antisuit injunction as "one of the most extraordinary remedies available in law"). It is a commonplace remedy that federal courts freely issue when litigants sue to enjoin the enforcement of an allegedly unconstitutional or otherwise invalid statute. *See Ex parte Young*, 209 U.S. 123, 163 (1908) (recognizing "the right to enjoin an individual, even though a state official, from commencing suits"); John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 989 (2008) ("[*Ex parte*] *Young* was about a traditional tool of equity, the injunction to restrain proceedings at law, or antisuit injunction.").

*Erie* question. *See* Mot. for Prelim. Inj., ECF No. 5, at 2–10. Nothing in Coeytaux's brief undermines the plaintiffs' entitlement to a preliminary injunction under the four-part test of *Winter*.

### A. The Plaintiffs Have Made A Clear Showing Of Likely Success On Their Antisuit-Injunction Claim

In the Fifth Circuit, a litigant who seeks a preliminary injunction must make a "clear showing" of likely success on the merits, including a "clear showing" of Article III standing. *See Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). Coeytaux denies that Ms. Rodriguez has Article III standing to bring her qui tam claim, and he argues that Ms. Rodriguez has failed to state a claim under HB 7's qui tam provision. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 12. But that has no bearing on the plaintiffs' likelihood of success on their separate claim for an anti-clawback injunction. *Compare* Tex. Health & Safety Code § 171A.101(a) (authorizing qui tam lawsuits against those who violate or intend to violate section 171A.051 of the Texas Health and Safety Code), *with* Tex. Health & Safety Code § 171A.151(c) (allowing litigants to request anti-clawback injunctions without regard to whether their qui tam claim succeeds). The plaintiffs are not asking this Court to preliminarily enjoin Coeytaux from violating HB 7's prohibitions on sending abortion pills into Texas, so they do not need to show Article III standing (or likely success on the merits) with respect to Ms. Rodriguez's qui tam claim to obtain the requested injunction. The plaintiffs need only to show that they will likely succeed on their antisuit-injunction claim—a claim that is separate and distinct from the qui tam action that Ms. Rodriguez brought under section 171A.101(a).

Coeytaux thinks that the plaintiffs cannot obtain an antisuit injunction under section 171A.151(c) unless either Mr. or Ms. Rodrgiuez can bring an HB 7 qui tam

claim against Coeytaux. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 7–8 ("[N]either Mr. Rodriguez nor his daughter can bring an HB7 claim and, therefore, they have no basis to seek an HB7 anti-suit injunction. An automatic injunction is unavailable to a plaintiff who has no right to invoke the statute in the first place."). That is false for the reasons explained in the reply brief in support of the plaintiffs' Rule 54(b) motion. *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 38, at 4–7. The plaintiffs need only to "allege[] a violation of Section 171A.051" in this "action"[2] to trigger the protections of section 171A.051(c); they do not even need to assert (let alone prevail on) a qui tam claim under HB 7 so long as they allege somewhere in the complaint that Coeytaux has violated Section 171A.051. There is no dispute that this is "an action" that "alleges a violation of Section 171A.051,"[3] and Coeytaux does not argue to the contrary. The plaintiffs are therefore entitled to an anti-clawback injunction "on request." Tex. Health & Safety Code § 171A.051(c).

Coeytaux falsely claims that "an HB7 anti-clawback injunction may only issue if the plaintiff is 'bringing or engaging in an action authorized by this chapter'" Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 7–8 (quoting Tex. Health & Safety Code § 171A.151(a)(1)); *see also id.* at 1 ("[B]ecause Plaintiffs are barred from being 'qui tam' plaintiffs, they cannot invoke HB7's anti-suit injunction provision."). But

2. Tex. Health & Safety Code § 171A.151(a)(2); *see also* Tex. Health & Safety Code § 171A.151(c) ("Notwithstanding any other law, in an action described by [section 171A.151(a)(2)], the court shall, on request, issue [an anti-clawback injunction]."). 
3. Tex. Health & Safety Code § 171A.151(a)(2); Complaint, ECF No. 1, at ¶ 34 ("Coeytaux has mailed abortion pills into Texas many times since HB 7 took effect on December 4, 2025"); *id.* ("Ms. Rodriguez is aware of at least two such occasions in which Coeytaux has mailed abortion pills into Texas in violation of HB 7.").

Coeytaux entirely ignores section 171A.151(a)(2) and its incorporation into section 171A.151(c). *See* Tex. Health & Safety Code § 171A.151(c) ("Notwithstanding any other law, in an action described by Subsection (a)(1) **or (2)**, the court shall, on request, issue [an anti-clawback injunction]." (emphasis added)); Tex. Health & Safety Code § 171A.151(a)(2) (describing "an action that alleges a violation of Section 171A.051"). Coeytaux pretends as though only the actions described in section 171A.151(a)(1) trigger the protections of 171A.151(c), but that is not what the statute says. So it does not matter whether Mr. Rodriguez is "'bringing or engaging' in an HB7 claim," and it does not matter whether Ms. Rodriguez is "'act[ing] in concert or participation' with her father." Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 8.[4] All that matters is whether this "action" "alleges a violation of Section 171A.051." Tex. Health & Safety Code § 171A.151(a)(2). And it indisputably does. *See* note 3, *supra*.

The reply brief in support of the plaintiffs' Rule 54(b) motion shows that the plaintiffs have Article III standing to seek an antisuit injunction,[5] and that the plaintiffs are likely to prevail on their request for a permanent anti-clawback injunction.[6] The plaintiffs have therefore made a clear showing of likely success on the merits of their antisuit-injunction claim.

4. She isn't, for the reasons provided in the response to the motion to dismiss. *See* Pls.' Opp. to MTD, ECF No. 26, at 34–35
5. *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 38, at 8–12.
6. *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 38, at 12–25.

### B. The Plaintiffs Have Made A Clear Showing That They Will Suffer Irreparable Harm Absent A Preliminary Injunction

Coeytaux denies that the plaintiffs have shown irreparable harm because he claims that it is "purely speculative" that he would ever sue the plaintiffs under California's shield law. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 13. But the "irreparable harm" that the plaintiffs assert is not the actual filing of a clawback lawsuit. It is the *threat* of civil liability imposed by California's clawback statute, which makes it impossible for the plaintiffs to litigate their claims against Coeytaux without increasing their exposure to clawback liability—and which creates a conflict of interest for any lawyer who represents the plaintiffs because successful advocacy on the plaintiffs' behalf will increase the attorney's liability to Coeytaux under the clawback regime. These harms exist regardless of whether Coeytaux eventually decides to sue the plaintiffs or their lawyer under California's clawback statute, because they are preventing the plaintiffs and their lawyer from retaining additional counsel and threatening them with financial ruin if they continue litigating or prevail on any of the plaintiffs' claims. *See First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. 174, 192 (2026) ("[T]he value of a sword of Damocles is that it hangs—not that it drops." (citation omitted)); Mitchell Decl. ¶ 4 ("I have been unable to recruit or persuade co-counsel to represent the plaintiffs alongside me in this litigation.") (attached as Exhibit 1). And these harms will continue to exist until Coeytaux makes a legally binding commitment to never bring clawback lawsuits against the plaintiffs or any of their attorneys. Coeytaux cannot conceal his intentions and then deny irreparable harm from the *in terrorem* effects of the clawback regime.

Coeytaux's next move is to claim that the plaintiffs' harms are "self-inflicted" because they chose to sue Coeytaux after California had enacted its law authorizing

clawback lawsuits. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 14–15. But as we explained in the reply brief in support of the Rule 54(b) motion, the harm arises from compelling the plaintiffs to choose between abandoning their claims against Coeytaux and exposing themselves to clawback liability. *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 38, at 20–22. That the plaintiffs chose to sue Coeytaux rather than be cowed by the threat of clawback liability does not mean that the harms imposed by California's shield law are "self-inflicted." A doctor who sues to enjoin the enforcement of an abortion ban is not suffering from "self-inflicted" harm because he chose to offer abortion services rather than fix broken legs, or because he chose to continue performing abortions in the teeth of the law and expose himself to potential criminal sanctions. When a law imposes consequences for engaging in a chosen course of behavior, the harms imposed by that law do not become "self-inflicted" simply because a litigant chose to engage in the conduct that the law seeks to deter. *See Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289, 297 (2022) ("[T]he appellees' injuries are directly inflicted by the FEC's threatened enforcement of the provisions they now challenge. That appellees chose to subject themselves to those provisions does not change the fact that they *are* subject to them, and will face genuine legal penalties if they do not comply."); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) (allowing plaintiffs to seek injunctive relief after they willingly violated school policy prohibiting the wearing of black armbands to protest the Vietnam War and were suspended from school as a result). A convicted murderer who seeks to enjoin the execution of a death sentence does not forfeit his right to seek injunctive relief because he chose to commit a capital crime. *See Glossip v. Gross*, 576 U.S. 863, 867 (2015).

The plaintiffs are also seeking to enjoin the accumulation of additional clawback liability that has not yet accrued. Their initial decision to sue Coeytaux for his role in the killing of Mr. Rodriguez's unborn child exposed the plaintiffs to only a small amount of clawback liability. And because this litigation is still in an early stage, Coeytaux's damages (at this point) consist only of the expenses, costs, and reasonable attorneys' fees incurred in the litigation thus far. *See* Cal. Civil Code § 1798.305. Yet the plaintiffs' and their attorney's liability will significantly increase each time they take any step in this litigation that causes Coeytaux to incur additional attorneys' fees, and their liability will increase even more if either of the plaintiffs obtains a favorable judgment against Coeytaux. The plaintiffs want this Court to enjoin Coeytaux before the plaintiffs take any additional steps in this litigation that will incur additional clawback liability under California's shield law. Those actions have not yet been taken, so they cannot be characterized as "self-inflicted" harms. Here, too, the harm comes from the fact that California's law puts the plaintiffs to the choice of abandoning their claims against Coeytaux or exposing themselves (and anyone else who "engages" in this litigation) to ruinous civil liability under the clawback statute. The only way that these harms can be "self-inflicted" is if the plaintiffs participated in the enactment of California's shield law, which they did not do.[7]

---

7. *Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021), is inapposite because the "self-inflicted" harm in that case arose entirely from the Biden Administration's decision to unwind the Migrant Protection Protocols before the courts ruled on the legality of its decision to terminate the program. *See id.* at 558. *D.F. Pray, Inc. v. National Fire Insurance Co. of Hartford*, 2026 WL 523895 (D. Mass. Feb. 25, 2026), holds only that a litigant's *own* litigation costs fail to qualify as irreparable harm. *See id.* at *4 ("Incurring defense costs is not, on its own, sufficient to establish irreparable harm."); *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) ("[M]ere litigation expense, even substantial and unrecoupable cost, does

Finally, the Supreme Court repudiated the self-inflicted injury doctrine, at least with respect to the Article III standing inquiry, in *Ted Cruz for Senate*:

> [T]he Government asks us to recognize an exception to traceability for injuries that a party purposely incurs. We have never recognized a rule of this kind under Article III. To the contrary, we have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred.

*Ted Cruz for Senate*, 596 U.S. at 296–97. *Ted Cruz for Senate* did not address the meaning of "irreparable harm" or the preliminary-injunction inquiry, but it is hard to see why the threat of legal sanctions incurred by a litigant's voluntary conduct should be treated any differently when assessing irreparable harm. If a person's choice to expose themselves to civil or criminal liability is not disqualifying when determining Article III standing, then it shouldn't be disqualifying when a litigant seeks a preliminary injunction either.

Coeytaux also denies that the plaintiffs' harms are irreparable because he claims that they can be fully remedied under HB 7's clawback provision, which authorizes the plaintiffs to countersue Coeytaux for treble damages if Coeytaux ever files a clawback lawsuit against them. *See* Tex. Health & Safety Code § 171A.151(f). That is wrong for the reasons provided in the reply brief supporting the Rule 54(b) motion.

---

not constitute irreparable injury" (citation and internal quotation marks omitted)). Neither *Pray* nor *Standard Oil* holds or even suggests that a clawback statute that compels litigants to pay three times the other side's legal expenses, plus three times the amount of whatever favorable judgment they obtain in the litigation, fails to inflict "irreparable harm."

*See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 40, at 18, 20–21. The possibility of clawback lawsuits under section 171A.151(f) is not an "adequate remedy at law" because:

1. There is no guarantee that courts will enforce the clawback regime in section 171A.151(f), especially if Coeytaux files his own clawback lawsuit in a venue unfavorable to the plaintiffs or in a forum whose choice-of-law rules require the application of California rather than Texas law. No court (to our knowledge) has ever ruled on the permissibility or enforceability of clawback measures such as those that appear in section 1798.303 of the California Civil Code and section 171A.151(f) of the Texas Health and Safety Code.

2. Coeytaux could seek and obtain an antisuit injunction that restrains the plaintiffs from countersuing him under section 171A.151(f) when he brings his clawback lawsuit under California's shield law, in the same way that the plaintiffs are pursuing an antisuit injunction against Coeytaux at the outset of this litigation.

3. The plaintiffs are facing irreparable harm despite the existence of section 171A.151(f) because neither they nor their lawyer can vigorously pursue their claims in this litigation without increasing their exposure to liability and treble damages under California's shield law, and the threat imposed by California's shield law will deter vigorous advocacy regardless of whether the plaintiffs successfully sue Coeytaux under section 171A.151(f). And no amount of money awarded under section 171A.151(f) will compensate or undo that harm, as section 171A.151(f) is designed only to remedy injuries caused by the act of bringing a clawback lawsuit, not to compensate litigants for their inability or unwillingness to vigorously pursue claims in previous lawsuits because the shield laws deterred them from doing so.

4. The plaintiffs cannot use section 171A.151(f) to remedy any of the harms imposed by California's shield law unless Coeytaux decides to file a clawback action under section 1798.303 of the California Civil Code, and Coeytaux refuses to say whether will do this. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 1 (describing

> the possibility of Coeytaux's filing a clawback lawsuit against the plaintiffs as a "purely hypothetical litigation risk.").

For all these reasons, section 171A.151(f) does not provide an "adequate remedy" for the harms that California's clawback statute is inflicting on the plaintiffs in this ongoing litigation.

Coeytaux's last argument is that the plaintiffs' harms should not be deemed "irreparable" because the plaintiffs "unduly delayed" their request for a preliminary injunction. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 16. But the plaintiffs filed their motion for preliminary injunction on July 5, 2026—only five days after filing their complaint on June 30, 2026. And Ms. Rodriguez was not a party to the previous lawsuit against Coeytaux and could not have sought a preliminary injunction in the previous lawsuit when she had no claims pending against Coeytaux.

Coeytaux also criticizes Mr. Rodriguez for waiting until "a year after filing that first action"[8] to seek preliminary-injunctive relief, but HB 7 did not take effect until December 4, 2025, and there was no emergency that warranted an immediate demand for a preliminary injunction after HB 7 took effect on December 4, 2025. The parties had agreed to stay Coeytaux's deadline to answer the complaint in the previous lawsuit until 30 days after Mr. Rodriguez amended his pleading. *See Rodriguez v. Coeytaux*, Case No. 3:25-cv-00225 (S.D. Tex. July 20, 2025), ECF Nos. 13–14. So there was no possibility that Coeytaux would incur additional expenses, costs, or attorney's fees in connection with this lawsuit while Mr. Rodriguez prepared his amended complaint and motion for preliminary injunction in the previous action. Mr. Rodriguez's clawback liability at this point was minimal, as Coeytaux's attorneys

8. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 16.

had not filed any documents with the Court apart from their pro hac vice applications, and no court hearings had been held before Mr. Rodriguez amended his complaint on February 1, 2026. And this liability would not have increased between the issuance of the stay on September 30, 2025, and the filing of the amended complaint and motion for preliminary injunction on February 1–2, 2026.

More importantly, even if Coeytaux had sued Mr. Rodriguez or his lawyer under California's clawback statute before Mr. Rodriguez had amended his pleading in the previous action, that would have done nothing to hinder the plaintiffs from seeking or obtaining an antisuit injunction under section 171A.151(c), which requires courts to enjoin Coeytaux not only from initiating new clawback litigation against the plaintiffs, also from "continuing to litigate an action under any clawback provision that has been brought against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor." Tex. Health & Safety Code § 171A.151(c)(2). Nor would be there be any possibility of *Younger* abstention, as Coeytaux's clawback lawsuit against Mr. Rodriguez would not fit within the categories of "state criminal prosecutions," "civil enforcement proceedings," or "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citation and internal quotation marks omitted). So there was no need for Mr. Rodriguez to beat Coeytaux to the courtroom door by obtaining his antisuit injunction before the commencement of a clawback lawsuit, and no need to rush the filing of his amended complaint or motion for preliminary injunction.

Finally, the harm that the plaintiffs are seeking to enjoin includes the incremental clawback liability that California's clawback statute imposes each time that the plaintiffs or their attorney does something that causes Coeytaux to incur additional "expenses, costs, or reasonable attorney's fees" in connection with this litigation. *See* Cal. Civil Code § 1798.305. This imposes a chilling effect that deters the plaintiffs and their attorney from vigorously asserting and litigating their claims before this Court. But there was no imminent need for Mr. Rodriguez to seek injunctive relief against these harms until after he amended his complaint in the previous action on February 1, 2026. Because this Court had stayed Coeytaux's deadline to answer the complaint until 30 days after filing of the amended pleading,[9] Coeytaux would not have incurred additional "expenses, costs, or reasonable attorney's fees" until after Mr. Rodriguez filed his amended complaint. And Mr. Rodriguez *did* move for preliminary injunctive immediately after filing the amended pleading on February 1, 2026,[10] when Coeytaux would have to begin preparing an answer or motion to dismiss and the threat of additional clawback liability became imminent.

Coeytaux thinks that Mr. Rodriguez should have filed the amended complaint in the previous action sooner, but there was no need to rush the filing of the amended complaint given the stay that the parties had agreed to. If Coeytaux had been racking up attorney's fees and increasing Mr. Rodriguez's exposure to liability while Mr. Rodriguez was preparing his amended complaint, then Coeytaux might have a plausible

---

9. *See Rodriguez v. Coeytaux*, Case No. 3:25-cv-00225 (S.D. Tex. July 20, 2025), ECF No. 14.
10. *See Rodriguez v. Coeytaux*, Case No. 3:25-cv-00225 (S.D. Tex. July 20, 2025), ECF No. 17.

argument for undue delay with respect to Mr. Rodriguez (although not Ms. Rodriguez). But Mr. Rodriguez was not facing any risk of additional clawback liability at that time given the stay issued by this Court, so he cannot be faulted for filing the amended complaint when he did in the previous action. The harms from California's clawback law remain imminent and irreparable because the plaintiffs and their lawyer cannot effectively litigate their case without exposing themselves to ruinous liability, and their liability will increase every time they do something that causes Coeytaux to incur additional expenses, costs, or attorney's fees in this litigation. It is untenable for Coeytaux to insist that the plaintiffs litigate their claims under those threats.[11]

### C. The Plaintiffs Have Made A Clear Showing That The Balance Of Equities Tips In Their Favor

The plaintiffs denied that a preliminary injunction will harm Coeytaux because section 171A.151(c) requires this Court to enter a permanent injunction "on request," so withholding a preliminary injunction at the outset of this litigation accomplishes nothing for Coeyatux apart from postponing the antisuit injunction that will inevitably issue. *See* Mot. for Prelim. Inj., ECF No. 5, at 7–8.

Coeytaux complains that this "assumes the merits of claims that Dr. Coeytaux seeks to dismiss." *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 17. But the plaintiffs do not need to succeed on their other claims to obtain an anti-clawback injunction under section 171A.151(c). *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 38, at 4–7. And Coeytaux's motion to dismiss presents no argument against

---

11. Coeytaux tries to downplay the harms imposed by California's clawback statute by asserting that the plaintiffs and their lawyer can "adjust[] fee structures to allocate risk." Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 21. But the plaintiffs are indigent and cannot indemnify their lawyers if they get sued under California's shield law. *See* Mitchell Decl. ¶ 8 (attached as Exhibit 1).

the plaintiffs' separate claim for an anti-clawback injunction except to assert that the plaintiffs lack Article III standing to seek an antisuit injunction,[12] and that the plaintiffs cannot seek or obtain an anti-clawback injunction unless Ms. Rodriguez's separate qui tam action under section 171A.101(a) survives a motion to dismiss. *See* Mot. to Dismiss, ECF No. 15, at 39 ("[W]ithout a [valid] HB7 claim there is no basis for an anti-clawback injunction."). The plaintiffs have refuted each of these contentions in the reply brief supporting their Rule 54(b) motion. *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 38, at 4–7; *id.* at 12–24. Unless this Court doubts the plaintiffs' Article III standing to seek an anti-clawback injunction, or unless this Court believes that it can escape section 171A.151(c)'s command to issue a permanent anti-clawback injunction "on request," there is no reason to believe that a preliminary injunction that merely tracks the eventual permanent injunction required by section 171A.151(c) will inflict any meaningful harm on Coeytaux. The plaintiffs are not asking this Court to "assume[] the merits" of their anti-clawback claim. They are asking this Court to hold that a preliminary injunction will not injure Coeytaux *if* the Court agrees that the plaintiffs have Article III standing to seek an antisuit injuction, and if the Court agrees that Ms. Rodriguez need not prevail on her separate qui tam claim as a precondition for the plaintiffs to obtain an anti-clawback injunction under section 171A.151(c).

Coeytaux complains that a preliminary injunction would "strip" Coeytaux of his statutory rights to countersue the plaintiffs under the California's clawback regime. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 17. But Coeytaux presents no argument for the legality or enforceability of California's clawback provision,

12. *See* Mot. to Dismiss, ECF No. 15, at 20–21.

which goes so far as to impose punitive civil liability on litigants and their lawyers for bringing *successful* claims in the courts of other states. Nor does Coeytaux present any reason to believe that other courts would uphold this statute and allow him to seek treble damages from the plaintiffs or their attorney in the absence of an antisuit injunction. There has never been a clawback provision such as this enacted in the history of the United States, so Coeytaux cannot have this Court assume that this legislation will survive judicial scrutiny when considering the balance of harms. Coeytaux must present an argument for the constitutionality and enforceability of California's clawback statute before asserting that a preliminary injunction will injure him.

Coeytaux also has not attempted to explain how the harms imposed by an antisuit injunction will exceed the harms inflicted on the plaintiffs by California's clawback regime. Coeytaux does not deny that California's shield law subjects the plaintiffs and their lawyer to crushing civil liability if they litigate their claims to conclusion. Yet Coeytaux does not identify any harm to himself from an antisuit injunction that is remotely comparable to the harms that are currently being imposed on the plaintiffs and their attorney. The requested preliminary injunction will not impose civil liability on Coeytaux or in any way hinder his defense in this litigation. But denying a preliminary injunction will tilt the playing field in this lawsuit by forcing the plaintiffs and their lawyer to risk bankruptcy as the price for continuing to litigate their claims. The balance of equities favors preliminary relief, and the plaintiffs have made a "clear showing" to this effect.

Finally, Coeytaux contends that the requested preliminary injunction is overbroad because it "would prevent Dr. Coeytaux from filing *any* clawback claim contemplated by HB7, including one that has not yet accrued because Plaintiffs have not yet filed litigation '[a]ttempting to enforce an order or judgment issued' in abusive litigation." Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 17 (quoting Cal. Civ. Code § 1798.300(a)(2)). But the preliminary injunction needs to protect the plaintiffs from clawback lawsuits in the event they have to enforce the preliminary-injunction order (or any subsequent order) entered by this Court. *See* Cal. Civil Code § 1798.300(a)(2) (authorizing clawback lawsuits against any person who "[a]ttempt[s] to enforce an order or judgment issued in connection with an action described in paragraph (1) by a party to that action or a person acting on behalf of a party to that action."). A preliminary injunction is useless if the plaintiffs can be sued for treble damages if they take any steps to enforce it. And the Court will be unable to manage or adjudicate this case if California's shield law deters the plaintiffs from seeking redress if Coeytaux defies its discovery orders or subsequent orders issued in this litigation.

That the plaintiffs have not yet attempted to enforce the future orders of this Court does not make the plaintiffs' request for a preliminary injunction against the enforcement of section 1798.300(a)(2) unripe. The ripeness inquiry turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). But the plaintiffs' entitlement to an antisuit injunction under section 171A.151(c) is a pure question of law that will not be clarified by further factual development. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014)

("[T]he 'fitness' . . . factor[] [is] easily satisfied here. . . . [P]etitioners' challenge to the Ohio false statement statute presents an issue that is 'purely legal, and will not be clarified by further factual development.' " (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 581 (1985)). And delaying issuance of the requested injunction will impose substantial hardship on the parties and the Court by requiring the plaintiffs to file a separate motion for preliminary injunction every time this Court issues a discrete order that the plaintiffs will seek to enforce against Coeytaux. Coeytaux presents no argument for why the plaintiffs must pursue their anti-clawback remedies on a piecemeal basis, which will lead to an endless parade of motions for antisuit injunctions every time the Court issues a new order in this litigation. The Court should resolve at the outset whether and to what extent it will protect the plaintiffs from retaliatory lawsuits under California's shield law, so that the plaintiffs and their lawyer can know whether they will be exposing themselves or increasing their exposure to clawback liability as they continue pursuing their claims against Coeytaux. *See Abbott Laboratories*, 387 U.S. at 153 (holding that a pre-enforcement suit is ripe when noncompliance would require the plaintiff to "risk serious criminal and civil penalties"); *Susan B. Anthony List*, 573 U.S. at 167–68 ("[D]enying prompt judicial review would impose a substantial hardship on petitioners, forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other."); *Umphress v. Hall*, 133 F.4th 455, 468 (5th Cir. 2025) (similar).

### D. The Plaintiffs Have Made A Clear Showing That A Preliminary Injunction Is In The Public Interest

Coeytaux denies that an anti-clawback injunction would serve the public interest. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 19–22. He complains that enforcing section 171A.151(c) or enjoining retaliatory lawsuits against the plaintiffs would "entangle this Court in a direct conflict between competing state policy regimes," "elevate Texas law over California law," and present "serious federalism and comity concerns." *Id.* at 19–20. Coeytaux's objections are meritless. A federal diversity court must apply the forum state's choice-of-law rules,[13] and Texas's choice-of-law rules require the Court to apply Texas and not California law to this dispute. *See* Tex. Health & Safety Code § 171A.151(b). So this Court is *compelled* to "elevate Texas law over California law" to the extent they conflict. To hold otherwise in the name of "federalism" or "comity" would defy the Supreme Court's ruling in *Klaxon*, which Coeytaux never cites or acknowledges. Texas law does not permit retaliatory lawsuits against plaintiffs who sue illegal abortion providers, and federal diversity courts in Texas must enforce that policy until the Supreme Court overrules *Klaxon*. *See Berman v. Parker*, 348 U.S. 26, 32 (1954) ("Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive.").

We also cannot help but to note the gentle irony of Coeytaux's complaining that the requested antisuit injunction would "elevate Texas law over California law," when the entire objective of California's clawback statute is to enable Coeytaux to violate other Texas's abortion and murder laws with impunity and then sue anyone

13. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496–97 (1941) (federal diversity courts must apply the forum state's choice-of-law rules).

for treble damages if they attempt to hold him accountable for his illegal acts. Coeytaux must explain why he thinks the "public interest" requires this Court to allow California's clawback statute to continue undermining the enforcement of Texas's abortion laws, while simultaneously characterizing the proposed antisuit injunction as an affront to "comity" and "federalism." Perhaps Coeytaux believes that the "public interest" is served whenever a law or court ruling enhances access to abortion, regardless of the effects that a pro-abortion law or court ruling might have on the laws of other states. But Coeytaux is not making that argument in his brief, and the judicial power cannot be exercised in such a nakedly ideological manner. *See* Herbert Wechsler, *Toward Neutral Principles of Constitutional Law*, 73 Harv. L. Rev. 1 (1959); *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 338 (2022) (Kavanaugh, J., concurring) ("Because the Constitution is neutral on the issue of abortion, this Court also must be scrupulously neutral."). So Coeytaux couches his public-interest argument in the more lofty and abstract language of "comity" and "federalism," yet he does so without acknowledging how California's shield law subverts comity and federalism by rendering Texas incapable of enforcing its laws against those who aid and abet illegal abortions occurring within Texas's borders.

## II. If The Court Concludes That The Plaintiffs Have Failed To Satisfy The Four-Part Test For Preliminary Injunctive Relief, It Should Still Issue A Preliminary Injunction In Accordance With The Command Of Section 171A.151(c)

The Court does not need to resolve the *Erie* issue if it concludes that the plaintiffs meet *Winter*'s four-part for preliminary injunctive relief. But if the Court disagrees with our analysis or is uncertain whether the plaintiffs meet each of the four requirements in *Winter*, then it can and should issue a preliminary injunction on the

authority of section 171.151(c), which qualifies as a substantive rule of decision that binds federal diversity courts.[14]

The *Erie* analysis that applies at the preliminary-injunction stage is slightly different from the *Erie* analysis that governs the permanent-injunction inquiry. *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 38, at 13–19. There is a federal rule of civil procedure that governs certain aspects of preliminary injunctions, which complicates the *Erie* analysis. *See* Fed. R. Civ. P. 65; *Berk v. Choy*, 607 U.S. 187, 192 (2026) ("[A] valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test."). By contrast, there is no federal statute, treaty provision, constitutional provision, or rule of civil procedure that could arguably trump section 171A.151(c)'s permanent-injunction requirement, so an *Erie* analysis with respect to permanent injunctions is concerned only with whether the mandatory permanent-injunction requirement qualifies as a substantive rule of decision under 28 U.S.C. § 1652. *See* Reply Br. in Support of Rule 54(b) Mot.,

---

14. Coeytaux's suggestion that our decision to present an alternative argument for a preliminary injunction under *Erie* betrays a lack of confidence in our analysis of the *Winter* factors is an ad hominem debater's point. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 7 ("[L]ikely because they know they cannot meet their burden under the four-part test, Plaintiffs argue that the Court has no discretion and must issue a preliminary injunction upon their "request" based on Texas law."). Lawyers are *supposed* to argue in the alternative and present every reasonable argument that can be mustered in support of their client's position. That is their job not only as advocates for their clients but as officers of the court, which is entitled to a vigorous adversarial presentation from both sides and a thorough analysis that explores each of the potential ways that the court might rule. Lawyers have no way of knowing in advance which of their arguments will seem most persuasive to the court, and their responsibility is to candidly and forcefully present each of those arguments and allow the court to decide which (if any) of those arguments it will adopt.

ECF No. 38, at 13–19; *see also Capital Tool & Manufacturing Co., Inc. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172–73 (4th Cir. 1988) ("There is no reason to exclude from *Erie* state substantive law regarding the issuance of final injunctions."). But if the plaintiffs want this Court to enforce the automatic *preliminary*-injunction requirement in section 171A.151(c), they must make an additional showing that nothing in Rule 65 "displaces" the statute's mandatory preliminary-injunction regime.

Despite this added wrinkle, the Court should hold that: (1) There is no conflict between the requirements of Rule 65 and the requirements of section 171A.151(c); and (2) Section 171A.151(c)'s automatic preliminary injunction is substantive rule of decision that 28 U.S.C. § 1652 requires federal diversity courts to enforce.[15]

### A. Section 171A.151(c) Does Not Conflict With Any Provision Of Supreme Federal Law

Coeytaux could defeat the plaintiffs' *Erie* argument if he identifies a federal statute, treaty, constitutional provision, or rule of civil procedure that conflicts with and preempts section 171A.151(c)'s mandatory preliminary-injunction requirement. *See Berk*, 607 U.S. at 192. But Coeytaux's brief comes up empty on this score.

---

15. There is no case law from the Supreme Court or the Fifth Circuit that resolves (or purports to resolve) this *Erie* question. *Perez v. City of San Antonio*, 163 F.4th 110 (5th Cir. 2025), does not address whether federal or state law should supply the test for issuing injunctions in diversity litigation when a discrepancy between the two standards arises. Neither does *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 n.22 (5th Cir. 2013), *Flood v. ClearOne Communications, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010), *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 748 (S.D. Tex. 2009), *Coaction Specialty Mgmt. Co., Inc. v. eMaxx Ins. Services, LLC*, 2025 WL 3718475, at *6 (S.D.N.Y. Dec. 23, 2025), or any of the cases cited on pages 22–23 of Coeytaux's brief.

Coeytaux starts with the Judiciary Act of 1789, but that statute does nothing more than give federal courts jurisdiction over suits in equity,[16] and it empowers the federal judiciary to award equitable remedies of the type that were "exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999). Nothing in the Judiciary Act of 1789 purports to codify a test for determining when a preliminary or permanent injunction may issue. Those standards were subsequently developed by federal courts as a matter of common law, and no court (to our knowledge) has ever held that Judiciary Act of 1789 entrenches the four-part *Winter* test for injunctive relief as a matter of federal statutory law. The Supreme Court could, if it wishes, alter or change this four-part test without violating the Judiciary Act of 1789, and Coeytaux does not argue otherwise. So there is no federal statutory mandate to apply *Winter* when deciding whether to issue a preliminary injunction; it is a court-created test that does not qualify as "supreme" federal law.

To be clear, the plaintiffs are *not* arguing or suggesting that state law can require federal diversity courts to issue equitable remedies that violate constitutional or statutory limits on the judicial power. Texas law cannot, for example, require federal diversity courts to issue advisory opinions or award other remedies that are forbidden by the Constitution or federal statute, even if Texas courts would award those remedies under state law. But Coeytaux is not arguing that mandatory preliminary

---

16. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841–42 (2025) ("The Judiciary Act of 1789 endowed federal courts with jurisdiction over 'all suits . . . in equity,' § 11, 1 Stat. 78, and still today, this statute 'is what authorizes the federal courts to issue equitable remedies' " (citation omitted)).

injunctions are unconstitutional, and there is nothing in the Judiciary Act of 1789 that purports to enshrine a particular test for determining when an injunction should issue. Congress and the Supreme Court are free to adopt or implement mandatory-injunction regimes, and Congress has done so on many occasions without effecting a partial implied repeal of the Judiciary Act of 1789. *See* Reply Br. in Support of Rule 54(b) Mot., ECF No. 40, at 13. That is all that is needed to show that there is no federal statutory or constitutional obstacle to enforcing section 171A.151(c) in a diversity lawsuit.

Coeytaux next tries to shoehorn *Winter*'s four-part test into the requirements of Rule 65. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 25 (arguing that Rule 65 "independently" requires the application of *Winter*'s four-part test."). But Coeytaux needs to show a "direct collision"[17] between Rule 65 and section 171A.151(c), and Coeytaux cannot make this showing when the language of Rule 65 remains silent on the standard for when a preliminary injunction may issue. *See* Mot. for Prelim. Inj., ECF No. 5, at 13 ("Rule 65 merely requires that courts: (1) provide notice to the adverse party before issuing a preliminary injunction; (2) require the movant to post appropriate security; and (3) state the reasons for issuing a preliminary injunction, state its terms specifically, and describe in reasonable detail the act or acts restrained or required." (footnotes omitted)). Coeytaux does not contend

17. *Burlington Northern Railroad Co. v. Woods,* 480 U.S. 1, 5 (1987); *see also id.* at 4–5 ("The initial step is to determine whether, when fairly construed, the scope of [the Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." (quoting *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50 & n.9 (1980)).

that the four-part test from *Winter* appears in the text of Rule 65," but he hangs his hat on the word "may" in subsection (a)(1), which says:

> The court *may* issue a preliminary injunction only on notice to the adverse party.

Fed. R. Civ. P. 65(a)(1) (emphasis added); Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 25. Coeytaux treats the word "may" as proof that Rule 65 compels a regime that gives the district court "discretion" in deciding whether a preliminary injunction should issue, so long as "notice to the adverse party" has been provided. But that is not what Rule 65(a)(1) says. It serves as a *prohibition* on the issuance of preliminary injunctions absent "notice to the adverse party," and it compels this Court to give notice to Coeytaux before awarding the preliminary injunction required by section 171A.151(c). The use of the word "may" merely acknowledges the existence of other constraints on the issuance of preliminary injunctions, as the requirement of prior notice is only one of the many prerequisites to this remedy. It does not mean that courts can grant or deny preliminary injunctions at whim once the adverse party receives notice, and it does preempt or displace other constraints on the district court's discretion that may be imposed by state or federal law.

Finally, if Rule 65(a) codifies the *Winter* four-part test and compels federal diversity courts to apply it, then Rule 65(a) violates the Rules Enabling Act. *See* 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right"). The test for distinguishing substantive from procedural rules in this context turns on whether the rule regulates "only the process for enforcing those rights" (procedural), or whether it regulates "the rights themselves, the available remedies, or the rules of decision." *Berk v. Choy*, 607 U.S. 187, 199 (2026). Coeytaux's inter-

pretation of Rule 65(a) would regulate "the available remedies" by dictating the substantive standard for determining when a preliminary injunction may issue. The Court should not construe Rule 65 in a manner that would create a clear conflict with the Rules Enabling Act.

* * *

The Supreme Court has held that the federal rules of civil procedure are "to be given their plain meaning" and should not be "narrowly construed in order to avoid a 'direct collision' with state law." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980). Coeutaux's argument implicates the other side of the coin: The rules of civil procedure are not to be strained to create a "direct collision" with state law that is not apparent from the text.

### B. Section 171A.151(c)'s Mandatory Preliminary-Injunction Regime Is A Substantive Rule Of Decision Under 28 U.S.C. § 1652

Coeytaux also denies that section 171A.151(c) qualifies as a substantive rule of decision under 28 U.S.C. § 1652, but none of his arguments work. Coeytaux begins by denying that section 171A.151(c)'s mandatory-injunction regime is "outcome determinative" under *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945) . *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 28. But Coeytaux cannot make that claim while simultaneously insisting that this Court should withhold a preliminary and permanent antisuit injunction under the four-part *Winter* test. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 10–22; Defs.' Opp. to Rule 54(b) Motion, ECF No. 25. The plaintiffs would unquestionably be entitled to a mandatory antisuit injunction if they had brought these claims against Coeytaux in state court. So if this Court holds that the plaintiffs cannot obtain an antisuit injunction in federal court then section 171A.151(c) is indisputably outcome determinative.

Either the plaintiffs *are* entitled to a preliminary and permanent injunction under the traditional four-part test for injunctive relief, which means that the four-part test is *not* outcome determinative; or the plaintiffs are *not* entitled to a preliminary and permanent injunction under that test, which means that the traditional four-part test for injunctive relief *is* outcome determinative. On either path, however, the plaintiffs are entitled to an antisuit injunction. Coeytaux must pick his poison; he cannot have it both ways by demanding that this Court deny injunctive relief under the four-part test while simultaneously denying the outcome-determinative nature of that test.

Coeytaux faces the same dilemma when he turns to the twin-aims test of *Hanna v. Plumer*, 380 U.S. 460 (1965). He insists that a refusal to apply section 171A.151(c)'s mandatory antisuit-injunction regime will neither lead to vertical forum shopping nor promote inequitable administration of the laws. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 27. But that works only if this Court *rejects* Coeytaux's invitation to deny the plaintiffs injunctive relief under the traditional four-part test in *Winter*. If this Court were to hold that the plaintiffs fail to satisfy the four-part test for preliminary or permanent injunctive relief, then vertical forum shopping will inevitably result. HB 7 plaintiffs will seek the guaranteed antisuit injunction that only a state court can provide, while HB 7 defendants will remove cases to the federal courts that have discretion to withhold that relief. Inequitable administration of the laws will also follow, as state-court HB 7 plaintiffs will get an automatic shield from clawback lawsuits, while federal-court plaintiffs must hope or pray that a federal court will enjoin these retaliatory lawsuits under the traditional four-part test for injunctive relief. Coeytaux suggests that the inequitable-administration-of-the-laws

test is concerned only with whether the application of a federal rule will cause "'grave discrimination by noncitizens against citizens,'"[18] but there is nothing in *Hanna* that supports this idea. *Hanna* instead reaffirms that the *Erie* doctrine "is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court." *Hanna*, 380 U.S. at 467. So the inequitable-administration prong of the twin-aims test is implicated by *any* discrepancy between state and federal law that will alter the "result of a litigation."

Coeytaux seems to think that he needs only to show that it remains theoretically possible for *some* HB 7 plaintiff to persuade a federal court to enjoin the filing of clawback lawsuits under the traditional four-part test, even as he insists that the plaintiffs are unable to make this showing. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 19 ("The four-part test is not substantive because it is not 'certainly' outcome determinative."). But the only authority he cites to support this claim is *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 539 (1958), which offers no support for this idea. *Byrd* instead insists that "state rules even of form and mode" must be enforced by federal diversity courts whenever those state rules "may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule." *Id.* at 536–37; *see also id.* ("[C]ases following *Erie* have evinced a broader policy to the effect that the federal courts should conform as near as may be—in the absence of other considerations—to state rules even of form and

18. Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 27 (quoting *Hanna*, 380 U.S. at 467).

mode where the state rules may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule.").[19] And in all events, a court cannot talk out of both sides of its mouth by denying the plaintiffs injunctive relief under the traditional four-part test while simultaneously insisting that its refusal to enforce section 171A.151(c)'s mandatory-injunction regime is not outcome determinative.

Finally, Coeytaux is wrong to claim that "[c]ountervailing federal interests also counsel against applying [section 171A.151(c)'s] automatic anti-suit injunction rule." Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 27. The mandatory antisuit injunction in section 171A.151(c) targets only the enforcement of California's clawback law, which is designed to counteract the judgments entered by a federal court by compelling a prevailing litigant to pay three times the amount that he obtained from the person that he successfully sued. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995) ("Article III . . . gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy—with an understanding, in short, that 'a judgment conclusively resolves the case' because 'a "judicial Power" is one to render dispositive judgments.'" (quoting Frank H. Easterbrook, *Presidential Review*, 40 Case W. Res. L. Rev. 905, 926 (1990)). The clawback liability imposed by California's shield law serves to

19. *Byrd* refused to apply the state-law rule that allowed judges rather than juries to determine a question of fact surrounding an employer's immunity under the South Carolina Workmen's Compensation Act only after concluding that "the likelihood of a different result" was insufficiently "strong as to require the federal practice of jury determination of disputed factual issues to yield to the state rule in the interest of uniformity of outcome." *Byrd*, 356 U.S. at 540.

punish the plaintiffs for filing a lawsuit that Congress has authorized the federal courts to decide, and to deter the plaintiffs (and others) from bringing these lawsuits in the first place. There is no conceivable "countervailing federal interest" that could justify denying effect to an automatic antisuit-injunction regime that preserves the assigned role of the federal judiciary.[20]

## CONCLUSION

The motion for preliminary injunction should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: November 20, 2026

*Counsel for Plaintiffs*

20. Coeytaux also invokes the Seventh Amendment's right to jury trial. *See* Def.'s Opp. to Mot. for Prelim. Inj., ECF No. 24, at 28. But that has no relevance because there is no right to a jury trial on an antisuit injunction claim.

## CERTIFICATE OF WORD COUNT

I certify that this brief contains 8,907 words.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on November 20, 2026, I served this document through CM/ECF upon:

CHRISTOPHER M. ODELL
LEAH SCHULTZ
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002-2755
(713) 576-2400 (phone)
(713) 576-2499 (fax)
christopher.odell@arnoldporter.com
leah.schultz@arnoldporter.com

MARC HEARRON
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, New York 10038
(917) 637-3600 (phone)
(917) 637-3666 (fax)
mhearron@reprorights.org

JENNA HUDSON
Center for Reproductive Rights
1600 K Street NW
Washington, DC 20002
(202) 628-0286 (phone)
jhudson@reprorights.org

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*